IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARROW COMMUNICATION LABORATORIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOHN MEZZALINGUA ASSOCIATES, INC., d/b/a PPC,<br><br>Defendant. | C.A. No. 05-357-SLR |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

CONNOLLY BOVE LODGE & HUTZ LLP
Jeffrey B. Bove  (# 998)
Kevin M. Baird (# 4219)
The Nemours Building
1007 North Orange Street, Suite 878
Wilmington, DE 19801
Tel: (302) 658-9141
Fax: (302) 658-5614
jbove@cblh.com

*Attorneys for Defendant John Mezzalingua Associates, Inc. d/b/a PPC*

OF COUNSEL:

WALL, MARJAMA & BILINSKI, LLP
101 South Salina Street, Suite 400
Syracuse, New York 13202
Telephone:  (315) 425-9000
Facsimile:   (315) 425-9114

Dated:  July 18, 2005

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................................................... ii

**STATEMENT OF THE CASE** ....................................................................................................... 1

**ARGUMENT** ................................................................................................................................ 4

    A.   ANALYSIS OF CONTROLLING FACTORS WEIGHS STRONGLY IN FAVOR OF TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK ...................... 4

    B.   ANALYSIS OF PRIVATE INTERESTS ................................................................ 6

        1.   Plaintiff's Forum Preference is Not Supported by Logic or Reason ............................. 6

        2.   Defendant Prefers Transfer to the Common Home Forum of Syracuse. ....................... 7

        3.   The Claim Should Be Heard Where It Arose in Syracuse, New York ........................... 8

        4.   The Convenience of the Parties Weighs Strongly in Favor of Transfer ......................... 8

        5.   The Convenience of Witnesses Weighs Strongly in Favor of Transfer ........................ 11

    C.   PUBLIC INTERESTS WEIGH STRONGLY IN FAVOR OF TRANSFER ........... 12

        1.   Practical Considerations Facilitating Trial Favor Transfer of This Action ................... 12

        2.   Relative Court Congestion Does Not Weigh Against Transfer ..................................... 12

        3.   The Intense Local Interest in This Controversy between Regional Companies Strongly Favors Transfer ............................................................. 13

        4.   Expertise of Local Judges ............................................................................................. 14

**CONCLUSION** ........................................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bergman v. Brainin*, 512 F. Supp. 972 (D. Del. 1981) ........................................................14

*Burstein v. Applied Extrusion Technologies, Inc.*, 829 F. Supp. 106
(D. Del. 1992) ........................................................................................................6, 9

*Clopay Corp. v. Newell Cos., Inc.*, 527 F. Supp. 733 (D. Del. 1981) ..................................6

*Glickenhouse v. Lytton Financial Corp.*, 205 F. Supp. 102 (D. Del. 1962) .......................11

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S. Ct. 839,
91 L. Ed. 1055 (1947) ................................................................................................8

*J-Squared Technologies, Inc. v. Motorola, Inc.*, 2005 WL 388599 (D. Del. Feb 4,
2005) ..........................................................................................................................6

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir.1995) ...................................5, 6

*Minstar, Inc. v. Laborde*, 626 F. Supp. 142 (D. Del. 1985) ..................................................5

*Pennwalt v. Purex Industries, Inc.*, 659 F. Supp. 287 (D. Del. 1986) ................................13

*Pierce v. Atlas Powder Co.*, 430 F. Supp. 79 (D. Del. 1977) ...............................................7

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3rd Cir.1970), *cert. denied*, 401 U.S.
910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971) ................................................................14

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S. Ct. 2239,
101 L. Ed. 2d 22 (1988) .............................................................................................5

*TCW/Camil Holding L.L.C. v. Fox Haron & Camerini LLP*, 2004 WL 1043193
(D. Del. Apr. 30, 2004) ..........................................................................................9, 10

*Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600 (D. Del. 2004) ..................6

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .......................................................................4

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F.
Supp. 759 (D. Del. 1991) ...................................................................................4, 5, 6

## FEDERAL STATUTES

28 U.S.C. § 1400(b) ..............................................................................................................5

28 U.S.C. § 1404(a) ..........................................................................................................1, 4

## PRELIMINARY STATEMENT

Defendant John Mezzalingua Associates, Inc., doing business as PPC ("PPC"), hereby submits this Memorandum of Law in support its motion to transfer this patent infringement action pursuant to 28 U.S.C. § 1404(a). PPC asks that the Court transfer this case from the District of Delaware, a venue with absolutely no connection to the claims asserted in this action, to the Northern District of New York, the residence and principal place of business of all parties, all identified non-party witnesses and the location of all acts giving rise to the claims asserted in this action.

