Westlaw.

Slip Copy  
2005 WL 388599 (D.Del.)  
(Cite as: 2005 WL 388599 (D.Del.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,  
D. Delaware.  
J-SQUARED TECHNOLOGIES, INC, and J-Squared Technologies (Oregon) Inc.,  
Plaintiffs,  
v.  
MOTOROLA, INC., Defendant.  
**No. Civ.04-960-SLR.**

Feb. 4, 2005.

David Allan Felice, Cozen & O'Connor Chase Manhattan Centre, Wilmington, DE, for Plaintiff.

William W. Bowser, Young, Conaway, Stargatt & Taylor The Brandywine, Wilmington, DE, for Defendant.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 4th day of February, 2005, having considered defendants' motion to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer [FN1] (D.I.10) is denied, for the reasons that follow:

> FN1. By this motion, defendant also moved to dismiss. This memorandum order addresses only the transfer motion.

1. Introduction. On August 20, 2004, plaintiffs J-Squared Technologies, Inc. ("JST") and J-Squared Technologies (Oregon), Inc. ("JSO") sued defendant Motorola, Inc. ("Motorola") alleging: (1) breach of contract; (2) promissory estoppel; (3) negligent misrepresentation; (4) breach of duty of good faith and fair dealing; and (5) violation of Arizona's Consumer Fraud Act. (D.I.1) Plaintiffs seek compensatory and punitive damages. On September 23, 2004, Motorola moved to transfer the case to the District of Arizona or, alternatively, to dismiss pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). (D.I.10) Plaintiffs oppose the motion (D.I.13) and defendant has filed its reply. (D.I.15)

2. Background. Plaintiffs are commissioned sales agents who sell products for various computer manufacturers. JST is a Canadian corporation maintaining its principal place of business in Kanata, Ontario. (D.I.1) JSO is an Oregon corporation with its principal place of business in Portland, Oregon.

3. Defendant is a Delaware corporation with its headquarters in Schaumburg, Illinois. (D.I.11) Motorola Computer Group ("MCG"), is business unit of Motorola. [FN2] (*Id.* at A1) MCG manufactures computer boards and other products for use in embedded computing applications. MCG's headquarters is in Tempe, Arizona and most of its employees reside in the state. (*Id.*)

> FN2. MCG recently changed its name to "Embedded Communications Computing Group." (D.I.11, A1)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4. According to Motorola, [FN3] MCG negotiated a Manufacturer's Representative Agreement ("MRA") with JST in October 2002. (*Id.* at A1) MCG employees were involved in the negotiations with JST. No negotiations occurred in Delaware. In March 2003, MCG negotiated a MRA with JSO. MCG employees negotiated the MRA, with nothing occurring in Delaware. (*Id.*) Both contracts were monitored from Arizona and commissions were tabulated there as well. Two former employees involved in the negotiations still reside in Arizona. (*Id.*)

> FN3. Affidavit provided by Julie Blair, a financial analyst for MCG. (D.I.11, A1)

5. Plaintiffs indicate that they never traveled to Arizona to negotiate with MCG. [FN4] (D.I.13, Ex. A) All negotiations leading to the MRAs occurred over email and telephone. The MRAs involved the sale of Motorola products in Washington, Oregon, Idaho and Canada. (*Id.*) After the contracts were executed, Motorola sent its representatives to Canada and Oregon to assist with the work. These Motorola sales management representatives were from San Jose, California and Boston, Massachusetts. The attorneys who represented JST and JSO during contract negotiations reside in Canada, but have indicated that they are willing to testify in Delaware at trial. Commission payments to JST and JSO were made from Motorola. (*Id.*)

> FN4. Affidavit of Jeffrey Gibson, chief financial officer for JST and JSO. (D.I.13, Ex. A)

6. In September, Motorola representatives from Boston and the United Kingdom decided not to renew the MRAs during a meeting with JST and JSO. This meeting occurred in Boston. Motorola contends that the decision to terminate the contracts was made in Arizona.

*2 7. Standard of Review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D.Del.1998).

8. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte,* 431 F.2d at 25.

9. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 3
2005 WL 388599 (D.Del.)
**(Cite as: 2005 WL 388599 (D.Del.))**

less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

10. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

*3 11. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.* (citations omitted).

12. Discussion. Defendant contends that transfer is warranted because Delaware has no connection to this litigation. (D.I.11, 15) Specifically, defendant argues that all negotiations and meetings occurred outside the district; the contracts at issue are governed by Arizona law; and the Arizona forum is more convenient for the parties and witnesses.

13. Plaintiffs contend their choice of forum should be afforded deference and that litigating in Delaware is as convenient as litigating in Arizona, given the nature of the transaction and the various locales involved in the transaction. (D.I.13) Further, plaintiffs assert that defendant's motion to transfer is merely a strategy meant to undermine the litigation.

14. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted advantages of moving the case to the District of Arizona are insufficient to warrant a transfer. Defendant's complaints about litigating here are outweighed by the fact that Motorola has enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction. Moreover, two potential witnesses no longer employed by Motorola have not refused to travel to Delaware for trial. Considering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial. The travel expenses and inconveniences incurred for that purpose, by a Delaware defendant conducting world-wide business, is not overly burdensome.

15. Conclusion. For the reasons stated,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                        Page 4
2005 WL 388599 (D.Del.)
**(Cite as: 2005 WL 388599 (D.Del.))**

defendant's motion to transfer (D.I.10) is denied.

2005 WL 388599 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:04CV00960 (Docket) (Aug. 20, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2004 WL 1043193 (D.Del.)
(Cite as: 2004 WL 1043193 (D.Del.))

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: TCW/CAMIL HOLDING L.L.C.,
Debtor.
TCW/CAMIL HOLDING L.L.C., Plaintiff,
v.
FOX HARON & CAMERINI LLP,
Defendant.
No. 03-10717, 03-53929, 03-1154-SLR.

April 30, 2004.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 30th day of April, 2004, having reviewed defendant's motion to transfer venue and the papers submitted in connection therewith;

IT IS ORDERED that defendant's motion (D.I.18) is denied, for the reasons that follow:

1. On June 17, 2003, plaintiff filed an adversary complaint in the United States Bankruptcy Court for the District of Delaware where plaintiff's bankruptcy case is presently pending. Plaintiff alleges that defendant, who served as its former attorneys, committed legal malpractice in the course of providing legal representation and advice during a pre-bankruptcy International Chamber of Commerce arbitration proceeding arising from a failed joint venture to acquire control of the largest Brazilian producer of rice, Josapar S.A.. [FN1] (D.I. 1, ex. A at ¶ 1) Plaintiff specifically complains that defendant's actions during the arbitration caused it to be responsible under joint and several liability when it otherwise would not have been subjected to this form of liability. [FN2] (Id. at 3) On December 19, 2003, defendant moved to withdraw the reference of the adversary proceeding from Bankruptcy Court. (Id. at 1) The court granted this motion on January 21, 2004. (D.I.6) Trial is scheduled for November 2004. (D.I.14)

FN1. Plaintiff and IRHE Holdings ("IRHE") funded the amounts of $58.75 million and $10.4 million, respectively, into Camil Holding, LLC as part of a joint venture. (D.I. 19, ex. A at 2) Camil is owned by plaintiff and Garial S.A. ("Garial"). (Id.) Through Camil, plaintiff, IRHE, and Garial sought to obtain a majority interest in Josapar S.A.. (D.I. 19 at 3) When the joint venture failed to obtain this interest, IRHE filed the arbitration to force Camil to unwind its $10.4 million investment. (D.I. 1, ex. A at 3)

FN2. In the arbitration proceedings, IRHE obtained a full judgment in its favor, and plaintiff alleges that defendant stipulated to joint and several liability for it, Camil, and Garial. (Id.) IRHE decided to collect judgment from plaintiff alone. As a result, plaintiff asserts that it was forced to file for Chapter 11 bankruptcy protection to preserve its

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 1043193 (D.Del.)  
**(Cite as: 2004 WL 1043193 (D.Del.))**

Page 2

assets.

