UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

ARROW COMMUNICATION
LABORATORIES, INC.,

           Plaintiff,

    -vs-                              Civil Action No.
                                       1:05-CV-357-SLR

JOHN MEZZALINGUA
ASSOCIATES, INC., d/b/a PPC,

           Defendant.

---

## DECLARATION OF JOHN MEZZALINGUA

JOHN MEZZALINGUA, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.    I am President of John Mezzalingua Associates, Inc., which does business as PPC ("PPC"), Defendant in the above-captioned action. I make this Declaration in support of PPC's motion to transfer venue of this action pursuant to 28 U.S.C. § 1404(a) to the Northern District of New York.

2.    PPC is a Delaware corporation with its principal and only domestic place of business at 6176 East Molloy Road, East Syracuse, New York.

3.    PPC is a privately held, family operated company that has been manufacturing precision products for the cable industry for almost forty years. PPC designed and engineered coaxial connectors for the very first broadband networks in the United States and now designs and manufactures hardline and drop connectors, traps and filters, and fiber optic products for cable and telephone industries worldwide.

4. PPC is a Delaware corporation and routinely files all reports and pays applicable fees to maintain its good standing with the State of Delaware.

5. PPC utilizes the services of National Corporate Research, Ltd., a professional registered agent company, as its registered agent for the acceptance of service of process in Delaware.

6. PPC has no assets, including bank accounts, real or personal property located in Delaware.

7. PPC has no facility, office or sales representative physically located in the State of Delaware.

8. PPC has never manufactured the devices accused of infringement in this lawsuit or any other of its products in the State of Delaware.

9. PPC has never maintained any stock or inventory of its products in Delaware.

10. PPC has never sued or, prior to this action, been sued in Delaware.

11. PPC does not maintain a mailing address or telephone listing in Delaware.

12. PPC has not participated in any trade show or other public display of its products in Delaware.

13. The Complaint of Arrow Communication Laboratories, Inc., which is known in the telecommunications industry as "Arcom," alleges that PPC infringes U.S. Patent No.

5,745,838 ("the '838 patent") by making, using, selling and offering for sale PPC's step attenuation filters, which carry PPC product designations SSA8-54, SSA12-54, and SSA16-54.

14. In a typical coaxial cable network, signals proceed in both directions along the same cable in different frequency bands. Generally, the high frequency band passes signals from the network to a subscriber's residence (downstream), such as cable television programming, and the lower frequency band passes signals from the subscriber's equipment to the network (upstream), such as ordering information for pay-per-view programs. With the increased use of cable broadband information services and cable telephony using Voice over Internet Protocol ("VoIP"), there have been greater demands on the use and quality of the signals in the upstream or return path of a cable network. PPC's step attenuator filters provide a fixed level of flat attenuation within the upstream frequencies and are ideal for improving the return path integrity and high bandwidth services such as VoIP.

15. PPC began manufacturing its current line of step attenuation filters in approximately late 2003. PPC's step attenuation filters are manufactured in PPC's facility in East Syracuse, New York.

16. PPC currently employs approximately 19 direct sales representatives in the United States, none of whom reside or have offices located in the State of Delaware.

17. Sales of PPC's step attenuation filters are a very small part of PPC's sales. In the past two years, sales for such products are less than one quarter of one per cent of its sales over this time period.

18. PPC has not sold any step attenuation filters in the State of Delaware.

3

19. Over the past several years, a PPC sales person has contacted and solicited orders for other PPC products from a handful of customers who happen to be located in the State of Delaware. Upon information and belief, none of these solicitations have resulted in the sale of step attenuation filters.

20. PPC's sales or shipments of all trap and filter products to customers located in Delaware during the past two and a half years are less than $90,000.

21. PPC has a relatively lean organizational structure, and the absence of even a few of its key employees during the conduct of a protracted litigation in Delaware would have a substantial, adverse impact on the operation of PPC's business.

22. PPC employees who reside and work only in Central New York would be expected to testify in this action to contest the alleged infringement by PPC's products and are likely to have discoverable information regarding issues that may be pertinent to issues in this litigation. For example,

> a. John Mezzalingua, President of PPC, would likely testify as to the history of the company, its products, customers and the decision to develop, manufacture, and offer for sale PPC's step attenuation filters. He may also testify regarding the licensing policies and practices of PPC and other competitors in the telecommunications industry.

    b. Frank Parella, Vice President Sales & Marketing, would likely testify regarding the sales and marketing of PPC's products in general, and its step attenuation filters, product pricing and customers in the industry.

    c. Michael Stys, an in-house accountant with PPC, would likely testify regarding cost accounting issues related to the manufacture, sales and distribution of PPC's step attenuation filters.

    d. Ahmet Burak Olcen is one of the engineers involved in the research, development, refinement and production of PPC's step attenuation filters. He is an inventor on several PPC patents related to filter technology.

