UNREPORTED CASES

*Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*,
2001 U.S. Dist. LEXIS 20803 (D. Del. Nov. 28, 2001)

*Invitrogen Corp. v. Incyte Genomics, Inc.*,
2002 U.S. Dist. LEXIS 8118 (D. Del. May 1, 2002)

*Siemens Medical Systems, Inc. v. Fonar Corp.*,
1995 U.S. Dist. LEXIS 22334 (D. Del. Apr. 27, 1995)

*Stratos Lightwave, Inc. v. E2O Communications, Inc.*,
    2002 U.S. Dist. LEXIS 5653 (D. Del. Mar. 26, 2002)

*TCW/Camil Holding L.L.C. v. Fox Haron & Camerini LLP*,
2004 WL 1043193 (D. Del. Apr. 30, 2004)

*Truth Hardware Corp. v. Ashland Products, Inc.*,
2003 U.S. Dist. LEXIS 409 (D. Del. Jan. 13, 2003)

1 of 1 DOCUMENT

**CYPRESS SEMICONDUCTOR CORPORATION and INTERNATIONAL
MICROCIRCUITS, INC., Plaintiffs, v. INTEGRATED CIRCUIT SYSTEMS, INC.,
Defendant.**

**C.A. No. 01-199 SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2001 U.S. Dist. LEXIS 20803*

**November 28, 2001, Decided**

**DISPOSITION:** [*1] Defendants' motion to transfer denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For CYPRESS SEMICONDUCTOR CORPORATION, INTERNATIONAL MICROCIRCUITS, INC., plaintiffs: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

For INTEGRATED CIRCUIT SYSTEMS INC., defendant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

For INTEGRATED CIRCUIT SYSTEMS INC., counter-claimant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

For CYPRESS SEMICONDUCTOR CORPORATION, INTERNATIONAL MICROCIRCUITS, INC., counter-defendants: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On March 28, 2001, plaintiff Cypress Semiconductor, Inc. ("Cypress") filed this patent action against defendant Integrated Circuit Systems, Inc., ("ICS") alleging infringement of United States Patent Nos. *5,877,656* ( *"656"*), *5,949,261* n1 ( *"261"*) and 5,656,959 ("'959"). (D.I. 2, 5) On April 12, 2001, Cypress amended the complaint naming the owner of patent '959, International Microcircuits, Inc. ("IMI"), as a plaintiff. (D.I. 5) On May 3, 2001, ICS filed an answer [*2] and counterclaim seeking a declaratory judgment that the claims in Cypress' patents are invalid. (D.I. 7)

n1 Litigation of claims regarding this patent are stayed pending the final determination of an investigation by the United States International Trade Commission. (D.I. 41)

Presently before the court is ICS' motion to transfer the case from this district to the United States District Court for the Northern District of California, San Francisco Division, pursuant to *28 U.S.C. § 1404*(a). (D.I.16) For the reasons that follow, the motion will be denied.

**II. BACKGROUND**

The technology in issue is electronic components referred to as clock generators. Clock generators are used in computers to generate timing signals needed by microprocessors and other elements of the computer to function. (D.I. 17)

Cypress is a Delaware corporation headquartered in San Jose, California. Cypress designs the clock products

constituting the patents-in-suit in Woodinville, Washington and Bangalore, [*3] India. These products are manufactured in Round Rock, Texas; Cavite, Philippines; Taiwan and Singapore. (D.I. 20) The clock products are sold in the national and international market. Cypress has a sales representative in Pennsylvania who services the Delaware market. Cypress also has sales representatives throughout the world.

IMI is a Delaware corporation with its principal place of business in Milpitas, California. (D.I.21, 23) IMI is a wholly owned subsidiary of Cypress and has offices in Istanbul, Turkey, and Tokyo, Japan. IMI is a fabless semiconductor company that out sources fabrication of its semiconductor designs to leading wafer manufacturers throughout the world. IMI designs the clock products embodying the patents-in-suit in Milpitas, California. IMI has sales representatives in Texas, Wisconsin, Illinois, Georgia, North Carolina, Canada, Germany, Israel, Singapore, Korea, Hong Kong, Taiwan and Japan. (D.I. 21) IMI distributes its clock products throughout the United States and the world.

ICS is a Pennsylvania corporation with its major technical facility and principal place of business in San Jose, in the Northern District of California, and other smaller offices in [*4] Texas, Arizona, Taiwan and Singapore. (D.I. 18) ICS is engaged in the design and sale of certain clock generator products. The San Jose facility houses most of the documentation related to ICS' clock generator product design, and is where most of its employees work. ICS n2 has neither facilities nor employees located in Delaware. ICS' CEO and CFO live in Pennsylvania and work in the Norristown headquarters. (D.I. 18)

n2 ICS does have an intellectual property holding company that is a Delaware corporation, but it does not engage in business related to the subject matter of the litigation. (D.I. 18)

## III. DISCUSSION

Title 28, Section § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case [*5] consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).*

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970),* cert. denied, *401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971).* "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567 (D.Del. 2001); Shutte, 431 F.2d at 25.*

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D.Del. 1998);* Siemens Medical Systems, Inc. v. Fonar Corporation, [*6] C.A. No, 95-261- SLR, slip. op. at 8 (D. Del. Nov. 1, 1995). Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. Statre Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* Although emphasizing that "there is no definitive formula or list of factors to consider," id., the court has identified potential factors it characterized as either private or public interest. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and [*7] financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the

Case 1:05-cv-00357-SLR    Document 13-2    Filed 08/01/2005    Page 4 of 22

Page 3
2001 U.S. Dist. LEXIS 20803, *

relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

## IV. ANALYSIS

The parties do not dispute that this action could have been initiated in the Northern District of California, San Francisco Division. Rather, they disagree whether the balance of conveniences and interests of justice compel transfer.

### A. Convenience to the Parties

ICS argues a change of venue is warranted because it would be "significantly more convenient for all concerned" [*8] to transfer to California. (D.I. 17) According to ICS:

> Each of the parties is headquartered and/or maintains its principal place of business in Northern California in the San Francisco Bay Area, no more than 20-30 miles from any of the Northern District of California Courthouses... most if not all of the relevant activities that are the subject of the litigation are centered in the Northern District of California...In IMI's case, essentially, all of its activities relating to the subject of the litigation, including the design, marketing and sale of clock generator products, are conducted out of its main facility in the Northern District of California...and it appears Cypress' marketing and sales activities relating to these products is centered in its principal facilities in the Northern District of California.

(D.I. 17 at 8-9) ICS further asserts that the discovery process would be facilitated as court supervision could be arranged more expeditiously.

