# EXHIBIT F

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| JOHN MEZZALINGUA ASSOCIATES, INC., d/b/a PPC | ) ) ) |
| Plaintiff, | ) ) ) Case No. 3:01-CV-482-J-25 HTS |
| v. | ) ) |
| ANTEC CORP., | ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO TRANSFER VENUE**

Plaintiff, John Mezzalingua Associates, Inc., d/b/a/ PPC ("PPC"), by and through its attorneys, hereby submits its Memorandum in Opposition to the motion by Defendant, Antec Corp. ("Antec"), to transfer this case to the District of Colorado. PPC also submits the declaration of David H. Jackson, PPC's Vice President of Domestic Sales (Exhibit A hereto), which establishes that both the parties and the acts giving rise to this patent infringement action have a substantial connection to this District.

## I.
## INTRODUCTION

As shown below, and as supported by PPC's evidentiary submission herewith, PPC has significant connections to this District, and it is not disputed that Antec has

offered for sale and/or sold its accused infringing product in this District.[1] Thus, PPC's choice of forum is entitled to substantial weight. Antec has not met its heavy burden of proving that PPC's choice of forum should be disturbed. The District of Colorado is not a more convenient forum for PPC to litigate this case, nor is such a transfer in the interests of justice. Accordingly, the Court should deny Antec's motion to transfer venue and retain jurisdiction over this action.

## II.
## FACTUAL BACKGROUND

A.   **Nature of Action.**

PPC is the owner by assignment of U.S. Design Patent No. D 440,539 S ("the '539 Patent"), which relates to a new and novel ornamental design for a coaxial cable connector. On May 4, 2001, PPC filed suit in this Court against Antec alleging that Antec's Digicon Connector infringes the '539 patent. PPC subsequently moved for a preliminary injunction.[2] Antec now seeks to transfer venue of this action from this Court to the District of Colorado.

---

[1] In its brief, Antec states that "there is no truth to the allegation that Florida is being targeted in some fashion," and that "Antec is not targeting Jacksonville in any manner different from any other market." (Br. at 3). Antec, however, does not dispute that it is aggressively soliciting sales for its Digicon connector in Florida, including the Jacksonville market.

[2] The parties reached an agreement prior to the preliminary injunction hearing to expedite trial on the merits of this matter if the court would agree to such an expedited schedule in exchange for which PPC agreed to withdraw its motion. The parties subsequently reached agreement on a Case Management Report, which would place this case ready for trial in December 2001, and have filed the Report with the Court.

2

B.     **John Mezzalingua Associates, Inc., d/b/a PPC.**

PPC is a privately held company, which has been family operated since its inception in 1940. (See Mezzalingua Decl. ¶ 2, Exhibit A to PPC's Motion for a Preliminary Injunction). PPC has evolved with the cable industry over the past sixty years, designing and manufacturing coaxial cable connectors for broadband networks under the Scientific Atlanta, Jerrold, and Magnavox brand names. (*Id.* ¶ 3). PPC's focus on research and design in connection with developing products for the cable and telephone industries has yielded many patents, including the design patent in this action.

PPC manufactures and sells coaxial connectors, trap filters, and fiber optic products. (Jackson Decl. ¶ 2, Exhibit A hereto). Its coaxial cable connector is known as an EX Connector. (*Id.* ¶ 3). PPC's customers include AT&T, Cox Communications, Comcast, NTL in the UK, Telstra in Australia, and AOL Time Warner. (Mezzalingua Decl. ¶ 4).

While PPC is headquartered Syracuse, New York, it has a substantial connection to the Middle District of Florida. (Jackson Decl. ¶ 7). The state of Florida historically and continually is one of PPC's largest sales territories for its drop connectors, including PPC's EX Connector – the product that competes directly with Antec's Digicon Connector. (*Id.* ¶¶ 4 & 7). In fact, for the period 1998 through the first six months of 2001, the State of Florida was PPC's largest sales territory for its EX Connector, representing nearly 20% of all EX Connector sales. (*Id.* ¶ 7). AT&T,

3

Jacksonville's local cable company, currently is a customer of PPC's EX Connector for the Jacksonville area. (*Id.* ¶ 6).

