## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

ARROW COMMUNICATION
LABORATORIES, INC.,

        Plaintiff/ Counter Defendant,

        -vs-

JOHN MEZZALINGUA
ASSOCIATES, INC., d/b/a PPC,

        Defendant/Counter Claimant.

Civil Action No.
1:05-CV-357-SLR

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION
## TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

CONNOLLY BOVE LODGE & HUTZ LLP
Jeffrey B. Bove, #998
Kevin M. Baird, #4219
The Nemours Building
1007 North Orange Street, Suite 878
Wilmington, DE 19801
Tel: (302) 658-9141
Fax: (302) 658-5614

Of Counsel:

WALL, MARJAMA & BILINSKI, LLP
101 South Salina Street, Suite 400
Syracuse, New York 13202
Telephone:  (315) 425-9000
Facsimile:   (315) 425-9114

*Attorneys for Defendant*
 *John Mezzalingua Associates, Inc. d/b/a PPC*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ ii

I. ARGUMENT ................................................................................................ 2

    A.   Arcom Has Offered No Legitimate Reason To Support Its Choice Of Forum ........... 3

    B.   Arcom's Choice Of Forum Is Neither A Place Where Any Claim Arose
        Nor The Center Of Accused Activity ........................................................... 7

    C.   Arcom's Choice Of Forum Imposes A Unique And Unusual Burden On
        PPC And Third Party Witnesses By Imposing Unnecessary Expenses And
        Inconveniences That Do Not Benefit Any Party ........................................... 9

    D.   Arcom's Choice Of Forum Burdens The Federal Courts More Than
        Necessary And Serves No Interests Of The Residents Of Delaware ................... 12

II. CONCLUSION ............................................................................................. 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936 (E.D. Va. 2001)................................4

*Beam Laser System, Inc. v. Cox Communications, Inc.*, 117 F. Supp. 2d 515 (E.D. Va. 2000)...........................................................................................................7

*C.R. Bard v. Guidant Corp.*, 997 F. Supp. 556 (D. Del. 1998) .........................................11

*Crawford v. J.T. Gibbons*, 482 U.S. 437 (1987)................................................................12

*GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517 (E.D. Va. 1999) ................5, 7

*Glickenhouse v. Lytton Financial Corp.*, 205 F. Supp. 102 (D. Del. 1962) ......................8

*Hall v. Kittay*, 396 F. Supp. 261 (D. Del. 1975) ................................................................5

*Hilti AG v. Milwaukee Electric Tool Corp.*, 2004 WL 1812821 (E.D.N.Y.) ....................6

*Jones Pharma, Inc. v. KV Pharmaceutical Co.*, 2004 WL 323109 (D.Del.).....................5

*Joint Stock Society "Trade House Of Descendents Of Peter Smirnoff, Official Purveyor To the Imperial Court" v. Hublein, Inc.*, 936 F. Supp. 177 (D. Del. 1996) ........................................................................................................................3

*J-Squared Technoloies, Inc. v. Motorola, Inc.*, 2005 WL 388599 (D. Del.) ...................11

*Pennwalt Corp. v. Purex Industries, Inc.*, 659 F. Supp. 287 (D. Del. 1986) .....................7

*Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574 (S.D.N.Y. 1998) .....................................4

*SAS of Puerto Rico, Inc. v. Puerto Rico Telephone Co.*, 833 F. Supp. 450 (D. Del. 1993) .........................................................................................................................8

*Scovill Manufacturing Co. v. Sunbeam Corp.*, 357 F. Supp. 943 (D. Del. 1973)...............8

*The Original Creatine Patent Co., Ltd. V. Met-Rx USA, Inc.*, 2005 WL 1048748 (E.D. Va.)..................................................................................................................5

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .....................................................................2

## FEDERAL STATUTES

28 U.S.C. § 1821 ........................................................................................................12

18 U.S.C. § 201(b)(3) ................................................................................................12

28 U.S.C. § 1404(a) ....................................................................................................1

## INTRODUCTION

PPC and Arcom are two privately held, family-operated companies with their only substantial U.S. operations within a few miles of the Federal Courthouse in Syracuse, New York. Each party's respective corporate headquarters, technical employees, manufacturing facilities, business and financial records, and all identifiable non-party witnesses are located within twenty-five miles of the Federal Courthouse in Syracuse.   The claims indisputably arose in Syracuse, and all sources of proof are located in the Northern District of New York.  Indeed, the only nexus of this action with the State of Delaware is that defendant is incorporated there.  PPC's moderate sized operations and corporate structure are sufficiently regional to benefit from the transfer statute.  The Northern District of New York is the most convenient, interested, logical, and efficient forum for the resolution of this dispute.

