Westlaw.

Not Reported in F.Supp.2d

2004 WL 323109 (D.Del.)

(Cite as: 2004 WL 323109 (D.Del.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
JONES PHARMA, INC. and King
Pharmaceuticals, Inc., Plaintiffs,
v.
KV PHARMACEUTICAL CO., Defendant.
**No. Civ.A. 03-786 JJF.**

Feb. 17, 2004.

Paul E. Crawford, and Patricia S. Rogowski, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, F. Dominic Cerrito, Daniel L. Malone, and John C. Martin, of Pennie & Edmonds LLP, New York, New York, for Plaintiffs Jones Pharma, Inc., and King Pharmaceuticals, Inc., of counsel.

Josy W. Ingersoll, and Christian Douglas Wright, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Defendant KV Pharmaceutical Co.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is Defendant KV Pharmaceutical Co.'s ("KV") Motion To Transfer To Eastern District Of Missouri Pursuant To 28 U.S.C. § 1404(a). (D.I.8.) For the reasons set forth below, the Court will deny KV's Motion.

BACKGROUND

This case is a Hatch-Waxman patent infringement action under 35 U .S.C. § 271(e)(2) arising from an Abbreviated New Drug Application KV submitted for approval in order to sell a generic version of Jones Pharma, Inc.'s ("Jones") drug Levoxyl. By its

Motion, KV seeks a **transfer** of the instant action to the Eastern District of Missouri.

I. Parties' Contentions

KV contends that the instant action could have been brought in Missouri. Further, KV contends that Jones did not file the instant action on its "home turf," and therefore, Jones's decision to file in Delaware is not entitled to the deference ordinarily accorded to a plaintiff's choice of forum. KV also contends that the private and public interests favor **transfer** to Missouri.

In response, Jones contends that although its principal place of business is not in Delaware, both KV and it are Delaware corporations. Therefore, Jones contends that the Court should give strong deference to its decision to file the instant action in Delaware. Further, Jones contends that the private and public interests do not strongly favor **transfer** to Missouri.

DISCUSSION

28 U.S.C. § 1404(a) provides the standard for a convenience **transfer** to another jurisdiction. Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may **transfer** any civil action to any other district or division where it might have been brought." The Third Circuit has not limited itself to the factors listed in Section 1404(a), instead requiring courts to consider the private and public interests protected by Section 1404. The private interests include:

plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties ...., the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 323109 (D.Del.)

(Cite as: 2004 WL 323109 (D.Del.))

files could not be produced in the alternative forum).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest ..., [and] the public policies of the fora." *Id.* (citations omitted). "The burden of establishing the need for **transfer** ... rests with the movant." *Id.* Unless the movant demonstrates that the balance of conveniences strongly favors **transfer**, plaintiff's forum choice should prevail. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970).

**I. Whether Plaintiffs' Choice Of Forum Is Entitled To "Paramount Consideration"**

*2 Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F.Supp. 759, 764 (D.Del.1991). Under Section **1404(a)**, "home turf" refers to a corporation's principal place of business. *Id.* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communications, Inc.*, C.A. No. 01-309 JJF, 2002 WL 500920 at *2 (D.Del. March 26, 2002). Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Jones's decision to file the instant action in Delaware.

Both Jones and KV are Delaware corporations. And, as the Court observed in *Stratos*, a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum. 2002 WL 500920 at *2. Therefore, to prevail on its Motion, KV must demonstrate that the *Jumara* factors strongly favor a **transfer** to

Missouri.

**II. Whether The Private Interests Strongly Favor Transfer**

Although the claim arose and the parties have their principal places of business in Missouri, the Court concludes that these factors, along with the remaining *Jumara* private interest considerations, do not strongly favor a **transfer** to Missouri. First, the Court concludes that the convenience of the parties does not favor venue in one jurisdiction over the other. Neither party would be unduly burdened by litigating this action in Delaware or Missouri. *See Pennwalt Corp. v. Purex Inds., Inc.*, 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). KV's annual sales approximate $240 million (D.I. 12; Ex. 1) and Jones's annual sales approximate $245 million. (D.I. 14; Ex. D.) Therefore, the Court concludes that litigating this action in Delaware will not "place a significant and onerous burden" on either party. *Pennwalt*, 659 F.Supp. at 290. Further, although both parties have their principal places of business in Missouri, both parties are incorporated in Delaware. And, as KV chose to avail itself of the laws of Delaware, it may not now complain because Jones decided to sue it in this state. *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 833 F.Supp. 450, 453 (D.Del.1993).

Next, although KV contends that the books and records necessary to litigate this action are in Missouri, KV does not contend that they could not be produced or would be unavailable in Delaware. Therefore, the Court does not consider the location of the books and records as weighing in favor of a **transfer** to Missouri. *See Jumara*, 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum."). Further, all of the witnesses relating to the formulation and development of its generic drug that KV intends to call at trial, save Mr. Franz, are current KV employees. (D.I.10.) These employee witnesses are party witnesses and are presumed willing to testify at trial. *Affymetrix, Inc. v. Synteni,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 323109 (D.Del.)

**(Cite as: 2004 WL 323109 (D.Del.))**

Page 3

*Inc.*, 28 F.Supp.2d 192, 203 (D.Del.1998) ("Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial."). With respect to Mr. Franz, the Court is not persuaded by KV's contention that Mr. Franz's retirement from KV and residence in Missouri strongly favors a **transfer** of the instant action. As noted above, the movant bears the burden in motions to **transfer**, *Jumara*, 55 F.3d at 879, and KV has provided the Court with no evidence that Mr. Franz, KV's former CEO, would be unwilling to testify on its behalf. Accordingly, the Court gives little weight to Mr. Franz's status as a non-party witness and residence in Missouri.

III. Whether The Public Interests Strongly Favor **Transfer**

*3 The Court also concludes that the public interests do not weigh strongly in favor of a **transfer** to Missouri. First, the Court is unpersuaded by KV's contention that the congestion of the Delaware courts strongly favors a **transfer**. *See Affymetrix*, 28 F.Supp.2d at 206 (noting that the congestion of a court's docket is a legitimate factor to be considered in a motion to **transfer**). The median time for completion of non-jury trials in the District of Delaware is twenty-seven months, compared to twenty-three months in the Eastern District of Missouri. (D.I. 9; Ex. B.) The Court considers this four-month difference as, at most, only minimally favoring a **transfer**.

Further, there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos*, rights relating to patents are not local or state matters. 2002 WL 500920 at *2. Therefore, patent rights cannot give rise to a local controversy or implicate local interests. *Id.* Accordingly, the Court concludes that the fact that the alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

CONCLUSION
Based upon Jones's decision to file the instant

lawsuit in Delaware and the absence of strong private or public interests favoring **transfer** to Missouri, the Court concludes that the *Jumara* factors do not strongly favor a **transfer** of the instant action under 28 U.S.C. § **1404(a)**. Accordingly, the Court will deny KV's Motion.

An appropriate Order will be entered.

*ORDER*
At Wilmington, this 17th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that KV Pharmaceutical Co.'s Motion To **Transfer** To Eastern District Of Missouri Pursuant To 28 U.S.C. § **1404(a)** (D.I.8) is *DENIED*.

2004 WL 323109 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00786 (Docket)

(Aug. 07, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

2005 WL 1048748 (E.D.Va.)

(Cite as: 2005 WL 1048748 (E.D.Va.))

Only the Westlaw citation is currently available.

United States District Court,
E.D. Virginia.
THE ORIGINAL CREATINE PATENT
COMPANY, LTD., Plaintiff,
v.
MET-RX USA, INC. d/b/a Met-Rx Engineered
Nutrition, Defendant.
No. Civ.A. 204CV759.

May 3, 2005.

Conrad Moss Shumadine, Michael Robert Katchmark, Willcox & Savage PC, Norfolk, VA, Marc R. Labgold, Patton Boggs LLP, Washington, DC, James K. Lewis, Patton Boggs LLP, Denver, CO, for Plaintiff.

Kristan Boyd Burch, Stephen Edward Noona, Kaufman & Canoles PC, Norfolk, VA, for Defendant.

*MEMORANDUM OPINION AND ORDER*

FRIEDMAN, J.

*1 This matter comes before the court on the motion of the defendant, Met-Rx USA, Inc. d/b/a/ Met-Rx Engineered Nutrition ("Met-Rx"), to transfer this action to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth herein, the defendant's motion to transfer is GRANTED.