## STATEMENT OF THE CASE

Syracuse, New York is the principal place of business of three major manufacturers of trap and filter components for the cable television industry: Defendant PPC, Plaintiff Arrow Communication Laboratories, Inc. (hereinafter "Arcom"), and Eagle Comtronics, Inc. (*See* Ex. A to Mezzalingua Decl.). Plaintiff Arcom is a privately held New York corporation with its principal place of business in Syracuse, New York. (Complaint, ¶ 2; Mezzalingua Decl., ¶ 25-27, Ex. A). Defendant PPC is a Delaware corporation with its only place of business in East Syracuse, New York. (Mezzalingua Decl.¶ 2).

PPC is a privately held, family-operated company that has been manufacturing precision products for the cable industry for nearly forty years. (Mezzalingua Decl., ¶ 3). Along with many other products, PPC manufactures a series of step attenuation filters for cable networks. (Mezzalingua Decl. ¶ 13). PPC manufactures these components in its East Syracuse facility and maintains its entire inventory at that location. (Mezzalingua Decl. ¶ 15). For the past few years, attorneys for PPC and Arcom have been in communication regarding Arcom's contention that PPC's step attenuation filters, designated SSA8-54, SSA12-54, and SSA16-54 (hereinafter

1

collectively "the accused products"), infringe U.S. Patent No. 5,745,838 ("the '838 patent"). (Muldoon Decl. ¶ 2).

The original assignee of the '838 patent was Tresness Irrevocable Patent Trust, a New York trust with its principal place of business of the trustee being in Syracuse, New York. (Mezzalingua Decl. ¶¶ 31-32.) A few days before the filing of the Delaware lawsuit, however, reference to an assignment conveying some unspecified interest in the '838 to Arcom appeared in the records of the U.S. Patent and Trademark Office.[1] (Mezzalingua Decl. ¶ 31.)

On or about June 6, 2005, PPC received a letter from Arcom dated June 3, 2005 stating that its attorneys were preparing a lawsuit to be filed in the District of Delaware. (Muldoon Decl. ¶ 4.) In fact, that lawsuit was filed in Delaware on June 3, 2005. (Muldoon Decl. ¶3.) Unaware of this filing, PPC prepared and filed a declaratory judgment action in the Northern District of New York on June 6, 2005. (Muldoon Decl. ¶ 5 and Ex. A.)

In a telephone conversation between, PPC's attorney James Muldoon and Arcom's attorney Lawrence Trapani, Trapani agreed that Arcom would stipulate to a 30 day extension for filing an answer to the Complaint before this Court. (Muldoon Decl. ¶¶ 8-9.) PPC's attorney memorialized this agreement by letter dated June 20, 2005. (Muldoon Decl. ¶ 10.) Nevertheless, on June 27, two days before PPC's answer was nominally due, Arcom's new lead trial counsel, Rader Fishman & Grauer, withdrew Arcom's agreement to the stipulation for extension of time. (Muldoon Decl. ¶12.) PPC was therefore forced to quickly retain local counsel and filed an Answer on June 29, 2005. (Muldoon Decl. ¶ 17.) This Answer is the only activity that has taken place in this lawsuit prior to the present motion. (Muldoon Decl. ¶ 18.)

---

[1] It is not clear at this time whether the interest conveyed to Arcom is sufficient to confer standing to sue in its own name. PPC has preserved this standing issue as an affirmative defense.