2. Plaintiff is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York. Defendant is a limited liability partnership registered in the State of New York with offices in New York City.

3. Defendant moves the court to transfer this matter pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). A plaintiff's choice of forum is to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character. *See Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970)). A defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. *Id.* Accordingly, "defendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. *See Wesley-Jessen Corp. V. Pilkington Visioncare, Inc.,* 157 F.R.D. 215 (D.Del.1993). A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties. *See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* 1999 WL 615175, *5 (D.Del.1999).

4. In reviewing a motion to transfer venue, courts have not limited their consideration to the three factors enumerated in § 1404(a) (i.e., convenience of parties, convenience of witnesses, and interests of justice). Rather, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). The Third Circuit, in fact, has provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records to the extent that the files could not be produced in the alternative forum. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

*2 5. In considering the private interest factors under *Jumara,* the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 3
2004 WL 1043193 (D.Del.)
**(Cite as: 2004 WL 1043193 (D.Del.))**

granted and plaintiffs' choice of forum is a paramount consideration. Venue is proper in Delaware as plaintiff is incorporated under the laws of the State of Delaware. Nevertheless, the District of Delaware is not plaintiff's "home turf," since it maintains its principal place of business in New York. In this sense, it appears to be more convenient to both the plaintiff and defendant to try the instant litigation in the Southern District of New York. Indeed, this court previously recognized that "when the plaintiff has chosen to bring suit in a district that is not plaintiff's 'home turf' and that has no connection to any acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business or at the site of activities at issue in the lawsuit." *Burstein v. Applied Extrusion Techs. Inc.,* 829 F.Supp. 8 (D.Del.1992). Moreover, the locus of the alleged legal malpractice occurred in New York because the underlying arbitration was conducted there. The majority of the witnesses with discoverable information also are located in New York, though the court notes that Wilmington, Delaware is only 130 miles from New York City and is easily accessible by plane, train, or automobile. *See Praxair, Inc. v.. ATMI, Inc.,* 2004 WL 883395, *2 (D.Del.2004) (discussing proximity, transportation, and hotel options between New York City, New York and Wilmington, Delaware). On this basis, the court concludes that the private factors under *Jumara* weigh in favor of transferring the case at bar to the United States District Court for the Southern District of New York.

6. In considering the public interest factors under *Jumara,* the court is strongly persuaded by the fact that defendant argued to both the Bankruptcy Court and this court when it moved to withdraw the reference that the District of Delaware was the most efficient and expeditious forum in which to litigate this matter. Defendant, in fact, stated: "Considerations of judicial economy, expeditiousness of the proceeding, and preservation of debtors' and creditors' resources also support withdrawal of reference [to the District of Delaware]." (D.I. 1 at 7) Given its prior contention, defendant now cannot attempt to turn the table and argue for a transfer to the United States District Court for the Southern District of New York. Additionally, the parties have taken significant steps to advance the instant litigation in the District of Delaware. Defendant answered the complaint and filed a motion to dismiss and a motion for judgment on the pleadings prior to filing the motion at bar. The parties likewise exchanged initial disclosures and are set to explore settlement with the magistrate judge. Also, trial is set to occur in six months. Transfer of venue to the United States District Court for the Southern District of New York inevitably will delay this litigation, since that court is one of the largest and busiest courts in the federal system. Furthermore, the court finds that venue in the District of Delaware will facilitate the pending bankruptcy proceeding. The court, therefore, concludes that the public interest factors under *Jumara* favor maintaining venue in the District of Delaware.

*3 7. On balance, the court finds that the public interest factors outweigh the private interest factors. The court, as a result, concludes that defendant fails to prove that litigating in the District of Delaware would pose a unique or unusual burden to merit transfer of venue.

2004 WL 1043193 (D.Del.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 1043193 (D.Del.)  
**(Cite as: 2004 WL 1043193 (D.Del.))**

Page 4

**Motions, Pleadings and Filings (Back to top)**

- 1:03CV01154 (Docket) (Dec. 19, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.