23. Additionally, one of PPC's former employees, Henry Pixley, was personally involved in the design and development of PPC's step attenuation filters. Upon information and belief, Mr. Pixley's still resides in East Syracuse, New York and, therefore, would not be subject to process requiring him to testify in person at a trial in the District of Delaware.

24. Litigating this action in the District of Delaware would require PPC to ship its corporate records relating to the alleged infringement to Delaware. PPC would he forced to reimburse its witnesses for travel and subsistence expenses. Those current employees of PPC who would be willing and able to attend trial in Delaware would also be entitled to continuance of their salaries during their attendance. These additional expenses of litigating this action in Delaware would place a substantial burden on PPC.

25. I have had personal contacts with representatives from Plaintiff Arcom over my years at PPC. Arcom competes with PPC in the manufacture and sale of various components for telecommunications networks, including specifically filters or traps for conditioning signals in coaxial cable systems. It is my understanding that Arcom is a privately owned New York corporation located in Syracuse, New York, as alleged in the Complaint in this action.

26. I have been personally involved in various negotiations between PPC and representatives of Arcom regarding various disputes, including the dispute over PPC's step attenuation filters and the '838 patent.

27. The principals of PPC and Arcom, and Arcom's outside intellectual property counsel, Lawrence Trapani, all reside in the greater Syracuse metropolitan region. The meetings between representatives PPC and Arcom regarding intellectual property issues have always occurred in or around Syracuse, New York.

28. Upon information and belief, and based at least in part on the pleadings and public records regarding Arcom's patents, the inventors of the '838 patent in this litigation, Andrew Tresness, of Manlius, New York, and Martin Zelenz, of Dewitt, New York, reside in suburbs of Syracuse, New York.

29. It is also my understanding that the President of Arcom, Greg Tresness, is a resident of Manlius, New York. Upon information and belief, other management, finance and technical employees of Arcom, who would likely have discoverable information and may be called to testify at a trial of the asserted claims, work at Arcom's headquarters and manufacturing facility in Syracuse, New York.

30. Upon information and belief, Arcom maintains its business and technical records at its headquarters and manufacturing facility in Syracuse, New York.

31. Tresness Irrevocable Patent Trust was the owner or assignee of record of the '838 patent from its filing until a few days prior to the commencement of this action. At that time, an assignment transferring an unidentified interest to Arcom in the '838 patent was filed in the U.S. Patent and Trademark Office. It is PPC's contention that information on the transfer of the interest in the '838 patent from the patent holding trust to Arcom will be relevant to the damage discovery of this litigation.

32. Upon information and belief, Tresness Irrevocable Patent Trust is a New York trust, with the principal place of business of the trustee at Arnold J. Hodes & Co, CPAs, 2030 Erie Blvd. East, Syracuse, New York. Upon information and belief, the trustee of the Tresness Irrevocable Patent Trust will not be subject to process requiring him or her to testify in person at a trial held in the District of Delaware.

33. As this dispute involves two substantial regional companies, the media has already expressed interest in the litigation between PPC and Arcom. For example, in its June 17, 2005 edition, the Central New York Business Journal ran a story on its front page regarding the lawsuits between PPC and Arcom. A copy of the article is attached to this Declaration as **Exhibit A**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 15, 2005

at Syracuse, New York.

                                                          _____
                                                          JOHN MEZZALINGUA

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2005, I electronically filed the Declaration of John Mezzalingua with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

>Richard D. Kirk, Esquire
>The Bayard Firm
>222 Delaware Avenue
>Suite 900
>Wilmington, DE 19801

I hereby certify that on July 18, 2005, I have mailed by First Class Mail, the document to the following non-registered participants:

>Lawrence P. Trapani, Esquire
>4847 Enders Road
>P.O. Box 555
>Manlius, NY 13104

>/s/ Jeffrey B. Bove
>Jeffrey B. Bove (#998)
>Kevin M. Baird (#4219)
>CONNOLLY BOVE LODGE & HUTZ LLP
>The Nemours Building
>1007 North Orange Street
>P.O. Box 2207
>Wilmington, DE  19899-2207
>(302) 658-9141
>*Attorneys for Defendant John Mezzalingua Associates, Inc. d/b/a PPC*