Cypress counters that ICI's arguments are muted by modern technology. The court agrees. Convenience of the parties is a somewhat archaic notion in the world today. *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) [*9] Advances in technology have significantly lessened the burden of litigating in a distant district. "These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded...and have lowered the cost of

moving that information from one place to another." *Id. at 218.*

ICS focuses on how much more convenient California would be instead of establishing any special inconvenience by litigating in Delaware. (D.I. 18 at 2) ICS, however, must establish that litigating in Delaware would pose a "unique or unusual burden" on their operations. Id. ICS has not identified any particular piece of evidence or document that would be especially difficult to transport to Delaware. Compare *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D.Del. 2001)(movant argued transfer necessary for court to examine large machines).

Relatedly, another aspect of convenience to the parties proffered by ICS is the unfair expense caused by litigating here. Specifically, ICS identifies the following expenses: (1) travel costs as well as accommodation expenses associated with bringing officers, [*10] crucial employees, witnesses and experts; (2) costs associated with the absence of employees, witnesses, and experts; and (3) costs incurred by storing numerous documents. These expenses would be absent if the action were in California.

The undisputed record reflects that all the parties are national corporations with millions of dollars in annual revenue. n3 Likewise, both plaintiff and defendant are corporations that operate on a national or worldwide scale. In view of this status, convenience based on expense is uncompelling especially when the practical realities are that discovery will likely take place in California regardless of the trial venue.

> n3 According to ICS, Cypress' annual sales revenues for year-end December 31, 2000 were $ 1,287,787,000, yielding net income of $ 277,308,000. (D.I. 19) Cypress indicates that ICS generated net revenue of $ 165,521,000 in fiscal year 2000. (D.I. 22) IMI's net income from April 1999 though March 2000 was $ 3,068,000. (D.I. 19, Ex. I)

### B. Convenience of Witnesses [*11]

According to ICS, "no pertinent witnesses reside in the State of Delaware" and "no pertinent witnesses even reside on the East Coast." (D.I. 17 at 12) Consequently, all of these employees, officers, experts would have to travel to Delaware for trial, thereby resulting in substantial expense for accommodation and travel. Absent from ICS' argument is any identifiable obstacle in obtaining personal jurisdiction over a third party witness. For the reasons stated above, the court finds this argument likewise unpersuasive.

2001 U.S. Dist. LEXIS 20803, *

## C. Other Litigation

ICS submits pending patent litigation in the Northern District of California warrants transfer. Specifically, ICS sued Cypress for patent infringement on ICS' patent 5,036,216 ("'216") in the Northern District of California, San Francisco Division on April 3, 2001. (D.I. 17) ICS asserts the patents in the Delaware action and the patent-in-suit in California involve the same technology. Consequently, the same witnesses would likely be called to trial.

In response, Cypress n4 concedes both the Delaware and California suits concern the same general area of technology, but argues that is where the similarity ends. There are different parties and [*12] different patents. The court finds that the California litigation does not warrant transfer.

> n4 Cypress also has another case pending regarding the '959 patent in this court, Cypress Semiconductor Corp. v. Philips Semiconductor, Inc., C.A. No. 01-178-SLR.

## D. Access to Proof

With respect to access to proof, ICS argues transfer is appropriate because documents and witnesses are located in California. Cypress contends this is irrelevant.

> The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held [defendants']...counsel and [plaintiffs']...counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where the trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 966-67 (D. Del. 1993)* [*13] For the reasons outlined in Critikon, the court finds that ICS has not established that this factor compels the transfer of this action.

## E. Public Interests

ICS asserts that public interests weigh in favor of a transfer. The crux of this argument is a statistical comparison of the civil dockets for the districts of Delaware and California. According to the Administrative Office of the Courts:

> For the twelve month period [which] ended September 30, 2000...there is only a 15 day difference in the median time from filing to trial, 25.5 months in the Northern District of California compared with 25 months in Delaware. While the District of Delaware has fewer cases pending [1,420 compared 5,373], it also experienced a 32% increase in the number of cases pending in 1999, from 1,075 cases in the year 1999 to 1,420 cases in the year 2000. In the District of California, there are 14 judges and 12 magistrate judges compared with 4 judges and 1 magistrate judge in Delaware.

(D.I. 17)

According to ICS, transfer will save judicial resources. Cypress asserts these arguments are essentially irrelevant as plaintiff's choice of forum is the paramount consideration. [*14] This action was brought in Delaware because Cypress is incorporated in Delaware and sells products protected by the patents-in-suit in Delaware. ICS is a nearby resident of Pennsylvania and sells products that allegedly infringe the patents in Delaware. Both are national corporations that generate millions of dollars in sales in the national and international marketplace. Further, Cypress filed in Delaware because the court is noted for its efficient docket and its expertise in complex civil litigation.

No matter where this action is adjudicated, a judge will have to learn the technology. Absent a more compelling statistical disparity between districts, this court finds transfer is inappropriate.

## V. CONCLUSION

For the reasons stated, at Wilmington, this 28th day of November, 2001;

IT IS ORDERED that defendant ICS' motion to transfer is denied. (D.I. 16)

Sue L. Robinson

United States District Judge

1 of 100 DOCUMENTS

**INVITROGEN CORPORATION, Plaintiff, v. INCYTE GENOMICS, INC.,
Defendant.**

**Civil Action No. 01-692-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 8118*

**May 1, 2002, Decided**

**DISPOSITION:** [*1] Defendant's motion to transfer denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For INVITROGEN CORPORATION, plaintiff: Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For INCYTE GENOMICS INC., defendant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

For INCYTE GENOMICS INC., counter-claimant: Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE.

For INVITROGEN CORPORATION, counter-defendant: Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

Plaintiff Invitrogen Corporation ("Invitrogen") filed this patent action against defendant Incyte Genomics, Inc. ("Invitrogen") on October 17, 2001. (D.I. 1) Invitrogen contends that Incyte infringes its U.S. Patents

Nos. *5,244,797* (" *'797*"), *5,668,005* (" *'005*") and *6,063,608* (" *'608*"). On November 21, 2001, Incyte filed an answer and counterclaim seeking a declaratory judgment of invalidity and noninfringement of each of the patents. (D.I. 6)

Presently before the court is Incyte's motion to transfer venue from this district to the United States District Court for the [*2] District of Maryland pursuant to *28 U.S.C. § 1404*(a) n1. (D.I. 7) The motion has been fully briefed. (D.I. 9, 10, 11, 16, 20, 21, 22) For the reasons that follow, the motion will be denied.