PPC employs nineteen sales people in the United States, two of whom reside and work exclusively in Florida. (Jackson Decl. ¶ 8). While normally PPC has less than two representatives per state, because Florida is a high penetration state, PPC divided the state into two territories, north and south Florida,[3] and maintains two sales representatives in Florida. (*Id.*). One of the two sales representatives who work in Florida, Keith Albright, lives in the Tampa area in this District. (*Id.* ¶ 9). Jerry McCoy, PPC's Eastern Regional Sales Director, is responsible for supervising sales in several states, including Florida, and spends a significant amount of time in Florida, given its importance to PPC as one of its primary markets in the United States. (*Id.* ¶ 11). Further, Joe Posz, one of PPC's two applications engineers, lives in the Tampa area. (*Id.* ¶ 10). One of PPC's national account managers, Mike Hounder, now travels to Florida with some regularity, meeting with PPC's sales representatives and customers. (*Id.* ¶ 12).

Florida is also the site of important trade shows. This year the SCTE Expo was held in Orlando, Florida. (Jackson Dec. ¶ 13). The SCTE Expo is the largest technical hardware show annually. (*Id.*). About thirty of PPC's employees attended the 2001 SCTE Expo, including its President, John Mezzalingua. (*Id.*). PPC also

---

[3] PPC's south Florida territory includes many areas that are within the Middle District of Florida. (Jackson Decl. ¶ 8).

4

regularly attends an annual trade show held in Fort Lauderdale ("the South Florida Cable Show"). (*Id.* ¶ 14).

C.   <u>Antec Corporation</u>

Antec is a Georgia corporation with its headquarters in Duluth, Georgia. (Br. at 2). According to publicly available information, Antec's sales for the year 2000 were nearly one billion dollars.

Antec's accused Digicon Connector is manufactured in Taiwan and sold internationally. Antec maintains fifty-eight sales representatives worldwide for the Digicon Connector. (Lee Decl. ¶ 13, attached to Antec's Brief in Support of its Motion to Transfer Venue). Of these, five representatives work in the Florida market. (*Id.*). Based on this information given by Antec, it appears that nearly 10% of Antec's worldwide sales force for the accused Digicon Connectors work in the state of Florida.

Antec also attended the same Florida trade shows as PPC this year, the SCTE Expo in Orlando and the South Florida Cable Show in Fort Lauderdale. (Jackson Decl. ¶¶ 13 & 14). These shows are an important part of the business because they are attended by Multiple System Operators ("MSOs"). (*Id.* ¶ 13). MSOs include companies like: Adelphi, AT&T, CableVision, Comcast, Cox Communications, and AOL Time Warner. (*Id.* ¶ 6).

MSOs own the major purchasers of drop connectors, individual cable systems. (Jackson Decl. ¶ 5). Once the connector is approved by an MSO, a company may then sell the cable connector to the individual cable systems managed and owned by the

MSO. (*Id.*). While the purchasing departments of the MSOs are not located in this District, after the approval of the MSOs, a company can directly solicit sales from the individual cable systems, such as at AT&T in Jacksonville.

Antec's Digicon Connector, the accused product, directly competes with PPC's EX Connector for approval by MSOs and ultimately for sales to the individual cable systems. (Jackson Decl. ¶ 4). At both Florida shows, Antec solicited sales of its accused infringing product from MSOs. (*Id.* ¶¶ 13 & 14). Moreover, Antec is seeking to become a major provider of drop connectors to several MSOs who own and operate cable systems in Florida. (*Id.* ¶ 13). This would displace PPC's EX Connector in the Florida market, including Jacksonville. (*Id.*). Antec's infringement in the Florida market threatens to destroy PPC's Florida business, which would have a devastating effect on PPC's entire business. (*Id.*). While Antec's infringing activities may harm PPC nationwide, the immediate threat to the Florida market, including Jacksonville and other parts of the Middle District of Florida where PPC has a significant customer base, is clear given Antec's efforts to become a major if not sole provider of drop connectors to MSOs in Florida by selling an infringing product. (*Id.*).

Thus, Antec's connection to this District is not insignificant, as Antec would lead this Court to believe; in fact, the alleged infringing activities bear a substantial connection to this District.