The burden to the parties of litigating in Delaware is "unique [and] unusual" because it serves no legitimate purpose, either of the litigants, the Court, or the residents of Delaware.  The purpose of the transfer statute is to prevent *unnecessary* expenses, not just those that would devastate a company.  Arcom has utterly failed to demonstrate why PPC or this Court should rightly be burdened by its choice to remove a patent dispute away from the common home turf of both parties, away from the location of all identifiable witnesses, away from the center of accused activity to a place where no infringement has taken place, and away from federal courts that are familiar with both the technology and the parties.

Moreover, if the financial burdens of litigating hundreds of miles away from the locus of both parties' business activities are to be disregarded for a purported $68 million dollar company as they have been for multi-billion dollar Fortune 500 companies, no business entity with sufficient resources to engage in patent litigation could ever benefit under the transfer statute. By extending certain statements of the Court beyond the factual context in which they arose,

Arcom effectively argues for a patent exception to the transfer statute, which in patent cases would effectively negate its very purpose -- "to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against *unnecessary* inconvenience and expense."[1] PPC does not believe that this is the position of either the Delaware courts or the Third Circuit.

Of the twelve *Jumara* factors, Arcom's argument focuses on only two, which in the factual context of this case are the factors entitled to the least weight. Its brief offers extensive cant about the fact that it won the race to the courthouse, but fails to advance any legitimate reason or rational purpose why this Court should honor its choice of a forum that is neither the locus of any infringing activity nor the home turf of either party. Arcom asserts that it fully expects to go to trial, and that a shorter time to trial is significant to its interests. This rationale appears pretextual in view of Arcom's delay of more than 2 ½ years in bringing suit. In any event, a closer examination of the facts shows that Arcom's subjective expectation of a shorter time to trial is illusory and speculative at best. This is a case in which the balance of the *Jumara* factors strongly favors transfer. PPC's motion to transfer this case to the Northern District of New York should therefore be granted.

## I.    ARGUMENT

The facts pertaining to this motion are largely undisputed.[2] Arcom concedes that it could have filed this complaint in the Northern District of New York. It does not dispute that all identifiable witnesses and all documentary records are located in or near Syracuse, New York and none are located in or near Delaware. It does not dispute that the vast majority of the accused activity has taken place in the Syracuse area, and that no infringing activity has taken

---

[1] *Van Dusen v. Barrack*, 376 U.S. 612 (1964).

[2] PPC stands by its contention that an agreement to extend its time to answer was reached; at no time prior to Arcom's Answering Brief did Arcom or its counsel contend otherwise. Muldoon Decl. ¶¶ 8-16 and Exhibits B and C thereto.

place in Delaware.  Aside from an alleged interest in an earlier trial date, Arcom does not and

cannot contend that it would have to assume any additional burdens by virtue of transfer to the

Northern District of New York.

Thus, its defense of its choice of forum rests on the "first to file" rule, and its expectation

of an earlier trial date.  In the factual context of this case, neither of these factors is entitled to the

weight they might have in other cases.  Therefore, the balance of the *Jumara* factors strongly

favors transfer.

### A.    Arcom Has Offered No Legitimate Reason To Support Its Choice Of Forum

When a plaintiff does not choose its "home turf," its choice is not entitled to as much

deference as it might otherwise have, and it must show that its choice is nevertheless related to

its "legitimate, rational concerns."  *Joint Stock Society "Trade House Of Descendents Of Peter*

*Smirnoff, Official Purveyor To the Imperial Court" v. Hublein, Inc.*, 936 F.Supp. 177, 186-87

(D. Del. 1996).  The *Hublein* case is instructive because Judge McKelvie listed some

possibilities for such legitimate, rational concerns.