I. Factual and Procedural History

The plaintiff, The Original Creatine Patent Company, Ltd. ("OCPC"), filed a complaint on December 20, 2004, seeking relief for the defendant's alleged willful induced patent infringement. The plaintiff is the assignee of the rights and title in United States Patent No. 5,769,159 ("the '159 patent"), which concerns a method for optimizing creatine intake that is commonly referred to as "creatine loading." Creatine is a chemical that is marketed and sold by the defendant as a sports nutrition product. Its use by weight lifters and other athletes is associated with increased body mass, strength, endurance and athletic performance.

The plaintiff is a British company organized under the laws of the United Kingdom with its principal place of business located in Cambridge, United Kingdom. The defendant is a Nevada corporation with its principal place of business in Bohemia, New York. [FN1] The defendant is a manufacturer, wholesaler and distributor of sports nutrition supplements and related food products, creatine among them, which it sells to independent retailers and distributors nationwide, including some retailers and one distributor in Virginia.

> FN1. The complaint identifies the defendant's principal place of business as Boca Raton, Florida; however, the defendant avers by declaration attached to the instant motion that it owns no property in Florida, rather a predecessor corporation maintained its corporate headquarters there for a time. The defendant, also by declaration, maintains that its principal place of business and center for sales, marketing, labeling and advertising is located in New York.

The defendant filed its motion to transfer this action on February 22, 2005. Following two granted motions for extensions of time, which were also agreed to by the defendant, the plaintiff filed its opposition memorandum on April 1, 2005. Following the plaintiff's second motion for an extension of time, but prior to the order granting such extension, the Rule 16(b) scheduling conference was held and trial in this matter was set

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1048748 (E.D.Va.)

**(Cite as: 2005 WL 1048748 (E.D.Va.))**

Page 2

for October 18, 2005. The defendant filed its reply memorandum on April 6, 2005. Thus, the matter is fully briefed and ripe for judicial resolution.

## II. Discussion
### A. Standard of Review--Motion to Transfer

Title 28 U.S.C. § 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this section is "to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26-27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). As the Supreme Court has explained, section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " *Stewart Org., Inc. v. Ricoh, Inc.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *see also Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc.,* 83 F.Supp.2d 689, 696 (E.D.Va.2000) (recognizing discretion placed in district **court** to **transfer** for more **convenient** forum). The burden is on the movant to show that a **transfer** under 28 U.S.C. § 1404(a) is warranted. *See Cognitronics,* 83 F.Supp.2d at 696.

\*2 In order to decide if a **transfer** of **venue** is appropriate in this matter, the **court** must first determine whether the suit could have been brought in the Eastern District of New York, and second, whether the balance of **convenience** to the **parties** and consideration of the interest of justice justify **transfer** to the Eastern District of New York. *See LG Elecs., Inc. v. Asustek Computers,* 126 F.Supp.2d 414, 423 (E.D.Va.2000); *Corry v. CFM Majestic Inc.,* 16 F.Supp.2d 660, 663 (E.D.Va.1998) . After a review of the record in this case, the court finds that this case could have been initiated in the

Eastern District of New York and that the relevant authority, factual circumstances and considerations of fairness and convenience compels its transfer.

### B. Jurisdiction and Venue in the Eastern District of New York

In ruling on a motion to transfer, the court first determines whether the plaintiff could have brought its claims in the Eastern District of New York. *See Agilent Tech., Inc. v. Micromuse, Inc.,* 316 F.Supp.2d 322, 325 (E.D.Va.2004). This prerequisite is satisfied if the federal district court in the Eastern District of New York court would have jurisdiction over the subject matter of the action, if venue would be proper, and if the defendant would be amenable to process in that court. *See Koh v. Microtek Int'l, Inc.,* 250 F.Supp.2d 627, 630 (E.D.Va.2003).

Venue as to patent infringement claims is governed by 28 U.S.C. § 1400(b), which instructs that "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400. [FN2] A corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Cognitronics,* 83 F.Supp.2d at 691. Thus, if personal jurisdiction may be exercised over the defendant in the Eastern District of New York, the prerequisites of section 1400(b) are also satisfied.

> FN2. Although not raised by the parties, the court cannot help but observe that venue is somewhat more tenuous in this district than in the Eastern District of New York. In its complaint, the plaintiff appears to rely on the second portion of section 1400(b) in support of venue in this district, claiming that "the defendant has committed infringement and otherwise engaged in commerce within this judicial district." 28 U.S.C. § 1400(b). In a district where the defendant does not reside, however, venue is only proper where the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1048748 (E.D.Va.)

**(Cite as: 2005 WL 1048748 (E.D.Va.))**

Page 3

defendant has committed acts of infringement *and* has a regular and established place of business. It does not appear to the court that the defendant has such a place of business in Virginia that would necessarily support venue under this second prong. The first part of section 1400(b), however, looks to the district in which the defendant resides. For venue purposes, a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Cognitronics,* 83 F.Supp.2d at 691. If infringing sales have been made in this district, then personal jurisdiction likely exists, as does venue.

The defendant has averred by sworn declaration that its Bohemia, New York offices are its corporate headquarters and that relevant corporate documents, officers and employees with knowledge of the sales and labeling of its products reside in New York. As the plaintiff's claim involves an alleged violation of federal patent laws, the federal district court in the Eastern District of New York has federal question subject matter jurisdiction. *See* 28 U.S.C. §§ 1331, 1338(a). Because the defendant has its principal place of business within the Eastern District of New York, it resides there for purposes of establishing both personal jurisdiction and **venue**. *See* 28 U.S.C. §§ 1391(c), 1400(b). Accordingly, this is an action that could have been initiated in the United States District **Court** for the Eastern District of New York. *See* 28 U.S.C. § 1404(a); *Koh,* 250 F.Supp.2d at 630.

B. Plaintiff's Choice of Forum / **Convenience** to **Parties** and Witnesses

*3 The **court** next inquires as to whether a **transfer** of the claims asserted against the defendant would undermine the plaintiff's choice of **venue** and whether a **transfer** would promote the **convenience** of the **parties** and witnesses. *See Koh,* 250 F.Supp.2d at 633; *GTE Wireless, Inc. v. Qualcomm, Inc.,* 71 F.Supp.2d 517, 519 (E.D.Va.1999). To some extent, these inquiries overlap as the location

of witnesses and evidence that factor into the convenience of the parties determination also relates to whether there is a connection between the plaintiff's chosen forum and the claims at issue.

1. Plaintiff's Choice of Forum

The defendant claims that little deference is owed to the plaintiff's choice of the Eastern District of Virginia because the plaintiff is a foreign party and there is little connection between this district and the plaintiff's cause of action. The plaintiff responds that there is a significant connection to the claims at issue in this case in the form of the defendant's sales activity. Moreover, the plaintiff contends that the Eastern District of Virginia is the most logical forum for it, a foreign corporation with no home forum in the United States, to pursue this action.

Generally, a plaintiff's choice of forum is entitled to substantial weight. *See Acterna, L.L.C. v. Adtech, Inc.,* 129 F.Supp.2d 936, 938 (E.D.Va.2001). But the weight accorded this choice "varies in proportion to the connection between the forum and the cause of action. Thus, a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum." *GTE Wireless,* 71 F.Supp.2d at 519. Where the plaintiff has selected a forum where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, "that plaintiff's choice loses its place status in the court's consideration." *Jim Beam S.A., v. The Titan Corp.,* 156 F.Supp.2d 552, 563 (E.D.Va.2000).

Clearly, the plaintiff prefers to have its case heard in the Eastern District of Virginia. As a British corporation, however, with its principal place of business in the United Kingdom, any deference owed to its forum choice cannot be based upon its location or the situs of the harm alleged. *See Verosol,* 806 F.Supp. at 592 (giving less weight to foreign forum absent connection of forum to cause of action). The plaintiff has identified no other connection it has to the Eastern District of Virginia beyond the location of its counsel, which is discussed further herein. No employees reside here; no offices or facilities are located here. Thus, in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1048748 (E.D.Va.)