2

There is no reason why this patent infringement matter cannot be litigated in Syracuse, New York, which is the locus of both parties' operations, assets and of all the evidentiary resources. The Northern District of New York maintains a courthouse in Syracuse where both parties have litigated patent other disputes regarding CATV filters in the past. (Muldoon Decl. ¶¶ 20, 22.) To the extent that alleged infringing acts are associated with any single geographic location that location is Syracuse, New York. (Mezzalingua Decl. ¶¶ 15-18). Both parties maintain their relevant engineering and corporate records in the Syracuse area. (Mezzalingua Decl., ¶¶ 24, 29-30). All identifiable persons with discoverable information, and hence all likely trial witnesses, are located in the Syracuse area. (Mezzalingua Decl. ¶¶ 22, 23, 27, 29, 32, 33.) Furthermore, the subject matter of this lawsuit is significant to the Syracuse economy and is therefore a matter of local interest in Syracuse as evidenced by a front page article regarding this lawsuit in the Central New York Business Journal. (Mezzalingua Decl. ¶ 33 and Ex. A.)

By contrast, the District of Delaware has no connection to the subject matter of this lawsuit, except that PPC is incorporated there. The accused devices are not manufactured or sold in Delaware. (Mezzalingua Decl. ¶¶ 8, 12, 18-19). Although incorporated in Delaware, PPC maintains no assets, facilities, offices, sales representatives, or any relevant business records in Delaware. (Mezzalingua Decl. ¶¶ 6, 7, 24.) Plaintiff Arcom is incorporated in New York (Complaint, ¶ 2) and, upon information and belief, Arcom has no facilities, employees or relevant business records in Delaware. (Mezzalingua Decl. ¶ 25-27.)

Maintaining the lawsuit in the District of Delaware will generate significant expenses and other burdens to Defendant PPC as well as Plaintiff Arcom. First, both parties must retain local Delaware counsel that would not be necessary in the Northern District of New York as both Arcom's lead IP counsel, Mr. Trapani, and PPC's lead counsel, Wall Marjama, are located in or

near Syracuse. (Mezzalingua Decl. ¶ 27; Muldoon Decl. ¶ 19.) Additionally, rather than summoning witnesses to the Northern District Courthouse in Syracuse as needed from nearby facilities and offices, both parties will have to pay transportation, lodging and other expenses to facilitate their appearance in the Delaware Court. (Mezzalingua Decl. ¶ 22- 25, 27-28, 32.) These lodging and transportation expenses will also accrue with respect to most of the parties' attorneys. (Mezzalingua Decl. ¶ 27, Muldoon Decl. ¶ 19.) Moreover, significant third party witnesses are beyond the subpoena power of this Court and their testimony would presumably have to be presented through deposition, thereby hindering the effectiveness of PPC's defense before a jury. (Mezzalingua Decl. ¶¶ 23, 31-32).

## ARGUMENT

### A. ANALYSIS OF CONTROLLING FACTORS WEIGHS STRONGLY IN FAVOR OF TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK

This Court should transfer this lawsuit to the Northern District of New York in the interests of justice and for the convenience of all concerned. 28 U.S.C § 1404(a) provides:

> For the convenience of the parties and the witnesses in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of this change of venue statute is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612 (1964).

The analysis of a Section 1404(a) motion requires a two step inquiry: (1) whether the suit might have been brought in the transferee district; and (2) in which district the proper administration of justice would be best served. *Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 762 (D. Del. 1991). Delaware courts have characterized the first inquiry as mechanical and the second as discretionary. *Id., see also*

4

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness.").

Thus, the preliminary question in a motion to transfer under this section is whether the transferee district is one in which the action "might have been brought." *Minstar, Inc. v. Laborde*, 626 F. Supp. 142 (D. Del. 1985). As alleged in the Complaint, PPC has its principal place of business near Syracuse, New York. Moreover, as PPC manufactures and sells the accused step attenuation filters in East Syracuse, New York, venue in the Northern District is also proper pursuant to 28 U.S.C. § 1400(b). Therefore, the first requirement for transfer has been met and the Court must examine the three remaining statutory criteria: (1) convenience to parties; (2) convenience to witnesses; and (3) interest of justice. *Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 762 (D. Del. 1991).