> n1 Title 28, Section § 1404(a) provides: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**II. BACKGROUND**

Invitrogen is a Delaware corporation with its principal place of business in Carlsbad, California. (D.I. 1) In September 2000, Life Technologies, Inc. ("LTI") merged with and into Invitrogen. (D.I. 17) LTI was headquartered in Maryland. (Id.) Following the merger, "Invitrogen transferred much of [LTI's] executive, administrative, sales, marketing, and research and development functions to California." (Id. P4) Additional corporate functions, including distribution, finance, legal and human resources, as well as manufacturing activities [*3] related to the patents-in-suit, are designated for transfer to California sometime in 2002. (Id. P5)

2002 U.S. Dist. LEXIS 8118, *

Incyte is a Delaware corporation with its principal place of business in Palo Alto, California. (D.I. 16) Both Incyte and Invitrogen conduct business in all fifty states.

The technology at issue relates to the creation and use of a modified reverse transcriptase enzyme n2. "The invention covered by the claims of the patents-in-suit, the RNase H minus reverse transcriptase, was a significant milestone in the manipulation and understanding of the human genome and helped foster what is now called the 'genomics revolution.'" (D.I. 1 P9) All three patents were originally assigned to LTI. (D.I. 8 at 2) When the merger occurred, Invitrogen became the owner of record of the patents. Invitrogen "sells and distributes its own RNase H minus RT products styled SuperScript TM and SuperScript II TM, which are covered by the patents-in-suit, and Invitrogen marks these products accordingly." (D.I. 1 P16)

> n2 All three patents ( '797, '005, '608) are entitled "Cloned Genes Encoding Reverse Transcriptase Lacking RNase H activity" and were issued on September 14, 1993, September 16, 1997 and May 16, 2000, respectively, to Michael L. Kotewicz and Gary F. Gerard. (D.I. 1 P7)

[*4]

Incyte indicates "that it is part of the genomics industry and that it uses RNase H minus reverse transcriptase to make cDNA from mRNA." (D.I. 6 P14) Incyte further states that

> it has inventories of cDNA, that it makes products including cDNA arrays and cDNA clones which are sold to its customers, that it offers services to its customers including making custom cDNA clones, and that it generates information concerning its cDNA clones and sells and/or offers for sale access to databases containing that information.

(Id. P15)

## III. RELATED LITIGATION

The United States District Court for the District of Maryland has three cases n3 currently pending involving the same patents, the '797, '005 and '608 patents. (D.I. 10) This court has a related matter, Clontech v. Invitrogen, Civil Action No. 98-750-SLR, which until recently was stayed awaiting resolution of the Maryland action.

> n3 Life Technologies, Inc. v. Statgene Inc., Civil Action No. AW-94-277 (infringement of the '797 patent); Life Technologies, Inc. v. Clontech Laboratories, Inc., Civil Action No. AW-96-4080 (infringement of the '797 and '005 and '608 patents) (D.I. 10 Ex. F and G); Life Technologies, Inc. v.. Stratagene Holding Corp., Stratagene, Inc. and Biocrest Manufacturing, L.P., Civil Action No. 00-620-JJF (infringement of the '608 patent); Life Technologies action was originally filed in Delaware and then transferred to Maryland upon motion of defendants. (Id., Ex. I)

[*5]

## IV. DISCUSSION

Congress intended through *28 U.S.C. § 1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).*

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970),* cert. denied, *401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971).* "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.*

The deference afforded plaintiff's choice of forum will apply as [*6] long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998); Siemens Medical Systems, Inc. v. Fonar Corporation, C.A. No. 95-261-SLR, slip. op. at 8 (D. Del. Nov. 1, 1995); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, C.A. No. 01-199-SLR, slip. op. at (D. Del. Nov. 28, 2001).* Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh

strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* Although emphasizing that "there is no definitive formula or list of factors to consider," id., the court [*7] has identified potential factors it characterized as either private or public interests. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

## V. ANALYSIS

### A. Private Factors

Since the parties [*8] do not dispute that this action could have been initiated in the District of Maryland, an examination of the private issues implicated by a transfer is warranted.

Incyte argues that all significant documents, witnesses, the patent inventors and other relevant evidence is located in Maryland and, consequently, it would be more convenient to proceed in Maryland. (D.I. 8, 10)

Invitrogen conversely asserts that Maryland is no more convenient for either party than is Delaware. (D.I. 16) Because the transfer of its operations from Maryland to California is almost complete, both parties will now have their corporate offices and research and development facilities in California. Further, Invitrogen contends its "choice of forum is paramount and controlling absent compelling justification for a transfer." (Id. at 1 P2)

The court finds that the balance of the private factors does not weigh in favor of transfer. Given the proximity between the Delaware and Maryland courts, convenience of travel for the parties involved is minimal. As national corporations, plaintiff and defendant conduct business throughout the country. Moreover, considering Incyte operates out of California and by the [*9] end of the second quarter 2002, Invitrogen will likewise be conducting its entire business there, both will have to travel for the trial whether to Maryland or Delaware is inconsequential. Moreover, the practical realities are that discovery will likely occur in California regardless of the trial venue. Although Incyte indicates that witnesses, documents and other evidence relevant to this action are located in Maryland (D.I. 8), it has not identified any witnesses or documents that will have difficulty traveling to Delaware. See *Critikon, Inc. v. Becton Dickinson Vasular Access, Inc., 821 F. Supp. 962, 966-67 (D. Del. 1993); Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp.2d 518, 529 (D.N.J. 2000)* (the moving party must submit sufficient information in the record to meet its burden of persuasion to transfer).

### B. Public Interests

Similarly, the court finds the public interests implicated do not compel transfer to Maryland. Although this case involves the same patents as those under consideration in Maryland, the record does not reflect that the Maryland cases are close to trial or resolution. When presented with a similar issue [*10] two years ago, this court was persuaded that the interests of judicial economy mandated that the Delaware Clontech case be stayed pending the outcome of related litigation. (D.I. 22, Ex. S) However, the court is no longer convinced that waiting for a determination in the Maryland cases is prudent. For two years the Clontech case has been inactive while the parties and court have anticipated a decision from Maryland. Finally, since there has been no resolution, the court lifted the stay and scheduled trial for October 7, 2002. Along those lines, this action shall remain in Delaware.

## VI. CONCLUSION

For the reasons stated, at Wilmington, this 1st day of May, 2002;

IT IS ORDERED that Incyte's motion to transfer is denied. (D.I. 7)

Sue L. Robinson

United States District Judge

1 of 1 DOCUMENT

**SIEMENS MEDICAL SYSTEMS, INC., a Delaware corporation, and SIEMENS
AG, a German corporation, Plaintiffs, v. FONAR CORPORATION, a Delaware
corporation, and RAYMOND V. DAMADIAN, M.D. MRI SCANNING CENTERS
MANAGEMENT CO., INC., a Delaware corporation, Defendants.**

**Civil Action No. 95-261-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1995 U.S. Dist. LEXIS 22334*

**April 27, 1995, Filed**

**DISPOSITION:** d [*1] Defendants' motion to dismiss,
stay or transfer action denied.

**COUNSEL:** For SIEMENS MEDICAL SYSTEMS,
INC., plaintiff: Frederick L. Cottrell, III, Robert W.
Whetzel, Richards, Layton & Finger, Wilmington, DE.