6

III.
### ARGUMENT

A.  **The Moving Party Bears the Burden of Demonstrating That a Transfer of Venue Under Section 1404(a) Is Proper.**

In a motion to transfer venue, the moving party bears the significant burden of demonstrating that the plaintiff's chosen forum is improper. *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001).[4] This burden requires the movant to make a clear and convincing showing that the venue should be changed. *Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991). "Unless the balance strongly favors defendant, plaintiff's choice of forum will rarely be disturbed." *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000); *see also Ivax Corp. v. B. Braun of America, Inc.*, No. 00-4909-CIV-KING, 2001 U.S. Dist. LEXIS 2986, at *6 (S.D. Fla. Feb. 28, 2001) (plaintiff's choice of forum will not be disturbed unless clearly outweighed by other considerations).

In order to meet its heavy burden, the moving party must demonstrate that a transfer of venue is proper under 28 U.S.C. § 1404(a). The court must consider the following factors: (1) whether venue is proper in both the transferor and transferee courts; (2) whether the transferee court is a more convenient forum; and (3) whether the transfer serves the interests of justice. *Pasulka*, 131 F. Supp. 2d at 994. In

---

[4] Antec states that the defendant's burden "need not be overwhelming," seemingly to imply that the defendant does not bear a substantial burden. (Br. at 5). In support, Antec cites three cases: *Nieves v. American Airlines*, 700 F. Supp. 769 (S.D.N.Y. 1988); *Volk Corp. v. Art-Pak Clip Art Serv.*, 432 F. Supp. 1179 (S.D.N.Y. 1977); *A.C. Samford, Inc. v. United States*, 226 F. Supp. 72 (M.D. Ga. 1963). As more

7

determining whether the transferee court is the more convenient forum, the court will consider factors such as: the convenience of the parties and witnesses, the accessibility of evidence, the power to subpoena witnesses, the site of the occurrence of the events underlying the action, and the ability of the parties to bear the expense of trial. *Id.*; *Burger King*, 755 F. Supp. at 1030.

The "interests of justice" consideration focuses on issues other than the convenience to the parties. These issues include the plaintiff's choice of forum, the court's calendar, the court's familiarity with the law at issue in the case, and the interests of judicial economy and efficiency. *Pasulka*, 131 F. Supp. 2d at 995; *Associated Hygienic Prods., LLC v. Tracy*, 56 U.S.P.Q.2d (BNA) 1369 (N.D. Ga. 2000).

### B. Antec Has Failed to Meet Its Heavy Burden of Proving That Venue Should Be Transferred.

Antec fails to make a clear showing that this Court should transfer venue of this action to the District of Colorado. As shown herein, the Middle District of Florida bears a substantial connection to this action, the District of Colorado is not a more convenient forum, and transfer would not serve the interests of justice.

#### 1. PPC's Choice of Forum Is Entitled to Substantial Deference.

The plaintiff's choice of forum is accorded great deference, and a court will disturb this choice only upon the moving party's clear showing that transferee district is

---

recent case law indicates, however, the movant bears a significant burden. *Pasulka*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001); *Burger King*, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991).

a more convenient forum. *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000) ("[T]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations."); *Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991) ("[The plaintiff's] choice of forum will not be disturbed unless Defendants make a clear and convincing showing that venue should be changed."). In its brief, Antec states "'where the plaintiff's choice of forum is not connected with either the parties or with the subject matter of the lawsuit, the defendant generally encounters less difficulty meeting its burden.'" (Br. at 6 (quoting *Laffal v. Overseas Adventure Travel Partners*, No. 3: 99-cv-1113-J-21A, 2000 U.S. Dist. LEXIS 4547 (M.D. Fla. March 31, 2000)). This is an *exception*, however, to the general rule that courts will grant the plaintiff substantial deference in its choice of forum. This exception clearly does not apply in this case because PPC's choice of forum *is* connected with the parties and the subject matter of this lawsuit.