(1)    The Delaware area may be closer to the area the claims arose, to sources of
proof, or to potential witnesses than either party's "home turf."

(2)    Delaware may be relatively convenient for the defendant, but a more
neutral forum than the defendant's home forum.

(3)    A plaintiff may choose Delaware based on the court's relatively light
docket and relatively quick disposition time.

*Id*.  In this case the first two possibilities obviously do not apply, and Arcom does not argue that

they do.

Note well that neither Judge McKelvie's list nor the *Jumara* factors includes any

presumption about the superiority of the Delaware bench over other federal courts in patent

3

matters. While the competence of the Delaware bench in patent matters is well known, in matters of federal law all the federal courts are presumed to be equally competent. *See, e.g., Acterna, L.L.C. v. Adtech, Inc.*, 129 F.Supp.2d 936, 940 (E.D. Va. 2001) (with respect to patent rights, "This Court is no better or worse equipped than any other U.S. district court."); *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 578 (S.D.N.Y. 1998) ("Since patent law is federal law, any district court may handle a patent case with equal skill.").

So the legitimacy and rationality of Arcom's forum choice stands or falls on the idea of a relatively light docket and relatively quick disposition time in Delaware. In its opening brief, PPC showed that judges in the Northern District of New York have less weighted filings than those in Delaware. It also showed that the mean time to disposition for all civil matters was virtually identical between the two courts. PPC submits that this is the most relevant statistic, since most patent cases either settle or are resolved on dispositive motions. Neither of these facts suggests any relative advantage for disposition time in Delaware.

Arcom therefore advances mean time to trial in civil matters as the principal rationale supporting its selection of the Delaware forum. This contention appears pretextual in view of Arcom's 2 ½ year delay in filing suit. Having made a good faith effort to design around Arcom's '838 patent, PPC first notified Arcom's patent counsel of its now accused design for step attenuator filters in September of 2002. *See* Muldoon Reply Decl., Ex. G, Ltr. of September 6, 2002 From L. Trapani, Esq. to G. McGuire, Esq. The follow-up correspondence shows that PPC's counsel provided Arcom's patent counsel with a sample SSA filter for inspection and analysis by November 2002. *See* Muldoon Reply Decl., Ex. I. Shortly thereafter, Arcom explicitly charged that the SSA filter infringed the '838 patent. Nevertheless, Arcom did not decide to file suit until June 2005. In view of this delay, its representation that it now wishes to proceed to trial with all dispatch is inconsistent with its past actions.

4

Moreover, a closer examination of the facts shows that Arcom's expectation of an earlier trial date is not based in fact. In this regard, it is not the mean time to trial for all civil actions that matters, but rather the mean time to trial for patent cases. PPC's attorneys surveyed the 114 patent cases filed in the Northern District of New York in the last ten years. Of those that went to trial, the average time to trial was approximately 23 months. See Muldoon Reply Decl., ¶ 10). This compares to 26 months for mean time to trial for all civil matters in Delaware. *Cf. Jones Pharma, Inc. v. KV Pharmaceutical Co.*, 2004 WL 323109 (D. Del.)[3] (four month difference in jurisdictions for mean time for resolution of non-jury trials only minimally favors transfer). While PPC has no information on how this latter number might change if only Delaware patent trials were considered,[4] it is clear that any alleged benefit to Arcom with respect to an earlier trial date is speculative at best. *See Hall v. Kittay*, 396 F.Supp. 261, 264 (D. Del. 1975) ("the mere possibility of reaching trial in a shorter space of time in Delaware (conjectural at most) does not justify the denial of a transfer motion which is otherwise called for under the standards of § 1404(a)."). While Arcom's expectation of an earlier trial date might be rational, it is not legitimate because it is based on a false premise.