**(Cite as: 2005 WL 1048748 (E.D.Va.))**

order for the plaintiff's choice to be given any weight, there must be a connection between the Eastern District of Virginia and the claims alleged against the defendant. *See id.*

The plaintiff claims that there is a legitimate connection between this district and the claims at issue because inducement of infringement occurs each time a consumer purchases an accused product and subsequently follows Met-Rx's instructions for "creatine loading." As the defendant admits that four percent (4%) of the total sales of the accused product occurs in Virginia, the plaintiff insists that the site of the sale is connected to the cause of action. Contrary to the plaintiff's argument, however, "[f]ederal courts are not solicitous of plaintiffs claiming substantial weight for their forum choice where the connection with the forum is limited to sales activity without more." *Acterna,* 129 F.Supp.2d at 938; *see also Agilent,* 316 F.Supp.2d at 326 (finding transfer appropriate in patent infringement case when only alleged connection with forum was defendant's alleged sales of infringing products in district); *Ion Beam,* 156 F.Supp.2d at 562. As the defendant distributes its product nationwide, it appears that under the plaintiff's **rationale, venue** would be appropriate in districts throughout the country, wherever the defendant distributes its product. Such a liberal reading of section 1404(a) would undermine the emphasis on **convenience** of the **parties** and of potential witnesses. *See Stewart Org.,* 487 U.S. at 29 (noting emphasis on **convenience** and fairness).

*4 The plaintiff also claims that other contacts of the defendant, beyond sales figures, demonstrate a connection to this forum such that deference is owed to this choice. The plaintiff points to the defendant's participation and sponsorship in national and local strongman competitions and its sponsorship of Virginia Tech athletic teams. Notwithstanding the fact that Virginia Tech is located in the Western District of Virginia, the plaintiff misapprehends the relevant inquiry concerning the defendant's contacts in this district. In order to give deference to a foreign plaintiff's choice of forum, the contacts at issue must relate to the plaintiff's claims. *See Koh,* 250 F.Supp. at 633

(noting that plaintiff's chosen forum is not entitled to substantial weight when the claims have no connection to chosen forum). The defendant's sponsorship of various athletic competitions and college teams has no demonstrated connection to the claims of induced infringement in this case and are irrelevant to the choice of forum inquiry.

Finally, the plaintiff claims that all of its relevant documents are located at the offices of its regular patent litigation counsel, who is also counsel for the instant matter. First of all, it is not at all apparent that documents retained by counsel would be a source of proof in this matter. The plaintiff has identified no such documents that would serve as documentary evidence and has not claimed that its patent counsel will serve as witnesses in this case. Second, the plaintiff's patent counsel is located in McLean, Virginia. Although McLean is in the Alexandria Division of the Eastern District of Virginia, the plaintiff's chose to file this case in the Norfolk Division. This undercuts the plaintiff's argument that it filed this case in this court because of ease of access to its counsel and documents. Finally, and most importantly, the convenience to counsel is not an appropriate matter for consideration in determining contacts with the chosen forum. *See Cognitronics,* 83 F.Supp.2d at 698. If the plaintiff chose to retain Virginia counsel to pursue the instant claims, "it cannot be heard to complaint about the costs." *Id.*

Accordingly, beyond the plaintiff's assertion that the defendant has engaged in sales activity in this district, the court finds no other connection with this district and the claims alleged. Neither the plaintiff nor the defendant have offices in this district; neither have identified witnesses who live or work in Virginia; nor does it appear that any sources of proof are located here, beyond the documents which are retained by plaintiff's counsel and which the court does not consider to be a relevant connection. Moreover, in patent infringement cases, the preferred forum is generally "the center of the accused activity." *Acterna,* 129 F.Supp.2d at 939; *see Agilent Technologies, Inc.,* 316 F.Supp.2d at 326 (noting that preferred forum for patent infringement cases is where majority of witnesses

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1048748 (E.D.Va.)

**(Cite as: 2005 WL 1048748 (E.D.Va.))**

and evidence is located).

*5 The plaintiff does not dispute the defendant's contention that the documents relating to the design, development, manufacturing, marketing, labeling, and sales of the accused product are located in the defendant's New York offices. The plaintiff states in its opposition memorandum that its claims are predicated on the defendant's labeling of its creatine products with a loading instruction that induces consumers to illegally practice creatine loading, in violation of the plaintiff's patent. It appears to the court that the facts and witnesses that form the center of gravity of this claim are located where the defendant's marketing, labeling and sales decisions are made--in New York. Thus, although the facts as alleged, if proven true, may demonstrate that the defendant committed acts constituting inducement of infringement in this district, the nexus of the plaintiff's claims is still more closely associated with New York than Virginia. New York is the location the decisions involving the content of the labeling at issue and the sales of the alleged infringing product are also made in that forum. In this case, the percentage of the defendant's sales of the accused product in Virginia is not significant enough to amount to a substantial connection with the Eastern District of Virginia.

The above analysis is not to suggest that a foreign plaintiff's action must be initiated in the defendant's home forum; rather, the lack of a home forum for the plaintiff merely causes the court to examine whether there is any connection with the plaintiff or the cause of action to the chosen forum. "For example, a forum where the events at issue occurred, where the subsidiaries of the plaintiffs' company are located, or where the plaintiffs' witnesses reside might tip the balance in favor of the plaintiffs lacking a 'home forum.' " *Ion Beam,* 156 F.Supp.2d at 563. None of these factors that would weigh in favor of the plaintiff are present in this case.

2. Convenience to Parties and Witnesses

Determination of a motion to transfer requires the court to weigh the convenience to the parties and

witnesses in litigating in either venue. The party asserting witness inconvenience, in this case Met-Rx, "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh,* 250 F.Supp.2d at 636.

The defendant has produced evidence, via the signed declaration of Robert Walker, its executive director of sales and marketing, regarding the likely location of witnesses and evidence in this case. Through this declaration, the defendant avers that none of its offices, employees or documents are located within the Eastern District of Virginia. Met-Rx is not registered to do business with Virginia and its sales of the accused product to retailers within the state amounts to less than four percent (4%) of total sales of this product nationwide.

*6 Although the plaintiff argues that end use consumers will be relevant witnesses, such witnesses, who are not party witnesses, will likely be found in any district in which the defendant has distributed its product. There is no justifiable reason to cause Met-Rx the added inconvenience of traveling to this court when, all other things being equal, the Eastern District of New York is just as convenient for the plaintiff, and even more so for the defendant.

The court also agrees with the defendant that it is just as convenient (or perhaps just as inconvenient) for the plaintiff, a British corporation, to litigate this matter in the Eastern District of New York as it is in this district. The plaintiff, as a foreign corporation, has no home forum and its witnesses would have to travel no matter where this trial was held. From the standpoint of air travel, New York certainly presents a more convenient forum than does Norfolk for witnesses and party representatives traveling to the United States from abroad. Additionally, travel from the Washington, D.C. area to New York is just as convenient as travel to Norfolk, if not more so. The plaintiff has even indicated its willingness to travel to New York for depositions or other discovery should the need arise.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 6

2005 WL 1048748 (E.D.Va.)

**(Cite as: 2005 WL 1048748 (E.D.Va.))**

The plaintiff maintains that the defendant's own documents indicate that witnesses and source of proof are located in areas outside of New York, such as Boca Raton, Florida and Carbondale, Illinois. The plaintiff contends that the Eastern District of Virginia is centrally located between New York, Illinois and Florida. This line of argument, however, illustrates the fallacy of the plaintiff's position in attempting to show not that this district is the most convenient but that it is the least inconvenient. Centrally located or not, this court is not convinced that travel to this district is any less arduous than travel to New York. Moreover, transferring this action to New York would eliminate the need for at least some witnesses to have to travel at all. The defendant has responded by declaration that the Florida location was owned by a predecessor corporation. The plaintiff has not identified any witnesses or documents that would be located in the Illinois location, but the mere fact that the plaintiff has identified other locations which have more of a connection to sources of proof, witnesses or the claims at issue only serves to underscore the lack of connection that this case, the parties and the witnesses and evidence have to the Eastern District of Virginia. *See Ion Beam,* 156 F.Supp.2d at 563 (observing that even though several other forums might be as proper as that suggested by the defendant, existence of such forums demonstrates that Eastern District of Virginia was clearly not most convenient); *GTE Wireless,* 71 F.Supp.2d at 520 (transferring case where, among other considerations, plaintiff failed to identify even one potential witness from Virginia).

As described above, the plaintiff also claims that documents relating to its patent are located at the offices of its counsel in McClean, Virginia. The court also observes that the plaintiff has counsel located in Colorado and Washington, D.C. The plaintiff also maintains that three attorneys from a Washington, D.C. law firm that prosecuted the '159 patent will be necessary witnesses given that the defendant has challenged the validity of the '159 patent. The plaintiff has raised the specter of these documents and witnesses, however, in response to the defendant's affirmative defense, rather than in

connection with its own claims of induced infringement. These witnesses are not identified in the plaintiff's Rule 26(a)(1) disclosures, which identify witnesses in Sweden and in England. Furthermore, as also set forth above, that plaintiff's counsel might have possession of certain documents does not identify their source and is not germane to the balancing of convenience analysis. This is so because no consideration is given to the convenience of counsel. *See Cognitronics,* 83 F.Supp.2d at 698; *Ion Beam,* 156 F.Supp.2d at 562. Were it otherwise, a plaintiff could ship relevant documents and evidence to counsel in any district and use this as the basis for defeating a motion to transfer and establishing venue.