The seminal case in the Third Circuit establishing the factors to consider in this second prong of the analysis is *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). The *Jumara* Court identified a nonexhaustive list of factors it classified as either private or public interests.

The private interests the court should consider in evaluating motions to transfer venue include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced

in the alternative forum). *Id.* (citations omitted). *Accord, Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600 (D. Del. 2004).

The public interests the court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* (citations omitted).

### B. ANALYSIS OF PRIVATE INTERESTS

#### 1. Plaintiff's Forum Preference is Not Supported by Logic or Reason

While this Court has made it clear that this factor is of paramount concern, "[t]he preference in favor of plaintiffs' choice of forum is not adopted blindly or without reason." *Clopay Corp. v. Newell Cos., Inc.*, 527 F. Supp. 733, 736 (D. Del. 1981); *accord Waste Distillation*, 775 F. Supp. at 764. Rather, "Courts expect that plaintiffs' choices will generally reflect their rational and legitimate concerns." *Id.* The *Clopay* case is instructive because it is a patent case with nearly identical facts. As in this case, the plaintiff alleged no contact with Delaware, and the defendant alleged no contact beyond incorporation in Delaware. *Id.* Also, as in this case, the facilities, witnesses, and documents were all located in other States. *Id.* Therefore, the *Clopay* Court transferred the case to the Northern District of Illinois.

The touchstone of the analysis of this factor is whether plaintiff's choice of forum reflects rational and legitimate concerns. *J-Squared Technologies, Inc. v. Motorola, Inc.*, 2005 WL 388599 at * 2 (D. Del. Feb. 2, 2005)[2]; *Burstein v. Applied Extrusion Technologies, Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992) (Longobardi, C.J.). In this case, however, plaintiff's choice seems

---

[2] Unreported cases are attached as Exhibit A hereto.

6

wholly irrational. It is unclear why this plaintiff would not prefer to send its counsel (Attorney Trapani's office is in a suburb of Syracuse), local employees and witnesses to the Northern District Court in Syracuse, which is only a few miles from its principal place of business, rather than hundreds of miles away to another state with all the attendant costs of transportation and lodging. Certainly it is not because the local bench is unfamiliar either with patent law or with the technology at issue, having litigated patent cases with regularity, and with more than a handful of cases involving these local cable components manufacturers. As discussed more fully below in section C2, it is not any desire for a quicker trial result, since the two jurisdictions are quite comparable from that standpoint. *See Pierce v. Atlas Powder Co.*, 430 F. Supp. 79, 82 (D. Del. 1977) ( In granting transfer, "the Court takes particular care to note that the plaintiff's choice of this forum apparently has no tactical significance other than its status as the defendant's statutory home.")

    2. <u>Defendant Prefers Transfer to the Common Home Forum of Syracuse.</u>

Defendant PPC would prefer the Northern District Court in Syracuse for the same reasons that would seemingly guide Arcom to the same conclusion. PPC would like to be able to call its employees away from work to the court house with perhaps an hour's advance warning rather than being compelled to lodge them in a hotel for several days because of uncertainty as to when they might be called. For a company dependent on a few key employees, whose technical skills are at a premium, this reduced disruption of the work routine is significant. PPC would also prefer to transport its documents by auto to the court house rather than having to pay common carriers with attendant risk of loss. Finally, PPC would prefer not to pay its attorneys' travel time to Delaware when they could walk to the court house in Syracuse.

7

      3.      <u>The Claim Should Be Heard Where It Arose in Syracuse, New York</u>

Syracuse, New York, is the situs of all material events relating to the design manufacture, distribution, and sale of PPC's step attenuation filters. If PPC has infringed the '838 patent, they have done so first and primarily in Syracuse where the accused products were developed, manufactured, stocked and sold. By contrast, there have been no acts of alleged infringement in Delaware. PPC has not sold a single step attenuation filter in that State. The U.S. Supreme Court has recognized that litigation should take place in the forum where the events at issue occurred. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (the public interest supports adjudication of the controversy in that locale, rather than in a remote location where it will be learned of only by report). Here, any events giving rise to claims of patent infringement occurred in New York, compelling the conclusion that this controversy be litigated in that forum.