For FONAR CORPORATION, RAYMOND V.
DAMADIAN, defendants: Thomas P. Preston, Duane,
Morris & Heckscher, Wilmington, DE.

For SIEMENS MEDICAL SYSTEMS, INC., counter-
defendant: Frederick L. Cottrell, III.

**JUDGES:** Sue L. Robinson, United States District
Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM ORDER

### I. INTRODUCTION

On April 27, 1995, Siemens Medical Systems, Inc.
brought this action in the United States District Court for
the District of Delaware against Fonar Corporation
("Fonar") for a declaratory judgment that Siemens had
not infringed certain Fonar patents and that Fonar was
guilty of certain "inequitable conduct" in securing the
patents. On June 15, 1995, Siemens served Fonar and
Raymond V. Damadian, M.D. MRI Scanning Centers
Management Co. ("RVDC") an amended complaint
adding a patent infringement claim against both

defendants. In its amended complaint, Siemens seeks a
declaratory judgment that U.S. Letters patent *5,061,897*
(the " *'897* patent"), [*2] *4,675,609* (the " *'609* patent"),
*4,871,966* (the " *'966* patent"), *3,789,832* (the " *'832*
patent"), and *4,616,180* (the " *'180* patent") are invalid
and not infringed.

Presently before the court is defendants' motion to
dismiss, stay or transfer the case from this District to the
United States District Court for the Eastern District of
New York pursuant to *28 U.S.C. § 1404*. (D.I. 13) For
the reasons discussed below, the motion will be denied.

### II. BACKGROUND

Plaintiff Siemens Medical Systems, Inc. ("Siemens")
is a Delaware corporation with its principal place of
business in Iselin, New Jersey. Siemens is a wholly-
owned subsidiary of plaintiff Siemens AG, a German
corporation. Defendants Fonar and RVDC are Delaware
corporations. Fonar is headquartered in Melville, New
York, in the Eastern District of New York.

On September 2, 1992, Fonar filed a patent
infringement suit in the United States District Court for
the Eastern District of New York against, inter alia,
General Electric Company ("the GE litigation"), alleging,
inter alia, infringement of the *'966* patent and the *'832*
patent. By letter dated October 7, 1992, Fonar charged
Siemens with infringement [*3] of these same patents
and stated its intent to file suit for infringement upon the
completion of the GE litigation.

In April of this year, prior to the jury verdict on
liability in the GE litigation, Siemens instituted the
present action. On June 14, 1995, plaintiffs' amended

1995 U.S. Dist. LEXIS 22334, *

complaint was filed. Two days later, on June 16, 1995, Fonar filed an action in the Eastern District of New York charging Siemens with infringement of the '897 patent and the '609 patent, which Fonar had asserted against defendant Hitachi in the GE litigation. n1 On June 19, 1995, Fonar filed the pending motion.

> n1 Hitachi settled at the outset of trial. (D.I. 13 at 7 n.2)

## III. DISCUSSION

### A. Motion to Dismiss

Title 28, Section 2201 provides, in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights or other legal relations of any interested party seeking such declaration, whether or not further [*4] relief is or could be sought.

*28 U.S.C. § 2201*(a). Ordinarily, where an action has been filed in two district courts, the court in which the action was first filed will preside over the litigation. *Optical Recording Corp. v. Capitol EMI Music, Inc., 803 F. Supp. 971 (D.Del. 1992).* Defendants contend, however, that "where a party purposefully misuses [Section 2201] to engage in forum shopping, dismissal is the rule." (D.I. 13 at 9, citing *Pacific Employers Ins. Co. v. M/V Captain W.D. Cargill, 751 F.2d 801, 804* (5th Cir.), cert, denied, *474 U.S. 909, 88 L. Ed. 2d 244, 106 S. Ct. 279 (1985)* and *Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982)).* Here, defendants argue:

> Siemens' misuse of the Declaratory Judgment Act is obvious . . . . It clearly did not file this suit to avoid accrual of avoidable damages. Those damages have already multiplied unchecked over the three years of willful infringement that have elapsed since Siemens was offered license terms in October 1992. Nor did Siemens sue here to obtain an early adjudication of its rights. It knew [*5] Fonar was prepared to file suit immediately after the GE Litigation concluded if Siemens failed to negotiate a license in good faith. . . . Siemens' earnest

> race to the courthouse began only when the GE Litigation drew to its inevitable close.

(Id. at 10-11) (citation omitted).

Moreover, defendants argue, the first filed rule may be abandoned where inconsistent with judicial and litigant economy and the just and effective disposition of disputes. (Id. at 13, citing *Serco Services Co., L.P. v. Kelly Co., Inc., 51 F.3d 1037, 34 U.S.P.Q.2d 1217 (Fed.Cir. 1995)).* In the present case, defendants aver, "the inventions at issue are exceedingly complex," and "the technology of the patents in suit is the same as the technology and patents involved in the later-filed action in the Eastern District of New York[,]" and "the same technology involved in the GE Litigation recently concluded before Judge Waxler in that District." (D.I. 13 at 12-13) According to defendants, the Eastern District's "familiarity with the subject matter of the litigation will reduce the expenditure of judicial resources in the handling of this case, a consideration which 'alone is sufficient [*6] . . . to justify departure from the first filed rule.'" (Id. at 13, quoting *Optical Recording, 803 F. Supp. at 974).* Defendants contend that Siemens' amendment of its complaint to add a claim for infringement of the '180 patent does not change the analysis, primarily because the '180 patent is "self-evidently similar to those involved in the GE Litigation." (D.I. 13 at 15)

Lastly, defendants argue that a declaratory judgment action can be dismissed "in the interests of judicial economy and for the convenience of the parties and the witnesses." (D.I. 13 at 17) (citations omitted). According to defendants, "the convenience of the litigants virtually compels dismissal here," in that (1) Siemens is headquartered in Iselin, New Jersey; (2) Fonar has no offices in Delaware; and (3) documents and witnesses relating to the patents at issue, their prosecution, and Fonar's enforcement of them, are all located in New York. n2 Should any witness be unwilling, defendants contend, their attendance at trial could be compelled only in New York. (D.I. 13 at 18)

> n2 According to defendants, all four of the named inventors on the '966 patent, all three of the named inventors on the '609 patent, and the "lead" inventor on the '897 patent reside in the Eastern District of New York, the named inventor on the '832 patent resides in Woodbury, New York, and the inventor on the '180 patent "apparently lived in Ohio at the time the patent was issued." (D.I. 13 at 7-9)

1995 U.S. Dist. LEXIS 22334, *

[*7]

Plaintiffs respond that they chose the Delaware forum not for reasons of forum shopping, but because it was more convenient than the New York forum, and that dismissal is therefore unwarranted. (D.I. 14 at 11-12) (citations omitted) Moreover, plaintiffs argue, the prosecution of this action in Delaware is not inconsistent with judicial and litigant economy and the just and effective disposition of disputes. According to plaintiffs,

> because many of the patents and issues involved in the prior GE cases are different from those here, little if any judicial economy would be achieved by having this case tried in the Eastern District of New York. Of the four Fonar patents involved here, only two were tried in the prior GE case, and they were tried to a jury rather than the judge. The Siemens' patent was not before that court at all.