In support of this proposition, Antec cites two cases, both of which recognize that when the plaintiff's choice of forum is substantially connected to the plaintiff or the cause of action, the plaintiff's choice is entitled to deference. *Laffal*, 2000 U.S. Dist. LEXIS 4547 at *6-*9 (holding that the defendant met its substantial burden of demonstrating that a transfer serves the convenience of the parties and witnesses even though the plaintiff brought its action in its home forum); *Oller v. Ford Motor Co.*, No. 92-523-Civ-T-17A, 1994 U.S. Dist. LEXIS 4849 (M.D. Fla. 1994) (refusing to

9

transfer the action because the defendant did not "demonstrate a clear balance of inconvenience"). Moreover, the *Oller* court noted that "when the operative facts of the action did not occur within the Plaintiffs' chosen forum, the choice of forum is entitled to less consideration." 1994 U.S. Dist. LEXIS 4849 at *4. As demonstrated herein, the operative facts in this case did take place in this District, and PPC has a substantial connection to this District. As such, PPC's choice of forum is entitled to substantial deference.

Antec alleges that PPC has "only minimal contacts with the Middle District of Florida." (Br. at 7). Antec is clearly misinformed. Florida historically has been and continues to be one of PPC's largest sales territories and primary markets for its drop connectors including its EX Connector. (Jackson Decl. ¶ 5). In addition, several key witnesses either reside in Florida or travel to Florida regularly, including Keith Albright, a sales representative who lives and maintains a home office in this District, and Joe Posz, one of PPC's two applications engineers, lives in the Tampa area. (*Id.* ¶¶ 9 & 10). Jerry McCoy, PPC's Eastern Regional Sales Director, devotes a considerable amount of his time to the Florida market because it is a high penetration state. (*Id.* ¶ 11). PPC also has two National Account Managers, one of whom travels with some regularity to Florida because of its importance to the company. (*Id.* ¶ 12). All of these witnesses are likely trial witnesses for PPC, as to PPC's sales and marketing and competitive products, including Antec and its accused product.

Moreover, Antec has a significant connection to this District. It markets its infringing product in this District by its own efforts, as demonstrated by its solicitation of sales at the SCTE Expo earlier this year. (Jackson Decl. ¶ 13). More importantly, Antec appears to be attempting to become a major provider of drop connectors to several MSOs in Florida. (*Id.* ¶ 15). Antec is also aggressively pursuing sales of its accused Digicon connector to Jacksonville's local cable company, who is currently a customer of PPC's EX Connector. (*Id.* ¶¶ 6 & 15). As Antec's infringement threatens to cause great harm to PPC's Florida business, including Jacksonville, which would ultimately devastate PPC's entire business, it is understandable and logical that PPC would seek to stop the infringement in the district in which it could be harmed most and could lose the most business.

In determining venue, courts often look to the "center of accused activity." *Beam Laser Sys., Inc. v. Cox Communications, Inc.*, 117 F. Supp. 2d 515, 518-19 (E.D. Va. 2000) (quoting *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D.Va. 1999)) ("[T]he preferred forum in a patent infringement action is 'that which is the center of accused activity.'"). Because the plaintiffs in *Beam Laser* alleged harm caused by the use of the defendant's product, the court focused on the site of the usage -- the location at which the plaintiff was being harmed by the infringement. *Id.* In this case, the accused activity is Antec's infringement of PPC's patent, and Antec is threatening to cause tremendous harm to PPC by selling an infringing product in Florida. While Antec may be infringing the patent-in-suit in other parts of the United

States, there is a great potential for harm to PPC by Antec's infringement in Florida, including in this District. Therefore, as one of PPC's primary markets, this District is a "center of accused activity." *See id.*

In sum, PPC has significant ties to the Middle District of Florida. The facts giving rise to this action, Antec's sale of an infringing product, are occurring in this District. As such, PPC's choice of forum is entitled to substantial deference and should not be disturbed absent a clear showing by Antec that the District of Colorado is a more convenient forum and that transfer would serve the interests of justice. Antec has not made such a showing.

### 2. The District of Colorado Is Not a More Convenient Forum.

Section 1404(a) focuses on the convenience of both parties, not only the moving party, and the court will not transfer the action merely to shift the inconvenience from one party to the other. *Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991) (refusing to transfer venue when the transfer would merely shift inconvenience from defendant to plaintiff); *see also Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000) ("Where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain."). Antec argues that the District of Colorado is a more convenient forum for it, but fails to explain how the forum will be convenient for PPC.