Even if Arcom's statistics were applicable, which they are not, federal courts have generally accorded little weight to such speculative considerations. *See, e.g., The Original Creatine Patent Co., Ltd. V. Met-Rx USA, Inc.*, 2005 WL 1048748 (E.D. Va.) (docket conditions, while a consideration, cannot be the primary reason for retaining a case; court cannot stand as a willing repository for cases having no real nexus to the district); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 520 (E.D. Va. 1999) (docket conditions, although relevant, are a minor consideration when all other reasonable and logical factors would result in a transfer

---

[3] Unreported cases are attached as Exhibit A hereto.
[4] Of course only this Court is in a position to assess its own docket, to determine the earliest trial date that might actually be available in this case if pretrial litigation were to proceed with all possible dispatch. The parties are relegated to examining statistical averages, which may not reflect the actual situation in this case.

of venue). *But see Hilti AG v. Milwaukee Electric Tool Corp.*, 2004 WL 1812821 (E.D.N.Y.) (where plaintiff selects a forum with scant connection to the subject of the action, court may properly consider whether interests of justice are served by retention in a relatively busy district to the extent it would delay adjudication of other cases brought by parties compelled to sue in that district).

Arcom states in its introduction that "this case is not complex," and follows this statement with a discussion of a settlement agreement -- an agreement between two New York corporations and controlled by New York contract law -- in a matter that was never litigated. Arcom apparently wishes to suggest without stating that there is something in that former patent dispute about different products that could be used to expedite a decision in the matter before this Court.[5] If Arcom truly believed that, however, the appropriate remedy would be a breach of contract suit in a New York state court. Despite the asserted lack of complexity and the implied connection to other PPC products, Arcom apparently does not expect to prevail at the summary judgment stage or manage to reach an acceptable settlement. If anything, the prior settlement highlights the fact that disputes about patent rights are ordinary occurrences in the business of these parties, which are best addressed in a forum that has successfully disposed of other such disputes between these parties.

In sum, Arcom has selected a forum that is not its home turf having no relationship to any of the accused activities. It has not demonstrated that its subjective expectation of a faster trial date in Delaware is well grounded in fact. It has advanced no other legitimate or rational interest that is served by its choice of forum. On these facts, that choice is entitled to little if any deference.

---

[5] The settlement agreement reveals that the former dispute involved PPC model nos. TSA 3-505, TSA 3-508, and TSA 3-511. The complaint in this case accuses PPC model nos. SSA8-54, SSA12-54, and SSA16-54.

**B.    Arcom's Choice Of Forum Is Neither A Place Where Any Claim Arose Nor The Center Of Accused Activity**

In resolving venue issues, courts typically prefer the forum that is the "center of accused activity." *Beam Laser Sys., Inc. v. Cox Communications, Inc.*, 117 F.Supp.2d 515, 518-519 (E.D. Va. 2000) (quoting *GTE Wireless, supra,* 71 F.Supp.2d at 519) ("[T]he preferred forum in a patent infringement action is 'that which is the center of accused activity'"). *Cf. Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 291 (D. Del. 1986) ("center of gravity" in case decidedly tends toward transferee forum).

Although PPC's litigation in other forums has no bearing on the issue of where this case should be litigated, insofar as it chose to litigate in other forums, its choices are largely explained by this principle.[6] Certainly, any decision to litigate in Florida federal courts, such as that in the *Antec* matter, was motivated by the fact that Florida is a critical market for cable components where infringement activities cause significant injury to PPC and affect Florida consumers. The Arizona case was transferred from a Florida jurisdiction. *See* Malak Decl., ¶ 13. The Wisconsin cases allowed PPC to get personal jurisdiction over two major infringers in the same court and efficiently coordinate trials. *Id.*, ¶ 15. The Oklahoma case was likewise the situs of infringing activity. *Id.*, ¶ 16. PPC never contended that it was incapable of litigating in Delaware or any other federal court. PPC instead contends that disputes between two Syracuse-based companies are most efficiently and logically settled in Syracuse. As PPC has noted, each of the parties' respective corporate headquarters, technical employees, manufacturing facilities, business and financial records, and all identifiable non-party witnesses are located in Syracuse. The claims

---

[6] The forums in other cases were dictated by jurisdictional considerations or the choice of PPC's opponent. The Colorado cases were dictated by the fact that it was the forum in which personal jurisdiction over an individual Colorado resident and a small Colorado company could be obtained. *See* Malak Decl., ¶ 14. In the Tennessee action, PPC was the defendant, and the forum was selected by a Tennessee plaintiff. *Id.* ¶ 17.

indisputably arose in Syracuse, and all sources of proof are located in the Northern District of New York.