*7 Moreover, despite the fact that these witnesses and documents are apparently located in or near the Alexandria Division of this district, the fact that the plaintiff chose to file this action in the Norfolk Division suggests that some travel was anticipated. In any case, the presence of these nonspecific documents and witnesses does not counterweigh the substantial **convenience** to the defendant and the witnesses and records it has identified, through sworn declaration, as being located in New York. Thus, the **court** finds that the plaintiff has identified no witnesses in this district who appear to have testimony that is either relevant or unique enough to warrant **venue** in this district. *See GTE Wireless, Inc.,* 71 F.Supp.2d at 520.

On the record before it, the **court** concludes that the balance of **convenience** of **parties** and witnesses weighs in favor of **transfer** to the Eastern District of New York. *See Verosol,* 806 F.Supp. at 593. There is decidedly greater **convenience** to the defendant in litigating this case in the Eastern District of New York, with no demonstrated loss of **convenience** to the plaintiff, who will have to suffer some travel in either district.

C. Interest of Justice

Finally, in assessing a motion to **transfer**, the **court** must consider the interest of justice, "an analysis encompassing those factors unrelated to witness and **party convenience**." *See Acterna,* 129 F.Supp.2d at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 1048748 (E.D.Va.)

**(Cite as: 2005 WL 1048748 (E.D.Va.))**

939-40. The interest of justice factor can include such considerations as a **court's** familiarity with the applicable law, where the claim arose, and the **relative congestion** of the **courts' dockets.** *Intranexus, Inc. v. Siemans,* 227 F.Supp.2d 581, 583 (E.D.Va.2002).

In a case brought by a foreign plaintiff against an out-of-state defendant, there is little local interest in having the matter decided in Virginia. *See Cognitronics,* 83 F.Supp.2d at 696. As this is a case arising under federal law, this **court** has no greater familiarity with the applicable law than would any other federal **court.** *See id.*

It is readily apparent to the **court,** from the briefs and supporting materials submitted by the **parties** that the plaintiff's decision to initiate this case in this forum was certainly motivated by the expediency in which the **courts** of the Eastern District of Virginia are able to schedule trial dates and otherwise process cases. The plaintiff contends that it has already received an October 2005 trial date and a **transfer** will only mean delay. The plaintiff has not shown, however, any lack of expediency on the part of the **courts** of the Eastern District of New York. *See Cognitronics,* 83 F.Supp.2d at 697 n. 11 (declining to consider swiftness of **docket** issue in light of plaintiff's failure to show that transferee **court** was not similarly expeditious). The **court** notes that the only **reason** that the plaintiff became aware of its scheduled trial date was that it delayed its response to the defendant's motion until after the Rule 16(b) conference.

*8 While **docket** considerations can be a factor in the interest of justice analysis this **court** has previously held that:

> **Docket** conditions, while a consideration, cannot be the primary **reason** for retaining a case in this district. This **Court** cannot stand as a willing repository for cases which have no real nexus to this district. The "rocket **docket**" certainly attracts plaintiffs, but the **Court** must ensure that this attraction does not dull the ability of the **Court** to continue to act in an expeditious manner.

*Cognitronics,* 83 F.Supp.2d at 699 (E.D.Va.2000).

Additionally, when **docket** considerations are the primary **reason** a **party** has initiated an action in this **court,** as may be the situation in the instant case, the interest of justice is not served. *See Telepharmacy Solutions, Inc. v. PickPoint Corp.,* 238 F.Supp.2d 741, 743-44 (E.D.Va.2003). In such a case, **docket** considerations should actually weigh against a **transfer.** As every other factor in the instant case weighs in favor of a **transfer,** however, the **court** need not attach a primary motive to the plaintiff's selection of this forum. The **court** merely observes that it cannot allow its ability to dispose of a matter quickly to **outweigh** other more significant **reasons** in favor of a **transfer.** Thus, even if the **court** were to consider the expediency at which this case could be processed through this **court** as weighing against a **transfer,** such consideration does not override the other factors weighing in its favor.

IV. Conclusion

At best, there is evidence that the defendant has made sales in this district of the product that has allegedly led to the infringement of the plaintiff's patent. In dealing with a product that is distributed nationally, however, many forums would be similarly suitable. When the clear weight of documentary and testimonial evidence is to be found elsewhere, there is little justification for retaining this case in the Eastern District of Virginia. Based upon the facts of this case, and the relevant analysis required under section 1404(a), the Eastern District of New York provides the far more logical and convenient forum for this matter to be located.

Accordingly, the court GRANTS the defendant's motion to transfer this case to the United States District Court for the Eastern District of New York.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Order to all counsel and to forward the entire case file to the United States District Court for the Eastern District of New York, Long Island Division.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 8

2005 WL 1048748 (E.D.Va.)

**(Cite as: 2005 WL 1048748 (E.D.Va.))**

It is so ORDERED.

2005 WL 1048748 (E.D.Va.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

2004 WL 1812821 (E.D.N.Y.)

**(Cite as: 2004 WL 1812821 (E.D.N.Y.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Hilti AKTIENGESELLSCHAFT and Hilti, Inc.,
Plaintiff,
v.
MILWAUKEE ELECTRIC TOOL CORP.,
Defendant.
**No. 04CV629 (ARR)(ASC).**

July 19, 2004.
David Toren, Sidley Austin Brown & Wood LL,
New York, NY, for plaintiffs.

Peter D. Murray, Wendy E. Miller, Cooper &
Dunham LLP, New York, NY, for defendant.

*FOR ELECTRONIC PUBLICATION ONLY*

ROSS, J.

*OPINION AND ORDER*
\*1 Plaintiffs Hilti Aktiengesellschaft ("HAG") and
Hilti, Inc. ("Hilti") filed this action seeking a
declaratory judgment regarding their
non-infringement under federal trademark law, 15
U.S.C. § 1051 *et seq.*, of defendant Milwaukee
Electric Tool Corporation's claimed trade dress
mark on February 13, 2004. By motion dated April
30, 2004, defendant moves to transfer venue to the
Northern District of Mississippi pursuant to 28
U.S.C. § 1404(a). For the reasons stated below,
defendant's motion is granted.

BACKGROUND
For purposes of this order, familiarity with the
relevant facts is assumed and they will be only

briefly recited here. Plaintiff HAG, a corporation
organized under the laws of Lichtenstein and with
its corporate headquarters there, manufactures
power tools. Plaintiff Hilti is an Oklahoma
corporation with its principal place of business in
Tulsa; it is the sole U.S. distributor and seller of
HAG's products and manufactures some such
products under license. Defendant, also a tool
manufacturer, is a Delaware corporation whose
chief corporate officers are stationed in Brookfield,
Wisconsin; as discussed in greater detail *infra*, it
maintains that its principal place of business is in
Mississippi.

Defendant's power tools have long been
predominantly red in color with gray and/or black
accents and defendant argues that its use of these
colors has, since at least 1969, constituted an
inherently distinctive trade dress (the "color
combination mark."). Plaintiffs claim that their
predominantly red, black-accented powder-actuated
tools and power tools have been marketed in this
country for over forty-five years (that is, since at
least 1959), and that their color scheme constitutes
a color combination mark. The instant dispute arose
when, in 1999, defendant filed applications for
trademark registrations for color marks including
red with black and/or gray accents. Plaintiffs and at
least one other competitor have opposed this
registration before the Trademark Trial and Appeal
Board ("the TTAB").

Correspondence submitted by plaintiffs shows that
as of April, 2000, defendant's parent company,
Atlas Copco, and plaintiff HAG had been in
negotiation for at least several months in an attempt
to find an "amicable solution" to defendant's
perception that Hilti and HAG's products infringed
its color combination mark. *See* Decl. of Kelly
Beaver, May 21, 2004, Ex.2, at 1. Defendant was
concerned in particular that plaintiff's "recent"
practice of direct retail sales to the public at large
through Home Depot stores threatened to create

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 1812821 (E.D.N.Y.)