Additionally, the law firm selected by Arcom to prosecute the '838 patent and related applications is based in or near Syracuse. There are no events, conduct or activities – material or otherwise – that took place or will take place in Delaware that provide PPC or Arcom with a reason to litigate this patent infringement action in Delaware. Therefore, this factor weighs strongly in favor of transfer.

      4.      <u>The Convenience of the Parties Weighs Strongly in Favor of Transfer</u>

At the outset, it should be noted again that Plaintiff Arcom has not chosen to litigate on its "home turf." This Court has frequently recognized that when a plaintiff chooses to bring suit in a forum that has no connection either to the plaintiff or to the acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were it litigating at or near the plaintiff's principal place of business or at the site of the activities at issue in the lawsuit.

8

*TCW/Camil Holding L.L.C. v. Fox Haron & Camerini LLP*, 2004 WL 1043193 (D. Del. Apr. 30, 2004) (citing *Burstein*); *see also, Clopay*, 527 F. Supp. at 736 (when plaintiff has not brought suit in home district, the "quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer is concomitantly reduced.").

The *TCW/Camil* case has much in common with the case before this Court. As in *TCW/Camil*, it is more convenient to both the plaintiff and defendant to try this litigation in New York. As in *TCW/Camil*, the locus of the alleged misconduct – patent infringement – occurred in a single district in New York. Also, as in *TCW/Camil*, the majority of witnesses with discoverable information are located in or near Syracuse, New York.

Furthermore, "the Court has found it appropriate in the past to consider the prolonged absence of proposed witnesses in assessing the convenience of parties and witness." *Burstein*, 829 F. Supp. at 112. The PPC employees most familiar with the design, production, marketing and sales of the step attenuation filters reside and work in Syracuse, New York. These employees also have the most knowledge about the filter designs that have been used or sold in the past, which may bear upon the invalidity and non-infringement of the patent in suit. PPC employees having knowledge or familiarity with the '838 patent and/or PPC's decision to produce and sell the step attenuation filter also reside in Syracuse. Arcom has requested monetary damages in this action. The PPC employees familiar with sales, costs, pricing, customers, returns and profits related to the sale of the step attenuation filters also work and reside in Syracuse. Indeed, it is not clear that any material witness to this case is located elsewhere. For all of PPC's witnesses, New York is more convenient than Delaware.

Upon information and belief, Arcom has no key employees or fact witnesses located in Delaware. All identifiable Arcom witnesses reside and work in and around Syracuse, New York.

PPC expects to take discovery and elicit testimony regarding the issues of inventorship, priority and other issues affecting the validity of the '838 patent. Arcom employees or others having knowledge of relevant facts to such issues (e.g., the inventors) all reside and/or work in Syracuse, New York. The main office of the law firm whose attorneys prosecuted the '838 patent and related applications is located in or near Syracuse. PPC anticipates that this patent attorney will be an important witness regarding the validity and enforceability of the '838 patent, as well as on issues such as notice and infringement.

All of PPC's documents relating to the production, promotion, marketing and sales of its step attenuation filters are maintained in Central New York. Similarly, since Arcom does not appear to have a regular or established office, employees, manufacturing plants, distribution facilities or any other corporate presence within Delaware, PPC does not belief that Arcom maintains any pertinent business records or other tangible evidence pertinent to this matter in Delaware.

Based on the foregoing facts, the Court in *TCW/Camil* concluded that the private factors favored transfer to New York. *TCW/Camil,* 2004 WL 1043193 at * 2. PPC submits that the private factors similarly favor transfer of this case to the Northern District of New York. PPC has shown that the critical managerial and engineering talent in the company is concentrated in a few individuals, many of whom are likely trial witnesses. (Mezzalingua Decl. ¶ 21-24). Their absence can be minimized by trying this case in Syracuse. In Syracuse the witnesses can be summoned to the court house when their testimony appears to be imminent. If their testimony and cross examination spans multiple days, they can still return to address work related matters as necessary when the court recesses for the evening. In Delaware, by contrast, the will be relatively out of touch with the resources they need to address such work related matters.