(Id. at 18) (emphasis in original). As for effective disposition, plaintiffs contend, the Delaware court "moves faster [than the New York court], as reflected in the Annual Report of the Administrative Office of the United States Courts (the "AO Report"), and is recognized as having a commendable familiarity with complex litigation in general, [*8] and with patent litigation in particular." (D.I. 14 at 12) Nor, plaintiffs argue, does the convenience of the parties or witnesses warrant dismissal. According to plaintiffs, (1) Melville, New York is only 147 miles from Wilmington; (2) Wilmington is "more centrally located, which makes it more accessible to Siemens' New Jersey and North Carolina locations, and avoids the judicially-recognized and infamous traffic congestion in New York City and Long Island;" and (3) the location of documents is irrelevant. (D.I. 14 at 7, 12)

Based on the record before it, the court concludes that defendants have failed to meet their burden of demonstrating that the relevant factors warrant dismissal. Plaintiffs have not clearly engaged in forum shopping in contravention of the purpose behind the Declaratory Judgment Act. Nor is the court persuaded that reasons of judicial and litigant economy, the just and effective disposition of disputes or the convenience of the parties or witnesses justify dismissal. Therefore, defendants' motion to dismiss will be denied.

**B. Motion to Transfer**

Title 28, Section 1404(a) provides:

> For the convenience of the parties and the witnesses in the interests [*9] of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988).* "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of justice, and whether the action could have been brought in the transferee court." *SportsMEDIA Technology Corp. v. Upchurch, 839 F. Supp. 8, 9 (D.Del. 1993).* The parties do not dispute that this action could have been brought in the Eastern District of New York.

As a general rule, "because plaintiffs' choice of forum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D.Del. 1981)* (citing [*10] *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970),* cert denied, *401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971))* (emphasis added). Plaintiffs' choice of forum is "paramount." See, e.g., *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 215, 216 (D.Del 1993).* Indeed, the deference to the plaintiffs' choice of forum will apply so long as the plaintiffs have chosen the forum for some legitimate reason. See, *Tuff-Torg. Corp v. Hydro-Gear Ltd. Partnership, 882 F. Supp. 359, 362 (D.Del. 1994).* n3 In the present case, plaintiffs have a legitimate reason for their forum choice: the fact that defendants are incorporated in Delaware. n4 Therefore, even if Delaware is not plaintiffs' "home turf" for purposes of this action, deference to plaintiffs' choice will still apply.

> n3 See also *In re M.L.-Lee Acquisition Fund II, L.P., 816 F.Supp 973, 976 (D.Del. 1993)* (emphasis added) ("While transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the

interests of justice weigh strongly in favor of transfer."). [*11]

n4 As this court has previously held:

> At the outset, the fact that [defendant] incorporated in Delaware should not be disregarded lightly. By incorporating in Delaware, it can be assumed that [defendant] desired the benefits that it believed Delaware provides to chartered corporations. [Defendant] chose Delaware as its legal home and should not now complain that another [party] has decided to sue [defendant] in Delaware.

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 965 (D.Del 1993).*

With respect to convenience of the parties and witnesses, defendants contend that (1) Siemens' headquarters in Iselin, New Jersey is "a comparatively short distance from the Eastern District of New York courthouse in Hauppauge[;]" and (2) "documents and witnesses relating to the patents, their prosecution, and Fonar's enforcement of them, are all located in New York. (D.I. 13 at 18) As noted above, plaintiffs counter that (1) Melville, New York is only 147 miles from Wilmington; (2) Wilmington is "more centrally located, which makes it more [*12] accessible to Siemens' New Jersey and North Carolina locations, and avoids the judicially-recognized and infamous traffic congestion in New York City and Long Island;" and (3) the location of documents is irrelevant. (D.I. 14 at 7, 12)

Even if the Eastern District of New York were the more convenient trial forum for both the parties and the non-party witnesses, this would not be sufficient to compel a transfer. This court in Wesley-Jessen analyzed an analogous situation in which a defendant made a similar showing, and concluded that transfer was inappropriate for three reasons. First, the court noted that, being a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect. *157 F.R.D. at 218.* Defendant Fonar is similarly situated with business operations throughout the United States. (D.I. 14 at 6) The second factor noted by the court in Wesley-Jessen is the incorporation of defendant in

Delaware. Here again, the court outlined the heightened burden on such a business. "Absent some showing of a unique or unexpected burden, these corporations should not be successful in [*13] arguing that litigation in their state of incorporation is inconvenient." Id. Finally, the court noted the somewhat archaic nature of the "convenience of the parties" factor in determining a motion to transfer.

> A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum . . .. These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

Id. The court finds that defendants have not demonstrated that litigation in Delaware imposes on them a unique or unexpected burden.

The final factor to be addressed by the court is the interest of justice. In analyzing this factor the court looks to judicial resources, cost to the parties, access to proof, and the availability of compulsory process. *Critikon, 821 F. Supp. at 966.* With respect to judicial resources, defendants argue that the New York court's "familiarity with the subject matter of this litigation [*14] will reduce the expenditure of judicial resources in the handling of this case . . .." (D.I. 13 at 13) As noted above, plaintiffs respond that the Delaware court "moves faster, as reflected in the . . . AO Report . . ., and is recognized as having a commendable familiarity with complex litigation in general, and with patent litigation in particular." (D.I. 14 at 12) Specifically, plaintiffs contend,

> the AO Report for the 12-month period ending in September 1994 reported that each judge in the Eastern District of New York had 663 pending cases. That case load is more than four times the 155 pending cases per judge in the District of Delaware. The AO Report also indicated that the median time from filing to trial in civil cases is 26 months in the Eastern District of New York, compared with 16 · months in the District Court of Delaware.