Antec alleges that most of its witnesses live in the District of Colorado. (Br. at 8). Antec fails to explain who those witnesses are and how they would be

12

inconvenienced by traveling to this District to testify at trial.[5] Nor does Antec allege that it will be unable to procure the attendance of its witnesses at a trial in the Middle District of Florida. Antec's failure to specify the witnesses it will call and to detail what their testimony will cover is itself fatal to its motion. *See Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (movant must specifically identify the witnesses its expects to call at trial and give a description of their testimony). Instead, Antec makes only a general statement that its witnesses reside in Colorado (Br. at 8). Without more, Antec woefully fails to meet its burden of proving that this action should be transferred to another venue.

Even given any inconvenience to Antec's witnesses, Antec is merely asking the Court to shift this inconvenience to PPC. Courts will not transfer venue if the result merely shifts the inconvenience to the other party. *Burger King*, 755 F. Supp. at 1030; *see also Eye Care Int'l*, 119 F. Supp. 2d at 1319.

PPC's sales of its EX Connector in Colorado are minimal. For the period 1998 through the first half of 2001, sales of PPC's EX Connector in Colorado represented less than 1% of PPC's total EX sales in the United States. (Jackson Decl. ¶ 7). Transferring this action would greatly inconvenience PPC and force it to litigate in a forum to which its sales of EX Connectors have been negligible.

If the action is transferred to the District of Colorado, PPC's corporate executives, including PPC's President, John D. Mezzalingua, and the inventor of the

---

[5] As is usual, depositions will be taken at the location most convenient to the deponent.

patent-in-suit, Noel Montenna, will be forced to travel from PPC's headquarters in Syracuse, New York to Colorado to testify at trial. While New York and Florida are in the same time zone, Colorado is a two hour time change, which adds to the travel inconvenience and business disruption for PPC's witnesses. Additionally, PPC's Vice President of Domestic Sales, David Jackson, will likely testify as he is responsible for PPC's sales effort nationwide. Mr. Jackson resides in the Philadelphia area, which is also a two hour time change from Colorado. Moreover, as shown, PPC has employees who either reside in Florida or travel to Florida frequently who will likely testify because Florida is one of PPC's primary markets and where PPC faces substantial potential harm from Antec's infringement. PPC's sales representative, Keith Albright, who lives and works in the Middle District, and Joe Posz, an applications engineer, who also lives in this District, may testify at trial. In addition, Jerry McCoy, who regularly travels to Florida, is responsible for managing PPC's sales and marketing efforts in seventeen states, including Florida, likely will be a trial witness regarding sales and marketing of PPC's EX Connector as well as PPC's competitors.

Antec also maintains that most of its physical and documentary evidence is located in Colorado. (Br. at 8). Such a factor merits little consideration in today's real world. "[N]o matter where the trial is held, all relevant documents – regarding both the patented invention and the allegedly infringing technology – will have to be collected, copied, and sent to offices of trial counsel. . . ." *CoolSavings.com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1006 (N.D. Ill. 1999); *see also Ivax Corp.*

14

v. *B. Braun of Am., Inc.*, No. 00-4909-CIV-KING, 2001 U.S. Dist. LEXIS 2986, at *5 (S.D. Fla. Feb. 28, 2001) ("In the real world of computerization and electronic transfer of information, the assemblage of . . . data can be accomplished as easily in Miami, Florida as anywhere else."). Consequently, the location of documents does not tip the balance in favor of transfer. *CoolSavings.com*, 53 F. Supp. 2d at 1006.

Antec also alleges that the "cost of obtaining the attendance of these witnesses . . . weighs in favor of granting Antec's motion." (Br. at 8). Antec cannot be asserting that it will face a financial hardship by having to litigate this action in the Middle District of Florida. The cost of litigating in the Middle District of Florida is likely not a financial hardship for a company with nearly a billion dollars in sales like Antec. All Antec alleges is that it would be more convenient for its witnesses to testify at home. Antec neglects the inconvenience to PPC that would result from a transfer. More importantly, Antec cannot overcome the deference that is afforded to PPC's choice of forum given PPC's substantial connection to the Middle District of Florida.