Not only is Delaware not the center of accused activity in this case, it is undisputed that no infringing activity at all has occurred in Delaware. Arcom offers only speculation that at some point in the future PPC *might* sell the accused devices to Comcast, who in turn *might* at some other point in the future service a customer with the accused device. For this tenuous string of inferences, Arcom offers only hearsay about Comcast's customer base. Just as the transfer statute requires the court to examine the situation that existed when the suit was commenced to determine if transfer is appropriate,[7] the court should ground its consideration of public interest on conditions existing at the time of filing and not engage in speculation about what might happen in the future.

That Delaware is PPC's state of incorporation is likewise entitled to little weight, and certainly serves no interest of Arcom.

> The situs of the corporation or the home state of incorporation, however, is not entitled to any overwhelming consideration or weight where, as here, it is shown that in this State, there is maintained only such business records and representation as will satisfy statutory requirements, but that all of [defendant's] business is transacted elsewhere.

*Glickenhouse v. Lytton Financial Corp.*, 205 F.Supp. 102, 107 (D. Del. 1962); *see also SAS of Puerto Rico, Inc. v. Puerto Rico Telephone Co.*, 833 F.Supp. 450, 453 (D. Del. 1993) ("Where as here, the Defendant has demonstrated an alternative forum [that is] more convenient, and [] better serve[s] the ends of justice because that forum . . . has substantial connections with the litigation, incorporation in Delaware will not necessarily prevent transfer.").

---

[7] *Scovill Mfg. Co. v. Sunbeam Corp.*, 357 F.Supp. 943, 945 (D. Del. 1973).

**C.** **Arcom's Choice Of Forum Imposes A Unique And Unusual Burden On PPC And Third Party Witnesses By Imposing Unnecessary Expenses And Inconveniences That Do Not Benefit Any Party**

PPC is not attempting merely to shift the burden of litigating in an out of state forum from itself to the plaintiff. Every cost savings and convenience from litigating in Syracuse would accrue to Arcom as well as to PPC. As each parties' respective headquarters, technical employees, business and financial records and all identified party and non-party witnesses are located but a few miles from the Federal Courthouse in Syracuse, both parties would benefit from having its employee/witnesses near at hand to attend to their work responsibilities both before and after their testimonial appearances. Both parties would benefit by having third party witnesses in the Syracuse area subject to the subpoena power of the court. Neither party would have to retain Delaware counsel. Neither party would have to pay its Syracuse counsel travel and lodging expenses to litigate in Delaware,[8] whether it be motion practice, case management conferences or trial. Neither party would have to pay travel and lodging expenses for its witnesses, who are undisputedly located in Syracuse, insofar as they can be presently identified. Neither party would have the inconvenience and risk of loss or damage transporting the documents and equipment necessary to its courtroom presentation any further than the Syracuse court house.

Arcom's argument seems to be that if a defendant is capable of assuming those burdens and expenses, the court should disregard them in mindless adherence to the plaintiff's choice of forum. PPC does not believe that is the law of Delaware or the Third Circuit, and it never should

---

[8] Arcom's Michigan trial counsel would have travel and lodging expenses in either venue. Arcom has not shown that these expenses would be greater in the Northern District of New York than in Delaware.

be. Rather, the purpose of the transfer statute is the avoidance of *unnecessary* expenses and burdens.[9]

Arcom argues that PPC is not sufficiently regional in character to benefit from the transfer statute, essentially because it has employees outside of Syracuse and sells products to a national and international market. As a preliminary matter, the Declaration of Stephen Malak, Vice President and General Counsel of PPC, establishes that the Dun & Bradstreet report on which Arcom relies for its data, is seriously inaccurate and/or out of date.[10]

In fact, PPC is a privately held, family operated company with 87% of its 500 employees located in one county of the state of New York. (Malak Decl., ¶ 4). Approximately 60 of the PPC employees who are not located in Syracuse are located in a small manufacturing facility in Denmark. *Id.* ¶ 5. The remaining PPC employees are sales representatives.[11] *Id.*, ¶ 4. In this day and age, PPC has as much or more regional character than any business ever likely to appear before this Court as a patent litigant. If Arcom is correct that as soon as a corporation sells or steps out of its home state it is no longer regional -- and that determination overthrows all the analysis under the *Jumara* factors -- it is difficult to imagine any patent litigant that could ever benefit from the transfer statute.