(Cite as: 2004 WL 1812821 (E.D.N.Y.))

Page 2

consumer confusion, even if its prior sales to professional customers did not. Defendant notified plaintiffs that if no amicable solution could be reached, it would "take whatever steps are necessary" to protect its claimed trademark rights. *Id.* at 2. The negotiations included four meetings, one of which took place in New York at defendant's counsel's office (located within the Southern District) and the balance of which were in Chicago. The negotiations were fruitless and ceased in October, 2002.

*2 On January 6 of this year, defendant sued another competitor, the Robert Bosch Tool Corp., in the Northern District of Mississippi ("the Northern District" or "the proposed transferee court."). That action is currently pending in the Greenville Division before the Hon. W. Allen Pepper, Jr.. In that action defendant brings claims for unfair competition, false designation of origin, and infringement of its color combination mark and for trademark dilution, as well as pendent state claims. As the complaint in that action makes clear, the basis of these claims is defendant's alleged protectible interest in its color combination mark. *See* Decl. of Wendy E. Miller, Esq., Apr. 30, 2004, Ex. A, ¶¶ 6–18; 37; 39. Defendant alleges that Bosch "recently" began to make and market tools infringing on its color combination mark. *Id.* ¶ 21. The TTAB has stayed action on the protests to defendant's trademark application pending resolution of that suit.

On February 13, 2004, plaintiffs filed this declaratory judgment action, seeking (1) a declaration that they have not infringed on defendant's trademark because it has no exclusive trademark ownership rights in the alleged color combination mark, and (2) injunctive relief barring defendants from interfering with plaintiffs' distribution and sale of their goods. (Compl.27.)

DISCUSSION

Section 1404(a) of Title 28 provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The goal of the provision "is to prevent waste of time, energy and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The statute "reposes considerable discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' ' *Red Bull Associates v. Best Western Intern., Inc.,* 862 F.2d 963, 967 (2d Cir.1988) (quoting *Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (further internal quotation omitted)). "In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed transferee forum; and (2) whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *MasterCard International, Inc. v. Lexcel Solutions, Inc.,* No. 03-CV-7157, 2004 WL 1368299, *6 (S.D.N.Y. June 16, 2004); *see also* James W. Moore, et al., 17 *Moore's Federal Practice* § 111.11 (3d ed.2003).

*A. Whether the action could have been brought in the Northern District of Mississippi*

Plaintiffs object that the Northern District of Mississippi lacks personal jurisdiction over plaintiff HAG under a constitutional "minimum contacts" analysis, and that transfer to that district is therefore improper under § 1404(a) because the lawsuit could not have been brought there. This argument is baseless. The question is not whether plaintiffs could be haled into the proposed transferee court as defendants, but whether plaintiffs could have brought the same declaratory judgment action in the transferee court. *Hoffman v. Blaski,* 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

*3 The party seeking transfer has the burden of establishing that the case could be brought in the transferee district. *Volkswagen de Mexico, S.A. v. Germanischer Lloyd,* 768 F.Supp. 1023, 1028-29 (S.D.N.Y.1991); 17 *Moore's Federal Practice* § 111.12[3]. Defendant asserts in its moving papers that venue would be proper in that district "because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 1812821 (E.D.N.Y.)

(Cite as: 2004 WL 1812821 (E.D.N.Y.))

Page 3

a substantial part of the events or omissions giving rise to the claims occurred there" in that defendant maintains manufacturing and distribution operations within the district and plaintiff Hilti sells some of its allegedly infringing products there. (Def. Mem. at 8; *see also* Def. Reply Mem. at 3 ("Plaintiff clearly could have brought the present action against [defendant] in Mississippi in view of [defendant's] substantial presence in Mississippi.").) [FN1] While it is far from clear that the manufacture and distribution of defendant's products in the proposed transferee district is an "event[ ] or omission[ ]" giving rise to plaintiff's claim for a declaration of the non-infringing nature of its own products, the sale of some of plaintiffs' products within the Northern District makes venue technically proper under § 1391(b)(2). *See generally Fugazi Int'l Travel Group v. Fugazy Exec. Travel,* No. 00-CV-5927, 2001 WL 50936 (S.D.N.Y. Jan.22, 2001) (noting general rule that "[i]n trademark infringement cases, the focus of the venue inquiry is on the identification of districts in which the consumer deception occurred" and that they "often may be laid in a broad range of districts, as infringing material often is broadly disseminated"; collecting cases).

> FN1. Defendant repeatedly asserts that venue is proper under 28 U.S.C. § 1391(a), which governs actions brought on diversity grounds exclusively. *See id.* (specifying districts where a "civil action wherein jurisdiction is founded *only* on diversity of citizenship" may be brought) (emphasis added). Plaintiffs' declaratory judgment action raises questions of federal law. The error is of no importance since the relevant standard under the correct provision, 28 U.S.C. § 1391(b)(2), is identical.

Defendant must show not only that venue is proper in the proposed transferee district but that if the suit were commenced there the transferee court would have personal jurisdiction over it. *Hoffman,* 363 U.S. at 344; *Anglo American Ins. Group, PLC v Calfed, Inc.,* 916 F.Supp. 1324, 1330 (S.D.N.Y.1996). Personal jurisdiction over the defendant must exist as a matter of law independent

of the defendant's voluntary amenability to suit there. *Hoffman,* 363 U.S. at 343--44; *Reina v. Morgan Drive Away Inc.,* No. 94-CV-6495, 1995 WL 66585, *1 (S.D.N.Y. Feb.15, 1995). In a federal question case such as this one, personal jurisdiction is limited both by the familiar constitutional due process requirement of a sufficient nexus between the defendant and the forum and by the strictures of Fed.R.Civ.P. 4, which requires a "basis for the defendant's amenability to service of summons." *Omni Capital International Co. v. Rudolf Wolff & Co. Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987).

Rule 4(f) allows for service of process either within the forum district court's home state or outside of that state as provided by statute [FN2] or by the Federal Rules themselves. Where the defendant is a corporation, Rule 4(h) provides that service may be effected upon a duly designated agent for service of process or as provided in Rule 4(e)(1), which in turn refers to the forum state's rules for service in its own courts of general jurisdiction. Defendant has put forward evidence, in affidavit form, of its extensive manufacturing and distribution centers in the proposed transferee district. (Declaration of Harry E. Peterson, Apr. 27, 2004, at ¶¶ 4--13, 17, 19.) Under Mississippi law, such activity indubitably constitutes the "transact[ion] of business" requiring a certificate of authority from the Secretary of State, and the issuance of such a certificate is conditioned on the maintenance at all times of an agent for service of process within the state. Miss.Code Ann. §§ 79-4-15.01(a), 15.10 (West 2004); *see also Wiley Electric Co. of Jackson et al. v. Electric Storage Battery Co.,* 167 Miss. 842, 147 So. 773, 777 (Miss.1933) (warehousing of products in-state by foreign corporation for redistribution constitutes "doing business" under then-applicable statute). While defendant has failed to introduce any specific evidence on this point, it is likely that defendant has obtained a certificate of authority as required and *ipso facto* has an agent duly authorized to receive service of process within the state. Defendant has thus made the *prima facie* showing of personal jurisdiction that the law of the proposed transferee district requires. *See WNS, Inc. v. Farrow.* 884 F.2d 200, 203 (5th Cir.1989) (where

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 4

2004 WL 1812821 (E.D.N.Y.)

**(Cite as: 2004 WL 1812821 (E.D.N.Y.))**

court decides whether personal jurisdiction is established based on paper record, only *prima facie* evidence is required and inferences should be drawn favorably to the party seeking to establish jurisdiction).

> FN2. The court is aware of no federal statute that would allow for nationwide service in this case. Thus to be amenable to service of process defendant must either be able to be served within the forum state, *see Alpha Tau Omega Fraternity v. Pure Country, Inc.,* 185 F.Supp.2d 951, 956 (S.D.Ind.2002) ("the Lanham Act does not prescribe nationwide service of process"), or must be within the reach of the state's long-arm statute as provided in Rule 4(e)(1).