5.   <u>The Convenience of Witnesses Weighs Strongly in Favor of Transfer</u>

This Court has made it clear that this factor is relevant only to the extent that nonparty witnesses may actually be unavailable for trial. In this regard, the availability of compulsory process for attendance of unwilling witnesses is important. *Glickenhouse v. Lytton Financial Corp.*, 205 F. Supp. 102, 105-06 (D. Del. 1962). PPC has identified nonparty witnesses located in the Syracuse area and hence are not subject to the subpoena power of this Court.

The trustee of the Tresness Irrevocable Patent Trust is likely to have important information pertaining to any damage claims in this case. If the trustee transferred the '838 patent to Arcom for substantial value, it would have created a taxable event requiring a distribution from the trust. In the more likely event that the patent was assigned some nominal value paid to the trust by Arcom, this valuation will be a useful benchmark for determining a reasonable royalty under the patent. It is for Arcom to say whether they are able and willing to produce the trustee, an independent accountant, for trial in Delaware. In any event, however, the Court has no subpoena power to compel his appearance.

Additionally, Mr. Henry Pixley, a former employee of PPC was involved in the effort to design PPC's step attenuation filters. He would therefore have significant testimony pertaining to both infringement and willfulness. He also lives in the Syracuse area and is not subject to the subpoena power of this Court.

The Syracuse, New York area is a relative focal point within the industry for coaxial cable connectors and related products, and other companies are located in or near the Syracuse area. There is a strong network of current and former employees of companies within the industry who discuss technical and business information, many of whom reside in Central New York. Therefore, it is possible that other non-party fact or expert witnesses for one or both

parties will reside or work in the region. Consequently, this factor also weighs heavily in favor of transfer.

### C. PUBLIC INTERESTS WEIGH STRONGLY IN FAVOR OF TRANSFER

#### 1. Practical Considerations Facilitating Trial Favor Transfer of This Action

PPC has shown, in the foregoing discussion, that there are compelling practical considerations that would make trial more easy, expeditious and inexpensive in Syracuse. Both parties would need to retain only one law firm rather than paying local counsel to facilitate trial in Delaware. Trial in Syracuse would avoid the expense of transportation and lodging for counsel and witnesses alike. The subpoena power of the Northern District Court would assure that PPC is able to present its defense to a jury through live testimony, as opposed to snippets of depositions. The proximity of witnesses to the Northern District Court in Syracuse would obviate the possibility of having to grant continuances because a witness' flight to Delaware has been delayed or cancelled. Finally, the Northern District Court in Syracuse would have the advantage of familiarity with the general field of cable technology – gained through multiple litigations involving the parties -- and would not be starting from ground zero in learning about the patented invention. In view of these advantages, it is entirely unclear why Arcom prefers the Delaware Court in the first instance.

#### 2. Relative Court Congestion Does Not Weigh Against Transfer

Arcom may argue that it expects to get a more expeditious decision in Delaware than in the Northern District of New York. In presenting this argument, Arcom may cite statistics showing how many pending cases, including criminal matters, are before each judge in the Northern District of New York.

This argument, however, will not survive scrutiny. The Federal Courts Management Statistics track the filing and disposition of actions in the Federal Court System and weights the caseloads on their dockets according to the complexity of the cases. The comparable statistic is "weighted filings" per judge. According to the 2004 statistics, judges in Delaware had an average of 534 weighted filings, whereas Syracuse judges averaged only 394 weighted filings. Moreover, the median time from filing to disposition of all civil matters averaged 13.9 months in Syracuse, as compared to 14.0 months in Delaware. Thus, the prospect of obtaining an earlier resolution of this patent dispute in Delaware than in Syracuse is doubtful.