(Id. at 18) (emphasis in original). Moreover, plaintiffs argue,

because many of the patents and issues involved in the prior GE cases are different from those here, little if any judicial economy would be achieved by having this case tried in the Eastern District of New York. Of the four Fonar patents involved here, only two [*15] were tried in the prior GE case, and they were tried to a jury rather than the judge. The Siemens' patent was not before that court at all.

(Id.) (emphasis in original).

Based on these arguments, the court is not persuaded that this case would be resolved in the Eastern District of New York more efficiently or expeditiously than in the District of Delaware. The efficient use of judicial resources does not require the transfer of this case.

Addressing compulsory process, defendants argue that "should any [of the New York] witnesses prove to be unwilling, their attendance at trial can be compelled only if the trial proceeds in New York." (D.I. 13 at 18) These witnesses include "most of the named inventors of the patents in issue . . .." (D.I. 19 at 5) Plaintiffs respond that "Fonar has not provided a single example of a witness who is unwilling to attend trial in Delaware." According to plaintiffs, the patent inventors specifically identified by defendants are all employed by Fonar, and their attendance can be compelled regardless of the reach of this court's subpoena power. (Id. at 20)

The court agrees with plaintiffs that here, as in *Critikon, 821 F. Supp. at 967*, [*16] defendants

ha[ve] not represented to the court that [the witnesses] would be unwilling to testify at trial voluntarily. [To the extent these witnesses are] ... employee[s] of [Fonar], ... the court must assume that [they] would be willing to testify absent a subpoena.

Accordingly, the court finds that this factor does not weigh strongly in defendants' favor.

Defendants make no specific argument concerning the cost to the parties, and the court is not persuaded that the net cost of litigating in Delaware will be significantly greater than that of litigating in the Eastern District of New York.

With respect to access to proof, defendants contend that transfer is appropriate because "documents and

witnesses relating to the patents at issue, their prosecution, and Fonar's enforcement of them, are all located in New York." (D.I. 13 at 18) Plaintiffs respond that

discovery by document production and deposition normally proceeds in patent cases without regard to the location of the forum, in that documents are either made available for inspection where they are kept by the producing party, or copies are simply provided to the requesting party's counsel. [*17] Depositions normally proceed where the witness is located or at counsel's office. . . . Fonar's counsel is located in Minnesota . . ..

(D.I. 14 at 19-20)

As this court held in Critikon:

The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held, [defendants'] ... counsel and [plaintiffs'] ... counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

*821 F. Supp. at 966-67.* For this reason, the court finds that defendants have not established that this factor compels the transfer of this action.

Based on the record as it presently stands, defendants have failed to demonstrate that the interests of justice dictate transferring this action.

## C. Motion to stay

Lastly, defendants urge this court to stay these proceedings pending resolution of the action Fonar filed against Siemens in the Eastern District of New York after plaintiffs filed the present action. [*18] (D.I. 13 at 19). The court finds no basis in this record for granting this relief and, therefore, the motion to stay will be denied.

## IV. CONCLUSION

1995 U.S. Dist. LEXIS 22334, *

Therefore, at Wilmington, this 1st day of November, 1995, IT IS ORDERED that defendants' motion to dismiss, stay or transfer this action (D.I. 13) is denied.

Sue L. Robinson

United States District Judge

1 of 1 DOCUMENT

**STRATOS LIGHTWAVE, INC., Plaintiff/Counterclaim Defendant, v. E2O
COMMUNICATIONS, INC., Defendant/Counterclaim Plaintiff.**

Civil Action No. 01-309-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2002 U.S. Dist. LEXIS 5653*

**March 26, 2002, Decided
March 26, 2002, Filed**

**DISPOSITION:** [*1] Motion to transfer venue to Central District Of California denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** Attorneys for the plaintiff, Stratos Lightwave, Inc.: Joseph N. Hosteny, III, Arthur A. Gasey, Paul C. Gibbons, Niro, Scavone, Haller & Niro, Chicago, Illinois. Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

Attorneys for the defendant, E2O Communications, Inc.: David P. Enziminger, Brett J. Williamson, David E. Lederman, O'Melveny & Meyers LLP, Los Angeles, California. William J. Wade, Richards, Layton & Finger, Wilmington, Delaware.

**JUDGES:** Joseph J. Farnan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Joseph J. Farnan

**OPINION:**

### MEMORANDUM ORDER

Presently before the court is a Motion To Transfer Venue To The Central District of California (D.I. 11) filed by Defendant E2O Communications, Inc. ("E2O"). For the reasons discussed, the motion will be denied.

### BACKGROUND

Stratos Lightwave, Inc. ("Stratos") and E2O both manufacture and sell optoelectronic transciever modules which are used in computer networks. (D.I. 8 at 1).

Stratos is a Delaware corporation with its headquarters in Chicago, Illinois and facilities in California. (D.I. 17 at 1). E2O is also incorporated [*2] in Delaware, but maintains its headquarters in Calabasas, California. (D.I. 8 at 2). The design and development of E2O's accused products is conducted in California, where the majority of E2O's domestic employees are located. (D.I. 8 at 2). The accused products are manufactured internationally, in Asia. (D.I. 8 at 2).

On May 5, 2001, Stratos filed this action against E2O alleging infringement of U.S. Patent Nos. 5,717,533, 5,734,558, 5,864,468, 5,879,173, Re. 36,820, 6,201,704B1, and 6,320,878BI. (D.I. 1). E2O subsequently filed the instant motion to transfer.

### DISCUSSION

By its motion, E2O contends that Delaware is an inconvenient forum because its corporate offices, where all the relevant documents and knowledgeable fact witnesses are located, are in California. (D.I. 8 at 7). E2O contends that litigation in Delaware would be not only expensive, but disruptive to the corporation. (D.I. 8 at 7). E2O further contends that Delaware is an inconvenient forum for the witnesses, none of whom reside in Delaware, and further that several non-party witnesses exist who would be beyond the Court's subpoena power. (D.I. 8 at 8). Additionally, E2O contends that the Central District of [*3] California is more convenient because the median time to trial is faster. (D.I. 8 at 11). Finally, E2O contends that California, not Delaware, has a local interest in deciding this controversy because the majority of the allegedly infringing activity took place in California. (D.I. 8 at 11). n1

2002 U.S. Dist. LEXIS 5653, *

n1 E2O continuously argues that Stratos' contacts with Delaware are "de minimis, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

In opposition, Stratos contends that its choice of forum is entitled to substantial deference. (D.I. 17 at 4). Stratos contends that although Delaware is not its home turf, it chose to sue E2O in Delaware because E2O is incorporated in this state. (D.I. 17 at 5). Stratos further contends that E2O, a successful international company, is capable of financing litigation in Delaware, and transferring this action to California would merely shift the burden of expense to Stratos. (D.I. 17 at 7). By E2O's failure to identify non-party witnesses [*4] beyond subpoena power, Stratos contends that the convenience of the witnesses does not weigh in favor of transfer. (D.I. 17 at 11-10). Stratos further contends that adjudication of this action, pursuant to the Court's Scheduling Order (D.I. 15), will be faster than in California, where a new scheduling order would be put in place. (D.I. 17 at 12).