### 3. Transfer Does Not Serve the Interests of Justice.

The final consideration to be addressed in a motion to transfer venue is whether the transfer serves the interests of justice. This issue includes consideration of the plaintiff's choice of forum, the court's calendar, the courts' familiarity with the applicable law, and the interests of judicial economy and efficiency. *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 995 (N.D. Ill. 2001); *Associated Hygienic Prods., LLC v. Tracy*, 56 U.S.P.Q.2d (BNA) 1369 (N.D. Ga. 2000).

15

In its brief, Antec reiterates its incorrect assertion that neither party has any connection to this District. As demonstrated, Florida is one of PPC's primary markets and Antec is attempting with an infringing product to become a major provider of drop connectors to MSOs in Florida, including Jacksonville. Thus, this action is substantially connected to this District, as is PPC. A transfer does not serve the interests of justice because, where, as here, PPC has shown a substantial connection between this action and its chosen forum, PPC's choice of forum is entitled to great deference.

Moreover, the parties and this Court agreed to an expedited schedule for final trial of this matter and the parties agreed that this case will be ready for trial in December 2001. Thus, this case will be tried in this District within seven months of the date the case was filed – in contrast to the average time to trial in the District of Colorado of about twenty-two months. (*See* 1999 Federal Court Management Statistics). It is unknown whether such an expedited schedule is available in the District of Colorado. Accordingly, a transfer to the District of Colorado would not serve the interests of judicial economy and efficiency.

Additionally, the applicable law in this case is federal patent law. As federal district courts, both this Court and the District of Colorado are equally able to apply federal law. The courts' familiarity with the law does not tip the balance in favor of Antec.

In sum, a transfer to the District of Colorado would deprive PPC of its choice of forum and merely shift the inconvenience from Antec to PPC. The parties agreed to have this case ready for trial in this District on an expedited basis, and this Court has agreed to accommodate such an expedited schedule. Obviously, this Court is as familiar with the applicable law as the District of Colorado. Thus, judicial economy and efficiency strongly favor retaining venue of this action, and a transfer would disserve the public interest.

## IV.
## CONCLUSION

PPC has significant connections to the Middle District of Florida as Florida is one of its strongest sales territories, and, as such, PPC faces the potential for considerable harm by Antec's infringement activities in this District. Antec also has a considerable presence in this District: Antec attended an industry trade show in this District where it solicited sales for an accused infringing product from MSOs and Antec is attempting to become a major provider of drop connectors to MSOs in Florida, including the Jacksonville area. The Middle District of Florida is thus a "center of the accused activity."

Antec failed to make a clear and convincing showing that PPC's choice of forum should be disturbed and that this case should be transferred to the District of Colorado. Antec merely asks the Court to shift the inconvenience of forum to PPC. As PPC has demonstrated, a transfer of venue of this action to the District of Colorado would result in inconvenience to its witnesses and a disruption of its business. PPC's choice of

17

forum should not be disturbed. Antec's Motion to Transfer should accordingly be denied.

             Respectfully submitted,

             LILES, GAVIN & COSTANTINO

             _____
             RUTLEDGE R. LILES
             Florida Bar No. 102805
             R. KYLE GAVIN
             Florida Bar No. 747076
             225 Water Street, Suite 1500
             Jacksonville, Florida 32202
             Telephone: (904) 634-1100
             Facsimile: (904) 634-1234

             Steven E. Siff
             Florida Bar No. 35233
             McDERMOTT, WILL & EMERY
             201 South Biscayne Boulevard
             Miami, Florida 33131
             Telephone: (305) 358-3500
             Facsimile: (305) 347-6500

             Attorneys for Plaintiff PPC

Of Counsel

Kenneth J. Jurek
Rosanne J. Faraci
Amy G. Doehring
McDERMOTT, WILL & EMERY
227 West Monroe Street
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to the counsel listed below, **VIA FACSIMILE and OVERNIGHT DELIVERY**, this 6th day of July, 2001.

G. Kenneth Norrie
1301 Riverplace Blvd.
Suite 1500
Jacksonville, FL 32207-9020
(904) 396-0663 – Facsimile

Douglas D. Salyers
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
(404) 885-3900 - Facsimile

_____
ATTORNEY