Arcom also argues that in view of a purported $68 million dollars in sales, the burden to PPC of litigating in Delaware cannot be "unique and unusual." If PPC is to be tarred with the

---

[9] Thus, the airline schedule information in Arcom's brief is another inaccurate irrelevancy. PPC never contended that traveling to Delaware is inordinately difficult. Rather, the question is why those travel and lodging expenses should be imposed on either party when there is a court house in Syracuse that is conveniently located within a few miles of both parties.

[10] Arcom should have suspected as much, since the D & B report it submits still lists New York as PPC's state of incorporation.

[11] As noted in the Mezzalingua Declaration to the opening brief, none of these representatives reside or maintain offices in Delaware.

same stick as Motorola and Guidant Corporation,[12] it is difficult to imagine any patent litigant that could demonstrate a sufficient burden to benefit from the transfer statute.

Arcom's extension of the Delaware case law is tantamount to a patent exception to the transfer statute. The mind strains to conceive of a patent litigant that would be entirely intrastate in its operations, and makes so little money that the expenses of litigating in a foreign forum are sizable in comparison to those earnings. The United States Supreme Court has made it clear, however, that the statute is intended to prevent waste and unnecessary expenses and inconvenience in all cases. The statute is directed not just to expenses and other burdens that would devastate a litigant, but to all unjustified and wasteful expenses.

Litigating in Delaware would also impose a significant burden on third party witnesses having general knowledge of the state of the art in the industry and specific knowledge of PPC's efforts to design around this patent. Some have no relationship to PPC and would be unavailable without the subpoena power of the court. Others could come to Delaware only with significant difficulty and cost to themselves that would not be an issue in Syracuse.

In particular, Mr. Henry Pixley, who was significantly involved in PPC's design and development of the accused products, is now employed as a project manager with another Syracuse company. *See* Pixley Decl., ¶ 2. He occupies a very responsible position in his company that restricts his ability to be away from the workplace for any significant amount of time. His work responsibilities impinge on his freedom to schedule even personal matters. *Id.*, ¶ 7. In the absence of being appropriately compensated for his personal time off and for expenses,

---

[12] In *J-Squared Technoloies, Inc. v. Motorola, Inc.*, 2005 WL 388599 (D. Del.), this Court opined that the expenses of a Delaware trial were not overly burdensome to Motorola, which has revenues of 35 billion dollars and is number 49 on the 2005 Fortune 500 list. *See* Muldoon Reply Decl., Ex. J. Motorola's profits were more than an order of magnitude larger than PPC's entire revenue. Arcom cites *C.R. Bard v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998) for the "unique and unusual burden" concept. Guidant Corporation has 3.8 billion dollars in revenue and is number 485 on the Fortune 500 list. Guidant's profits were more than 5 times PPC's entire revenue. The least of the companies on the Fortune 500 list had 3.6 billion in revenues.

11

Mr. Pixley is not willing to voluntarily appear to testify in Delaware. *Id.*, ¶ 8. Moreover, his ability to appear at all would ultimately be subject to the needs of his employer. *Id.*, 9.

His reasonable expectation of appropriate compensation for his personal time is nevertheless problematic, since the United States Supreme Court has unequivocally held that no witness costs may be taxed to the losing party beyond those set forth in 28 U.S.C. § 1821. *Crawford v. J.T. Gibbons*, 482 U.S. 437 (1987). Moreover, furnishing any compensation to a fact witness beyond that provided for in § 1821 would arguably risk violation of 18 U.S.C. § 201(b)(3), or at the very least undermine his credibility. These issues would not arise to any comparable extent in Syracuse.