*B. Whether* **transfer** *promotes* **convenience** *and justice*

\*4 Defendant, as the moving **party**, bears the burden of establishing by clear and convincing evidence that **transfer** is appropriate. *Excelsior Designs, Inc. v. Sheres,* 291 F.Supp.2d 181, 185 (E.D.N.Y.2003). In analyzing whether **transfer** is warranted, **courts** consider factors including: (1) the **convenience** of the **parties**; (2) **relative** means of the **parties**; (3) the **convenience** of the witnesses; (4) where the operative facts occurred and the **relative** ease of access of to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forums' **relative** degree of familiarity with the governing law; (8) trial calendar **congestion**; and (9) trial efficiency and the interests of justice. *MasterCard International, Inc. v. Lexcel Solutions, Inc.,* No. 03- CV-7157, 2004 WL 1368299, \*6 (S.D.N.Y. June 16, 2004); *United States Fidelity & Guar. Co. v. Republic Drug Co., Inc.,* 800 F.Supp. 1076, 1080 (E.D.N.Y.1992). "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup, Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 561 (S.D.N.Y.2000). In this case, very few of the factors weigh heavily in favor of one **venue** or the other. Those few that are not neutral weigh in

favor of **transfer** to the Northern District of Mississippi.

*1. Convenience of the parties*

Neither **party** maintains a significant corporate presence in New York. Defendant, a Delaware corporation headquartered in Wisconsin, argues that Mississippi is more **convenient** because its most extensive manufacturing and distribution operations and the majority of its employees are located there. [FN3] Defendant argues that a "significant number" of its **party**-representatives would not have to travel were this suit to be **transferred** there. While defendant does not specify how many **party**-representatives would come from the transferee district and how many would come from its Wisconsin headquarters, this factor weighs in favor of **transfer**, since no **party**-representatives on either side are stationed in or near this district. *See Republic Drug,* 800 F.Supp. at 1080 (where plaintiff would have to travel to either forum, **convenience** to defendant weighs in favor of **transfer**).

> FN3. The **parties** vigorously dispute what legal test should govern the determination of defendant's "principal place of business," citing to authority relating not to **venue** analysis but to the quite different question of determining diversity of **parties** for the purpose of establishing subject matter jurisdiction. *See, e.g., J.A. Olson Co. v. City of Winona, Miss.,* 818 F.2d 401, 412 (5th Cir.1987); *Pinnacle Consultants, Ltd. v. Leucadia Nat. Corp.,* 923 F.Supp. 439, 448 (S.D.N.Y.1995) (noting that competing tests for "that single location where a corporation carries out its central purpose" are designed to fulfill the "express intent of Congress [to] ... reduce the case load of the federal courts and to remedy abuses of diversity jurisdiction."). For purposes of deciding which is the more appropriate **venue**, the fact of defendant's extensive business operations in the transferee district may be relevant whether or not, as a matter of law, those operations

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

2004 WL 1812821 (E.D.N.Y.)

(Cite as: 2004 WL 1812821 (E.D.N.Y.))

entail that the transferee district hosts its "principal place of business" for diversity purposes. *See Republic Drug,* 800 F.Supp. at 1080 (noting that location of satellite offices is relevant to **venue** determination because those offices "may play an important part in the trial of this action" though principal place of business is elsewhere).

### 2. *Relative Means of Parties*

The **parties** agree that their means are comparable and that this factor is therefore neutral.

### 3. *Convenience of the witnesses*

Defendant asserts that five of the eight witnesses it presently anticipates calling at trial are located in Mississippi, and the other three in Wisconsin. Four of the five Mississippi witnesses are managers of assembly or distribution plants, and one is a vice president of operations. The five are all expected to testify to the "manufacture and sale" of Milwaukee products bearing the alleged color mark; two will testify as to quality control; and one will testify as to distribution. Two of the plant managers are believed to have knowledge of manufacture, sale, and distribution dating back at least 25 years. The three Wisconsin witnesses, executives in marketing and engineering, are expected to testify to sales, marketing, and distribution of the products; competitor use of color combinations; the history of advertising the products; and their engineering. One of the three witnesses is believed to have knowledge of defendant's use of its alleged color mark and sales of its products going back 30 years.

**\*5** It is evident that the five Mississippi witnesses' expected testimony will overlap to a large extent and will be partly cumulative of testimony provided by Wisconsin witnesses. To the extent that witness testimony overlaps or is duplicative, the court should regard the witnesses for balancing purposes as one witness. *NBA Properties, Inc. v. Salvino, Inc.,* No. 99-CV-11799, 2000 WL 323257, \*2--3 (S.D.N.Y. Mar.27, 2000). It is also clear that the Mississippi witnesses non-cumulative

testimony--about the manufacture and quality control of defendant's product since roughly 1979--is far less material to the instant dispute than the testimony of the Wisconsin executives regarding the marketing, advertising, manufacture and sale of these products over a longer period and their engineering. In order to defeat plaintiffs' claim that defendant has no protectible interest in the color mark, defendant will have to show that its use of the alleged color mark is not functional and that it has acquired a "secondary meaning" as that term is used in trademark law. *Qualitex Co. v. Jacobson Products Co.,* 514 U.S. 159, 163, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). For this purpose, testimony regarding the marketing and advertising of the product, competitors' use of color, and the general volume and distribution of retail sales is far more relevant than testimony regarding their manufacture and quality control. *See generally Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 973 F.2d 1033, 1041 (2d Cir.1992) ("Among the factors that we have found relevant to [secondary meaning] inquiry in the past are advertising expenditures, consumer studies, sales success, unsolicited media coverage, attempts to plagiarize and length and exclusivity of use."). The Mississippi witnesses thus add comparatively little, and the court should discount them in its balancing analysis. *American Alliance Ins. Co. v. Sunbeam Corp.,* No. 98- 4703, 1999 WL 38183, \*6 (S.D.N.Y. Jan.28, 1999) ("In determining whether to grant a transfer motion, it is well-established that the court must look beyond the quantity of the witnesses and assess the quality of the testimony to be offered." (collecting cases)); 17 *Moore's Federal Practice* § 111.13[1][f][v] (witness convenience should be weighed in proportion to materiality of the testimony).

Plaintiffs, for their part, anticipate that their key witnesses, executives who have knowledge of the advertising, promotion and marketing of Hilti tools, will travel from Lichtenstein. One witness, a district manager in New York, can testify to the long use by Hilti of its color mark and to the sales, marketing and distribution of the tools in the United States. Another witness who resides in Tulsa, Oklahoma, has "extensive" knowledge of the same information

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6

2004 WL 1812821 (E.D.N.Y.)

(Cite as: 2004 WL 1812821 (E.D.N.Y.))

regarding use of the color mark dating back to 1971; for the reasons discussed above, this makes that portion of the New York witness' testimony irrelevant to the analysis. An employee from Massachusetts can testify as to the distribution of Hilti tools through the Home Depot retail channel.

*6 Discounting the duplicative and less material testimony of defendant's Mississippi witnesses and plaintiffs' New York witness, each party has at best one witness residing in or near its preferred venue. With or without a transfer, it is plain that the most central witnesses for both parties--all employees--will have to travel a significant distance. The parties have submitted conflicting evidence regarding the comparative cost and time involved in travel from the various corporate headquarters to this district and to Mississippi. As noted above, the parties concede that their means are comparable; the court does not find it useful to compare the relative cost and inconvenience in increments of half-hours and tens of dollars based on ever-shifting airline schedules and fares. *Cf. Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 10 (2d Cir.1995) ("In recent years, the courts of this circuit have emphasized that [a] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel.") (internal quotation omitted). Because key witnesses in roughly equal numbers will have to travel to either venue, this factor is neutral.

*4. Locus of Operative Fact and Access to Sources of Proof*

As noted above, the key decisions regarding the design, advertising and marketing of each brand were made in neither this district nor the proposed transferee district, but at the respective corporate headquarters in Wisconsin and Tulsa and/or Lichtenstein. The foundation for venue in this district, as plaintiffs concede, is the sale of allegedly non-infringing products here. In 2003 plaintiffs' sales in New York City represented some 1.6% of total U.S. sales, an unknown portion of which took place in this district. Its sales in Mississippi constituted roughly 0.34% (again, there is no

information particular to the relevant district). Defendant concedes that venue here is proper, but it is proper on the same basis in the Northern District. Where the plaintiff has selected venue that bears at best a *de minimis* relation to the subject of the suit, it should not be heard to complain that another district with a similarly minimal connection on the same grounds is inappropriate. *Fugazi,* 2001 WL 50936 at *1 ("trademark infringement cases ... often may be laid in a broad range of districts, as infringing material often is broadly disseminated"; collecting cases); *Toy Biz, Inc. v. Centuri Corp.,* 990 F.Supp. 328, 331 (S.D.N.Y.1998) (where alleged infringing products were sold nationally, including in New York, Southern District of New York had "significant connection" with trademark infringement dispute (collecting cases)); *cf.* 5 *McCarthy on Trademarks and Unfair Competition* § 32:65 n. 15 (4th ed.2002) (hereinafter *"McCarthy"* ) (under pre-1990 version of venue statute, sales equaling 2% or less of national sales in chosen venue considered insufficient to support venue (collecting cases)). The court finds the 'locus of operative fact' factor neutral as between this district and the Northern District of Mississippi. [FN4]

> FN4. Plaintiff's additional arguments that the operative facts occurred here because (a) one meeting relating to the instant dispute took place at counsel's office in the Southern District of New York, and (b) plaintiff Hilti was formerly headquartered near this district and has employees, outlets and distribution centers in the region--the great majority of them apparently outside of this district--do not merit further discussion.