      3.     <u>The Intense Local Interest in This Controversy between Regional Companies Strongly Favors Transfer</u>

This Court has recognized that there is an interest in having local controversies decided locally. *Pennwalt v. Purex Industries, Inc.*, 659 F. Supp. 287, 291 (D. Del. 1986). As shown by the front page article in the Central New York Business Journal, attached as Exhibit A to the Mezzalingua Declaration, the controversies between the major regional cable manufacturers in the Syracuse area is a matter of intense local interest. Both Arcom and PPC are privately held, family operated companies headquartered in or near Syracuse. Each employs hundreds of employees in the Greater Syracuse area. The outcome of this dispute is therefore likely to have a significant effect on the local economy.

In contrast, the outcome of this action will have no appreciable impact in Delaware except to burden the Delaware bench with another patent case involving companies having no connection with Delaware but the formality of one party's incorporation. This factor is also in favor of transfer to Syracuse.

13

4. <u>Expertise of Local Judges</u>

The *Jumara* factors mention only the familiarity of judges with state law in diversity cases. In the same vein, however, it would seem appropriate to consider the familiarity of the bench in Syracuse with patent litigation involving the parties and the technology of the cable industry. While the expertise of the Delaware bench in patent matters is well known, the Syracuse bench also has an impressive patent docket.

More importantly, the Syracuse bench is familiar with both parties and the general technology involved in cable transmission. Thus, it is quite likely that a Syracuse judge would be assigned who could become familiar with the particular issues of the '838 patent much more expeditiously. Thus, Plaintiff would suffer no loss by having this matter decided in Syracuse, and the Delaware bench will be less burdened with learning new matter.

## CONCLUSION

PPC has sustained its burden "to establish that the balance of the convenience of the parties and witnesses strongly favors the defendant[]." *Bergman v. Brainin*, 512 F.Supp. 972, 973 (D. Del. 1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3rd Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971)). This is not the typical transfer motion where a defendant attempts to merely shift the burden of an inconvenient forum from one party to another – a transfer to the Northern District of New York is more convenient to both parties and non-party witnesses. Arcom's choice of the Delaware forum is not rationally related to any legitimate concern of Arcom or confers any benefit upon Arcom. Rather, trial in Syracuse would benefit both parties by providing a less expensive, more straightforward and expeditious forum to resolve their dispute. The witnesses with knowledge of the issues presented in this litigation are readily identifiable, and they all reside in the Northern District of New York.

Delaware's lack of subpoena power with respect to important third party witnesses located in New York would hinder the presentation of PPC's defense by precluding live testimony and examination of these witnesses before a jury. Furthermore, the burden on scarce judicial resources would be minimized by trial in Syracuse, where the local bench is familiar with both the parties and the technology of the cable industry. For the foregoing reasons, this Court should transfer this patent litigation to the Northern District of New York.

Respectfully submitted,

/s/ Jeffrey B. Bove
Jeffrey B. Bove (# 998)
Kevin M. Baird (# 4219)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street, Suite 878
Wilmington, DE 19801
Tel: (302) 658-9141
Fax: (302) 658-5614
jbove@cblh.com
*Attorneys for Defendant John Mezzalingua Associates, Inc. d/b/a PPC*

OF COUNSEL:

WALL, MARJAMA & BILINSKI, LLP
101 South Salina Street, Suite 400
Syracuse, New York 13202
Telephone: (315) 425-9000
Facsimile: (315) 425-9114

Dated: July 18, 2005

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2005, I electronically filed Memorandum of Law in Support of Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Richard D. Kirk, Esquire
> The Bayard Firm
> 222 Delaware Avenue
> Suite 900
> Wilmington, DE 19801

I hereby certify that on July 18, 2005, I have mailed by First Class Mail, the document to the following non-registered participants:

> Lawrence P. Trapani, Esquire
> 4847 Enders Road
> P.O. Box 555
> Manlius, NY 13104

> /s/ Jeffrey B. Bove
> Jeffrey B. Bove (#998)
> Kevin M. Baird (#4219)
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899-2207
> (302) 658-9141
> *Attorneys for Defendant John Mezzalingua*
> *Associates, Inc. d/b/a PPC*