Transfer of a civil action is governed by *28 U.S.C. § 1404*(a) which provides, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)* (internal citations omitted). Because it is undisputed that Stratos could have brought the instant action in the Central District of California, the Court's only task is to determine whether the factors enumerated in § 1404(a) and by the United States Court of Appeals for the Third [*5] Circuit, warrant a transfer.

The Third Circuit has instructed that when reviewing a motion to transfer under *28 U.S.C. § 1404*(a) district courts must consider, among other things, private n2 and public n3 interests. See *Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995)*. When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Id. at 883; see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1920)*. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See *Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999)*.

n2 The private interests are:

(1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial conditions, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

*Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995)*.

[*6]

n3 The public interests are:

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

Id.

## I. Private Interests

After a consideration of the relevant private interests, the Court concludes that the balance of these factors does not weigh strongly in favor of transfer. As stated previously, a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Shutte, 431 F.2d at 25*. In the instant case, stratos' preference for Delaware is not given as much deference because it, admittedly, has not chosen its home turf. See *Continental, 61 F. Supp. 2d at 131* (stating that

2002 U.S. Dist. LEXIS 5653, *

"the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen [*7] its home turf or a forum where the alleged wrongful activity occurred"). However, it is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum. See *Joint Stock Society v. Heublein, Inc., 936 F.Supp 177, 187 (D. Del. 1996).* And the fact that E2O has incorporated in Delaware is a rational and legitimate reason for choosing to sue E2O in Delaware. In fact, E2O, having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 965 (D. Del. 1993).* Therefore, Stratos' forum preference, as well as E2O's Delaware incorporation, weigh in favor of maintaining this action in Delaware.

The Court cannot conclude that the balance of the remaining factors strongly weigh in favor of transfer. No witness, reluctant to testify, beyond the subpoena power of the Court, has been identified. The relevant documents, books, and records can be easily transported to Delaware. The financial burden on Defendants to litigate in Delaware is not unduly harsh. In sum, [*8] the private interests weigh in favor of maintaining this action in Delaware.

**II. Public Interests**

In the Court's view, none of the public interests weigh in favor of transfer. Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. Similarly, because this is a patent infringement action, the familiarity of the trial judge with the application of state law is not applicable. Further, in light of the Scheduling Order already in place, the Court is not persuaded that this case would be adjudicated faster in the Central District of California. Finally, as discussed above, the Court concludes that Delaware is not an unduly inconvenient forum for E2O to litigate this action in. Accordingly, the motion to transfer will be denied. n4

n4 The Court is aware of *Methode Electronics & Stratos Lightwave, Inc. v. Finisar, 205 F.R.D. 552 (N.D.Ca. 2001)* (the "Methode Case"), and its resolution. It is the Court's view that the Methode Case is irrelevant to the instant case, and the presence or absence of that action is not material to the Court's decision to retain jurisdiction over the instant case.

[*9]

NOW THEREFORE IT IS HEREBY ORDERED this 26 day of March 2002 that E2O's Motion To Transfer Venue To The Central District Of California (D.I. 11) is **DENIED**.

Joseph J. Farnan

UNITED STATES DISTRICT JUDGE



Not Reported in F.Supp.2d
2004 WL 1043193 (D.Del.)
(Cite as: 2004 WL 1043193 (D.Del.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: TCW/CAMIL HOLDING L.L.C., Debtor.
TCW/CAMIL HOLDING L.L.C., Plaintiff,
v.
FOX HARON & CAMERINI LLP, Defendant.
**No. 03-10717, 03-53929, 03-1154-SLR.**

April 30, 2004.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 30th day of April, 2004, having reviewed defendant's motion to transfer venue and the papers submitted in connection therewith;

IT IS ORDERED that defendant's motion (D.I.18) is denied, for the reasons that follow:

1. On June 17, 2003, plaintiff filed an adversary complaint in the United States Bankruptcy Court for the District of Delaware where plaintiff's bankruptcy case is presently pending. Plaintiff alleges that defendant, who served as its former attorneys, committed legal malpractice in the course of providing legal representation and advice during a pre-bankruptcy International Chamber of Commerce arbitration proceeding arising from a failed joint venture to acquire control of the largest Brazilian producer of rice, Josapar S.A.. [FN1] (D.I. 1, ex. A at ¶ 1) Plaintiff specifically complains that defendant's actions during the arbitration caused it to be responsible under joint and several liability when it otherwise would not have been subjected to this form of liability. [FN2] (Id. at 3) On December 19, 2003, defendant moved to withdraw the reference of the adversary proceeding from Bankruptcy Court. (Id. at 1) The court granted this motion on January 21, 2004. (D.I.6) Trial is scheduled for November 2004. (D.I.14)

FN1. Plaintiff and IRHE Holdings ("IRHE")

funded the amounts of $58.75 million and $10.4 million, respectively, into Camil Holding, LLC as part of a joint venture. (D.I. 19, ex. A at 2) Camil is owned by plaintiff and Garial S.A. ("Garial"). (Id.) Through Camil, plaintiff, IRHE, and Garial sought to obtain a majority interest in Josepar S.A.. (D.I. 19 at 3) When the joint venture failed to obtain this interest, IRHE filed the arbitration to force Camil to unwind its $10.4 million investment. (D.I. 1, ex. A at 3)

FN2. In the arbitration proceedings, IRHE obtained a full judgment in its favor, and plaintiff alleges that defendant stipulated to joint and several liability for it, Camil, and Garial. (Id.) IRHE decided to collect judgment from plaintiff alone. As a result, plaintiff asserts that it was forced to file for Chapter 11 bankruptcy protection to preserve its assets.

2. Plaintiff is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York. Defendant is a limited liability partnership registered in the State of New York with offices in New York City.

3. Defendant moves the court to transfer this matter pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). A plaintiff's choice of forum is to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character. See Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970)). A defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. Id. Accordingly, "defendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. See Wesley-Jessen Corp. V. Pilkington Visioncare, Inc., 157 F.R.D. 215 (D.Del.1993). A motion to transfer venue may also

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1043193 (D.Del.)
(Cite as: 2004 WL 1043193 (D.Del.))