PPC submits that the burdens of litigating this case in Delaware are both unique and unusual, not because they would ruin PPC, but because they serve no useful purpose – to either party or to the courts. PPC has shown that there is no legitimate expectation of an earlier trial date in Delaware that might justify the added trouble and expense. Therefore, there remains no reason not to take advantage of the efficiencies and economies of disposing of this dispute in Syracuse. Waste and inefficiency are not justified merely because they can be absorbed.

**D.    Arcom's Choice Of Forum Burdens The Federal Courts More Than Necessary And Serves No Interests Of The Residents Of Delaware**

The residents of Delaware have no stake in the resolution of this patent dispute. There have been no infringing sales in Delaware, and it is entirely unclear when and if there might be any in the future.

By contrast, the resolution of the lawsuit is of particular interest to the residents of Syracuse. While as a general matter there may be no local interest in the development of federal patent law, in this case there is certainly a local interest in how the result may affect the Syracuse economy. Arcom is simply wrong that the lawsuit will not affect the Syracuse economy no matter how it is resolved. There is a great deal of difference between a competitive market and

one that is restricted by a patent monopoly. First of all, a monopolist will raise the price of a product so as to maximize its profits and thereby reduce demand for the product below what it would be in a competitive market. This result will reduce the labor required to meet the demand. Moreover, increasing the output of one established maker of a product does not create as much employment and/or purchasing activity as two competing organizations that both create infrastructures to produce the product.

If there is any public interest at all in maintaining the action in Delaware, it would have to be an interest in regulating Delaware corporations. Seeing that none of the accused activity has impacted Delaware, however, that interest is much attenuated. It does not justify the additional burden on the Delaware courts to learn new matter and to dissipate scarce judicial resources that would be better expended on litigants having better reasons for litigating in Delaware.

By contrast, the courts of the Northern District of New York have disposed of patent disputes involving these parties and other cable components manufacturers, and will do so with regularity in the future. They have gained a familiarity both with the parties in this lawsuit, and with the general area of technology to which the subject patent pertains. They would therefore have a shorter learning curve in this case, and could dispose of a local dispute in the locale in which it arose. There is every reason to exploit the advantages of that forum.

## II.    CONCLUSION

There is no justification for the unnecessary burdens and expenses of litigating this patent dispute away from the home state of both parties, away from the location of all identifiable witnesses and documents, and away from the location of the accused activities. There is also no sufficient reason for this Court to devote scarce judicial resources to learning new matter and to managing a case that can be better handled elsewhere. The motion for transfer to the Northern District of New York should be granted.

Dated:  August 8, 2005

CONNOLLY BOVE LODGE & HUTZ LLP

By:     /s/ Jeffrey B. Bove
        Jeffrey B. Bove, #998
        Kevin M. Baird, #4219
        The Nemours Building
        1007 North Orange Street
        Suite 878
        Wilmington, DE 19801
        Tel: (302) 658-9141
        Fax: (302) 658-5614

Of Counsel:

WALL, MARJAMA & BILINSKI, LLP
James R. Muldoon, Esq.
101 South Salina Street,
Suite 400
Syracuse, New York 13202
Telephone:  (315) 425-9000
Facsimile:   (315) 425-9114

*Attorneys for Defendant*
 *John Mezzalingua Associates, Inc. d/b/a PPC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2005, I electronically filed the foregoing document with

the Clerk of Court using CM/ECF which will send notification of such filing to the following:

> Richard D. Kirk, Esquire
> The Bayard Firm
> 222 Delaware Avenue
> Suite 900
> Wilmington, DE 19801

I hereby certify that on August 8, 2005, I caused to be served true and correct copies of

the foregoing document on the following in the manner indicated below:

| **By Hand Delivery** | **By First Class Mail** |
|---|---|
| Richard D. Kirk, Esquire<br>The Bayard Firm<br>222 Delaware Avenue<br>Suite 900<br>Wilmington, DE 19801 | Lawrence P. Trapani, Esquire<br>4847 Enders Road<br>P.O. Box 555<br>Manlius, NY 13104 |

> /s/ Jeffrey B. Bove
> Jeffrey B. Bove, #998
> Kevin M. Baird, #4219
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899-2207
> (302) 658-9141
>
> *Attorneys for Defendant John Mezzalingua*
> *Associates, Inc. d/b/a PPC*