*7 Defendant also argues that roughly 34,000 documents relating to its marketing, advertising, sale, shipping and inspection of its goods "have already been copied, numbered and located in Mississippi for the Bosch litigation." While it is unclear how many of these documents would actually be needed in the instant litigation, or that it would be unduly burdensome to reproduce and ship further copies of those that were needed, *see Distefano v. Carozzi North America, Inc.,* No.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 1812821 (E.D.N.Y.)

**(Cite as: 2004 WL 1812821 (E.D.N.Y.))**

Page 7

98-CV-7137, 2002 WL 31640476, *4 (E.D.N.Y. Nov.16, 2002), there is no indication that any relevant documentary evidence or business records are located within this district. This factor therefore slightly favors transfer.

### 5. *Unwilling witnesses*

Neither party contends that unwilling witnesses' testimony may have to be procured by subpoena. This factor is neutral.

### 6. *Plaintiff's choice of forum*

The plaintiff's choice of forum is ordinarily given significant weight and is disturbed only if the balance of convenience and justice weigh heavily in favor of defendant's proposed forum. *Toy Biz, Inc.,* 990 F.Supp. 328 at 330 (collecting cases); 17 *Moore's* § 111.13[c][i] & n. 7. The weight given to a plaintiff's choice is greatly diminished, however, where the plaintiff does not reside in the chosen forum and/or where significant operative events did not occur there. [FN5] *Cali v. East Coast Aviation Services, Ltd.,* 178 F.Supp.2d 276, 292 (E.D.N.Y.2001); *Republic Drug,* 800 F.Supp. at 1082; 17 *Moore's* § 111.13[c][ii], [iii]. The **court** therefore counts plaintiffs' choice of this district as one factor weighing against **transfer** without according it special weight.

> FN5. As noted above, plaintiff's allegation of sales in this district amounting to less than 1.6% of national sales, though concededly a proper basis for **venue**, is not a strong one.

### 7. *Familiarity with relevant law*

Plaintiff's complaint raises issues of federal law, with which this **court** and the Northern District are equally familiar. Some of Defendant's counterclaims sound in New York, Mississippi and Texas law. In either **venue** the **court** might be called on to apply the law of two states with which it is not familiar. This factor is neutral.

### 8. *Docket congestion*

Defendant has submitted evidence demonstrating that cases proceed to trial faster in the Northern District than here and that this district has between three and four times as many civil cases that have been pending for three years or more. Courts in this circuit typically accord this factor relatively little weight. *See, e.g., DiStefano,* 2002 WL 31640476 at *4; *Toy Biz, Inc. v. Centuri Corp.,* 990 F.Supp. at 331. However, where, as here, plaintiff has selected a forum with scant connection to the subject of the action, the court may properly consider that the interests of justice are not served by retention of the case in this relatively busy district to the extent it would "delay adjudication of other cases brought by parties who are compelled to sue [here]." *Royal & Sunalliance v. British Airways,* 167 F.Supp.2d 573, 579 (S.D.N.Y.2001) (quoting *Kanbar v. U.S. Healthcare, Inc.,* 715 F.Supp. 602, 606 (S.D.N.Y.1989)). This factor weighs in favor of transfer.

### 9. *Judicial economy*

*8 As noted above, defendant recently brought suit in the Greenville Division of the Northern District against another competitor tool company, Robert Bosch Tool Corp. In that action defendant brings claims for unfair competition, false designation of origin, and infringement of its color combination mark and for trademark dilution, as well as pendent state claims. The basis of these claims is defendant's alleged protectible interest in its color combination mark. *See* Bosch Compl. ¶¶ 6–18; 37; 39. Defendant argues (and plaintiff concedes, *see* Pl. Mem. at 8–9) that the instant declaratory judgment action raises the same issue; defendant argues that judicial economy and the risk of inconsistent judgments therefore favors a transfer of this case to the same district. Plaintiffs argue that because Bosch's alleged trade dress infringement is of much more recent origin and because establishing infringement as against it and Bosch will involve different factual inquiries, transfer will not result in an economy of judicial effort. Plaintiffs also argue that they may have a defense of acquiescence that is personal to them and collateral to the dispute between defendant and Bosch.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"The Second Circuit has stated that '[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Raiber v. Dentsply Intern., Inc.*, No. 99-0743; 1999 WL 335821, *2 (S.D.N.Y.1999) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir.1968) ). *See also* 17 *Moore's* § 111.13[o]. While this rule is most often applied to cases in which there is a complete identity of parties, it has also been applied where, as here, a threshold legal issue is dispositive of two litigants' rights and obligations with respect to a third. In *Fairfax Dental v. S.J. Filhol Ltd.*, 645 F.Supp. 89, 92 (E.D.N.Y.1986), a patent infringement action, the court granted the plaintiff's request to transfer venue to the Southern District where the same plaintiff had filed another infringement suit against a different defendant and the invalidity of the plaintiff's patent was likely to be raised as a defense by the defendants in both actions. The court noted that transfer would avoid "duplicative and inconsistent judgments." *Id.* at 92 (citing *Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29, 34 (N.D.Ill.1980) (denying motion to transfer one of three cases involving validity of the same patent, judicial economy served even though each defendant's infringement might raise distinct factual issues)).

Plaintiffs are certainly correct that the two suits raise distinct issues regarding infringement, and although it is difficult to say at this early stage, it appears that it might well be impractical or inadvisable to consolidate the cases fully for trial purposes. "There is no requirement, however, that consolidation be certain before [the court] can consider the fact that a related action is pending in the transferee court." *Fairfax Dental*, 645 F.Supp. at 92 n. 2; *see also* 17 *Moore's* 111.13[1][o]. "The interests of justice require that the cases be related, not identical." *Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 167 (S.D.N.Y.1992). Nor would the transferee court be required to consolidate the cases for all purposes. *See* Fed.R.Civ.P. 42(a),(b) (court may order "joint

hearing or trial of any or all the matters at issue in the actions" and may order separate trials of any number of issues or claims); 8 *Moore's* § 42.10[2][a], 42.11 [d] (Rule 42 consolidation contemplates and may be limited to consolidation for pre-trial purposes, such as discovery). Even if the cases are not consolidated for all purposes, discovery on the issue of the history of defendant's use of the alleged color combination mark, its awareness of competitors' uses, and consumer association of the color mark with defendant's brand is likely to substantially overlap. In order to avoid a judgment of a protectible interest in defendant in one case and an inconsistent judgment of no such interest in the other--divergent judgments which could result in contrary orders to the Patent and Trademark Office regarding registration of defendant's color combination mark, *see* 5 *McCarthy* § 30:109--the court might well also find it appropriate to try (or to consider at the summary judgment stage) the issue of the protectibility of defendant's interest in the color mark jointly, while trying the issue of Bosch's and plaintiffs' infringement *vel non* or any affirmative defenses separately.

*9 The court takes notice of the fact that Bosch has moved to transfer venue to the Northern District of Illinois and that Judge Pepper has not yet decided that motion. Thus it is not certain that transfer of this action will accomplish any overall saving of effort or avoidance of inconsistent judgments. Under these circumstances the "strong policy" of transferring venue to a district where a related case is pending is necessarily less strong. Even discounting for the risk of transfer, however, the court finds that in light of the significant possibility that portions of the two cases may be jointly tried or otherwise decided, this factor weighs in favor of transfer. *See Fairfax Dental*, 645 F.Supp. at 92 n. 2 (court may consider pendency of related action even where consolidation upon transfer not certain). [FN6]

> FN6. Plaintiffs' attempts to distinguish *Fairfax Dental* are unpersuasive. They point out, first, that it involved patent infringement, rather than trademark

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 1812821 (E.D.N.Y.)