Page 2

be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties. *See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* 1999 WL 615175, *5 (D.Del.1999).*

4. In reviewing a motion to transfer venue, courts have not limited their consideration to the three factors enumerated in § 1404(a) (i.e., convenience of parties, convenience of witnesses, and interests of justice). Rather, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). The Third Circuit, in fact, has provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records to the extent that the files could not be produced in the alternative forum. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

*2 5. In considering the private interest factors under *Jumara,* the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiffs' choice of forum is a paramount consideration. Venue is proper in Delaware as plaintiff is incorporated under the laws of the State of Delaware. Nevertheless, the District of Delaware is not plaintiff's "home turf," since it maintains its principal place of business in New York. In this sense, it appears to be more convenient to both the plaintiff and defendant to try the instant litigation in the Southern District of New York.

Indeed, this court previously recognized that "when the plaintiff has chosen to bring suit in a district that is not plaintiff's 'home turf' and that has no connection to any acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business or at the site of activities at issue in the lawsuit." *Burstein v. Applied Extrusion Techs. Inc.,* 829 F.Supp. 8 (D.Del.1992). Moreover, the locus of the alleged legal malpractice occurred in New York because the underlying arbitration was conducted there. The majority of the witnesses with discoverable information also are located in New York, though the court notes that Wilmington, Delaware is only 130 miles from New York City and is easily accessible by plane, train, or automobile. *See Praxair, Inc. v. ATMI, Inc.,* 2004 WL 883395, *2 (D.Del.2004)* (discussing proximity, transportation, and hotel options between New York City, New York and Wilmington, Delaware). On this basis, the court concludes that the private factors under *Jumara* weigh in favor of transferring the case at bar to the United States District Court for the Southern District of New York.

6. In considering the public interest factors under *Jumara,* the court is strongly persuaded by the fact that defendant argued to both the Bankruptcy Court and this court when it moved to withdraw the reference that the District of Delaware was the most efficient and expeditious forum in which to litigate this matter. Defendant, in fact, stated: "Considerations of judicial economy, expeditiousness of the proceeding, and preservation of debtors' and creditors' resources also support withdrawal of reference [to the District of Delaware]." (D.I. 1 at 7) Given its prior contention, defendant now cannot attempt to turn the table and argue for a transfer to the United States District Court for the Southern District of New York. Additionally, the parties have taken significant steps to advance the instant litigation in the District of Delaware. Defendant answered the complaint and filed a motion to dismiss and a motion for judgment on the pleadings prior to filing the motion at bar. The parties likewise exchanged initial disclosures and are set to explore settlement with the magistrate judge. Also, trial is set to occur in six months. Transfer of venue to the United States District Court for the Southern District of New York inevitably will delay this litigation, since that court is one of the largest and busiest courts in the federal system. Furthermore, the court finds that venue in the District of Delaware will facilitate the pending bankruptcy proceeding. The court, therefore, concludes that the public interest

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1043193 (D.Del.)
**(Cite as: 2004 WL 1043193 (D.Del.))**

Page 3

factors under *Jumara* favor maintaining venue in the District of Delaware.

**\*3** 7. On balance, the court finds that the public interest factors outweigh the private interest factors. The court, as a result, concludes that defendant fails to prove that litigating in the District of Delaware would pose a unique or unusual burden to merit transfer of venue.

2004 WL 1043193 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• _____1:03CV01154_____(Docket) (Dec. 19, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3 of 5 DOCUMENTS

**TRUTH HARDWARE CORPORATION, Plaintiff, v. ASHLAND PRODUCTS, INC., Defendant.**

**C.A. No. 02-1541 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 409*

**January 13, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion to transfer the case to the United States District Court for the Northern District of Illinois, Eastern Division was denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Truth Hardware Corporation, PLAINTIFF: Rick S Miller, Ferry, Joseph & Pearce, PA, Wilmington, DE USA.

For Ashland Products Inc, DEFENDANT: Jeffrey B Bove, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On October 15, 2002, the plaintiff, Truth Hardware Corporation ("Truth") filed the instant action alleging patent infringement of its "Advent" window operator. The defendant, Ashland Products, Inc. ("Ashland") now moves to transfer this case to the United States District Court for the Northern District of Illinois, Eastern Division, because litigation concerning a related patent is currently pending between the parties in that venue. For the following reasons, the court will deny Ashland's motion.

**II. DISCUSSION**

Section 1404(a) provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district .. [*2] . where it might have been brought." n1 *28 U.S.C. § 1404*(a). It is the movant's burden to establish the need to transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).*

n1 The parties do not dispute that this action could have been filed in the Northern District of Illinois.

When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Id.* This inquiry requires "a multi-factor balancing test" embracing certain private and public interests. *Id. at 875, 879.* These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. n2 *Id. at 879.* [*3] Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80* (citations omitted).

2003 U.S. Dist. LEXIS 409, *

n2 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D. Del. 1998).*

Upon consideration of these factors, the court finds that Ashland has not met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others. First, Truth and Ashland are Delaware corporations and should reasonably expect [*4] to litigate in the forum. Additionally, the patent dispute and technology at issue is not "local" in nature or otherwise unique to the Northern District of Illinois.

Moreover, while it is true that litigation concerning a related patent is currently pending in the Northern District of Illinois, the court concludes that this is not as significant as Ashland suggests. Of critical importance in this regard is the fact that the Illinois action is several years old, has already proceeded through the dispositive motion phase, and is now set to begin trial on March 3, 2003. Thus, the advanced procedural posture of the Illinois action militates against a transfer.

Ashland further argues that, because the presiding judge in Illinois is familiar with the parties and the technology, judicial economy would be served by a transfer. While the court does not doubt that the Illinois court may be more familiar with the technology at this juncture, the present court is amply qualified to likewise familiarize itself. To the extent collateral estoppel issues may arise from the Illinois litigation, such issues will ultimately have to be decided by a court, regardless of whether that court sits in Illinois [*5] or Delaware. Thus, Ashton's arguments on this point are of little avail.

Finally, Ashton contends that non-party witness convenience weighs in favor of a transfer. The court must again disagree. In support of its contention, Ashton has identified three "critical" non-party witnesses that it claims would be inconvenienced by a trial in Delaware. Truth points out in its answer brief, hoever, that none of these witnesses resides in Illinois either, although it is unclear where they do reside. Nevertheless, it appears that these witnesses will have to travel regardless of where this action proceeds. Furthermore, the court does not find the possibility of a three-hour flight to be an onerous task warranting transfer.

## III. CONCLUSION

For these reasons, IT IS HEREBY ORDERED that:

1. Ashton's motion to transfer the case to the United States District Court for the Northern District of Illinois, Eastern Division, (D.I. 9) is DENIED.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Dated: January 13, 2003