**(Cite as: 2004 WL 1812821 (E.D.N.Y.))**

Page 9

infringement, but do not explain why this makes any material difference. Second, they point to the fact that three of the four defendants to the **transferred** suit stipulated that discovery in the case in the transferee district could be used in their case. While plaintiffs understandably have made no such stipulation in view of the fact that they oppose **transfer**, they might well find it expedient to participate in depositions of defendant's witnesses if the case is **transferred**.

### CONCLUSION

For the **reasons** discussed above, the **court** finds that **convenience** to the **parties**, access to proof, **docket congestion** and, most importantly, judicial economy and the risk of inconsistent judgments weigh in favor of **transfer**. Together these factors **outweigh** the sole factor militating against **transfer**, plaintiff's choice of this district. Because defendant has met its burden of establishing that the action could have been brought in the transferee district and that the relevant factors weigh in favor of **transfer**, the motion is granted. The case is **transferred** to the Northern District of Mississippi, with the respectful recommendation that it be assigned to the Hon. W. Allen Pepper, Jr. of the Greenville Division.

SO ORDERED.

### Motions, Pleadings and Filings (Back to top)

• 1:04cv00629 (Docket)

(Feb. 13, 2004)

• 2004 WL 2410404 (Trial Pleading) Complaint (Feb. 12, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

2005 WL 388599 (D.Del.)

**(Cite as: 2005 WL 388599 (D.Del.))**

Page 1

**Ħ**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
J-SQUARED TECHNOLOGIES, INC. and
J-Squared Technologies (Oregon) Inc.,
Plaintiffs,
v.
MOTOROLA, INC., Defendant.
**No. Civ.04-960-SLR.**

Feb. 4, 2005.

David Allan Felice, Cozen & O'Connor Chase
Manhattan Centre, Wilmington, DE, for Plaintiff.

William W. Bowser, Young, Conaway, Stargatt &
Taylor The Brandywine, Wilmington, DE, for
Defendant.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 4th day of February, 2005,
having considered defendants' motion to **transfer**
and the papers submitted in connection therewith;

IT IS ORDERED that said motion to **transfer**
[FN1] (D.I.10) is denied, for the reasons that follow:

> FN1. By this motion, defendant also
> moved to dismiss. This memorandum
> order addresses only the **transfer** motion.

1. Introduction. On August 20, 2004, plaintiffs
J-Squared Technologies, Inc. ("JST") and
J-Squared Technologies (Oregon), Inc. ("JSO")
sued defendant Motorola, Inc. ("Motorola")

alleging: (1) breach of contract; (2) promissory
estoppel; (3) negligent misrepresentation; (4)
breach of duty of good faith and fair dealing; and
(5) violation of Arizona's Consumer Fraud Act.
(D.I.1) Plaintiffs seek compensatory and punitive
damages. On September 23, 2004, Motorola moved
to **transfer** the case to the District of Arizona or,
alternatively, to dismiss pursuant to Fed.R.Civ.P.
9(b) and 12(b)(6). (D.I.10) Plaintiffs oppose the
motion (D.I.13) and defendant has filed its reply.
(D.I.15)

2. Background. Plaintiffs are commissioned sales
agents who sell products for various computer
manufacturers. JST is a Canadian corporation
maintaining its principal place of business in
Kanata, Ontario. (D.I.1) JSO is an Oregon
corporation with its principal place of business in
Portland, Oregon.

3. Defendant is a Delaware corporation with its
headquarters in Schaumburg, Illinois. (D.I.11)
Motorola Computer Group ("MCG"), is business
unit of Motorola. [FN2] (Id. at A1) MCG
manufactures computer boards and other products
for use in embedded computing applications.
MCG's headquarters is in Tempe, Arizona and most
of its employees reside in the state. (Id.)

> FN2. MCG recently changed its name to
> "Embedded Communications Computing
> Group." (D.I.11, A1)

4. According to Motorola, [FN3] MCG negotiated
a Manufacturer's Representative Agreement
("MRA") with JST in October 2002. (Id at A1)
MCG employees were involved in the negotiations
with JST. No negotiations occurred in Delaware. In
March 2003, MCG negotiated a MRA with JSO.
MCG employees negotiated the MRA, with nothing
occurring in Delaware. (Id.) Both contracts were
monitored from Arizona and commissions were
tabulated there as well. Two former employees

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 388599 (D.Del.)

**(Cite as: 2005 WL 388599 (D.Del.))**

involved in the negotiations still reside in Arizona. ( *Id* )

> FN3. Affidavit provided by Julie Blair, a financial analyst for MCG. (D.I.11, A1)

5. Plaintiffs indicate that they never traveled to Arizona to negotiate with MCG. [FN4] (D.I.13, Ex. A) All negotiations leading to the MRAs occurred over email and telephone. The MRAs involved the sale of Motorola products in Washington, Oregon, Idaho and Canada. (*Id.*) After the contracts were executed, Motorola sent its representatives to Canada and Oregon to assist with the work. These Motorola sales management representatives were from San Jose, California and Boston, Massachusetts. The attorneys who represented JST and JSO during contract negotiations reside in Canada, but have indicated that they are willing to testify in Delaware at trial. Commission payments to JST and JSO were made from Motorola. (*Id*)

> FN4. Affidavit of Jeffrey Gibson, chief financial officer for JST and JSO. (D.I.13, Ex. A)

6. In September, Motorola representatives from Boston and the United Kingdom decided not to renew the MRAs during a meeting with JST and JSO. This meeting occurred in Boston. Motorola contends that the decision to terminate the contracts was made in Arizona.

\*2 7. Standard of Review. Under 28 U.S.C. § **1404(a)**, a district court may **transfer** any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to **transfer** according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D.Del.1998).

8. The burden of establishing the need to **transfer**

rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a **transfer** , the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte,* 431 F.2d at 25.

9. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Although **transfer** of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of **transfer**." *In re M.L.-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

10. The Third Circuit Court of Appeals has indicated that the analysis for **transfer** is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 388599 (D.Del.)

**(Cite as: 2005 WL 388599 (D.Del.))**

forum)." *Id* (citations omitted).

*3  11.  The  public  interests  include:  "(1)  the enforceability  of  the  judgment;  (2)  practical considerations  that  could  make  the  trial  easy, expeditious  or  inexpensive;  (3)  the  relative administrative  difficulty  in  the  two  fora  resulting from  court  congestion;  (4)  the  local  interest  in deciding  local  controversies  at  home;  (5)  the  public policies  of  the  fora;  and  (6)  the  familiarity  of  the trial judge with the applicable state law in diversity cases." *Id* (citations omitted).

12.  Discussion.  Defendant  contends  that  **transfer** is  warranted  because  Delaware  has  no  connection  to this  litigation.  (D.I.11,  15)  Specifically,  defendant argues  that  all  negotiations  and  meetings  occurred outside  the  district;  the  contracts  at  issue  are governed  by  Arizona  law;  and  the  Arizona  forum  is more convenient for the parties and witnesses.

13.  Plaintiffs  contend  their  choice  of  forum  should be  afforded  deference  and  that  litigating  in Delaware  is  as  convenient  as  litigating  in  Arizona, given  the  nature  of  the  transaction  and  the  various locales  involved  in  the  transaction.  (D.I.13)  Further, plaintiffs  assert  that  defendant's  motion  to  **transfer** is  merely  a  strategy  meant  to  undermine  the litigation.

14.  Weighing  the  arguments  against  the  *Jumara* balancing  test,  the  court  finds  that  the  asserted advantages  of  moving  the  case  to  the  District  of Arizona  are  insufficient  to  warrant  a  **transfer**. Defendant's  complaints  about  litigating  here  are outweighed  by  the  fact  that  Motorola  has  enjoyed the  benefits  and  protections  of  incorporation  in Delaware  and  that  the  state  has  an  interest  in litigation  regarding  companies  incorporated  within its  jurisdiction.  Moreover,  two  potential  witnesses no  longer  employed  by  Motorola  have  not  refused to  travel  to  Delaware  for  trial.  Considering  that discovery  can  be  conducted  at  any  location convenient  to  the  parties  and  their  employees,  the only  event  that  will  take  place  in  Delaware  is  the trial.  The  travel  expenses  and  inconveniences incurred  for  that  purpose,  by  a  Delaware  defendant conducting  world-wide  business,  is  not  overly

burdensome.

15.  Conclusion.  For  the  reasons  stated,  defendant's motion to **transfer** (D.I.10) is denied.

2005 WL 388599 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:04CV00960  (Docket)

(Aug. 20, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.